**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

MARTESE JOHNSON,

        Plaintiff,

    v.

DEPARTMENT OF ALCOHOLIC
BEVERAGE CONTROL, JARED MILLER,
THOMAS CUSTER, JOHN CIELAKIE, and
SHAWN P. WALKER

        Defendants.

Civil Action No. 3:15-cv-00055-GEC

**PLAINTIFF MARTESE JOHNSON'S OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................1

I.    Mr. Johnson Alleges Ample Facts to State Claims That Are Facially Plausible .................................................................................................... 1

II.    Mr. Johnson Properly Pled False Arrest in Violation of the Fourth Amendment (Count I).................................................................................. 2

    A.    The Agents Did Not Have Probable Cause to Arrest Mr. Johnson for Public Intoxication ................................................................. 4

    B.    The Agents Did Not Have Probable Cause to Arrest Mr. Johnson for Obstruction of Justice.................................................................. 5

    C.    The Agents Did Not Have Probable Cause to Arrest Mr. Johnson for Possessing a Fake Identification Card................................................. 9

III.    Mr. Johnson Has Stated an Excessive Force Claim Against the Agents (Count II) ........................................................................................ 10

IV.    Mr. Johnson Has Stated a §1983 Failure to Train or Supervise Claim Against ABC (Count III) ........................................................ 15

    A.    As A Self-Funding, Autonomous Entity, ABC Is Not Immune Under the Eleventh Amendment.................................................. 15

    B.    As ABC is Not an Arm of the State, It is a "Person" Under §1983........ 20

V.    Mr. Johnson Has Alleged Sufficient Facts to State a Plausible Claim for Failure to Train or Supervise (Count III) ................................. 21

VI.    Defendants Are Not Entitled to Qualified Immunity as Their Conduct Clearly Violated Mr. Johnson's Well-Established Constitutional Rights and Was Unreasonable ........................................ 24

    A.    The Agents Are Not Entitled to Qualified Immunity on Mr. Johnson's False Arrest Claim ................................................. 25

    B.    The Agents Are Not Entitled to Qualified Immunity on Mr. Johnson's Excessive Force Claim.............................................. 25

    C.    Walker Is Not Entitled to Qualified Immunity on Mr. Johnson's Monell Claim ........................................................... 26

VII.    Mr. Johnson Properly Alleges an Assault Claim Against Miller and a Battery Claim Against All of the Agents (Counts VI and VII)..................... 27

VIII.    The Agents Are Not Entitled to Sovereign Immunity Because Their Actions Were Grossly Negligent (Count IV) ...................................... 29

IX.    Mr. Johnson States a Negligent Supervision and Training Claim Against Walker Under Virginia Law (Count V)............................................. 30

**CONCLUSION** .................................................................................................................33

Case 3:15-cv-00055-GEC-JCH   Document 23   Filed 12/10/15   Page 3 of 38   Pageid#: 99

Plaintiff Martese Johnson, by and through his undersigned counsel, hereby opposes Defendants Department of Alcoholic Beverage Control ("ABC"), Jared Miller, Thomas Custer, John Cielakie, and Shawn P. Walker's (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint ("Defendants' Motion"). Mr. Johnson has properly stated constitutional and state law claims against Defendants arising out of his brutal arrest and battery, which should proceed.

## INTRODUCTION

Throughout their Motion, Defendants seek to foreclose Mr. Johnson from pursuing his claims stemming from the events of March 18, 2015—the night Defendants Miller, Custer, and Cielakie (the "Agents") brutally seized Mr. Johnson without probable cause and in violation of his Fourth Amendment rights. Notably, however, Defendants' Motion more closely resembles a defective and premature motion for summary judgment than it does a motion to dismiss. Indeed, the majority of Defendants' arguments represent nothing more than attempts to argue facts different from those alleged in the Complaint and to draw certain inferences in their favor (in violation of the relevant standards), while at the same time distorting the facts as actually pled. Similarly, Defendants make blanket conclusions of law while ignoring the well-pled facts and contrary case law that belie their conclusions. Under the proper analytical framework and considering the facts as actually pled, Mr. Johnson's Complaint easily states plausible claims for relief. Further, Defendants' immunity claims are premature, and in any event, without merit. At bottom, Defendants' multi-faceted attack on Mr. Johnson's Complaint is without merit and the Court should deny Defendants' Motion.

## ARGUMENT

**I.    Mr. Johnson Alleges Ample Facts to State Claims That Are Facially Plausible**

Pursuant to Federal Rule of Civil Procedure 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Accordingly, a motion to dismiss pursuant to Rule 12(b)(6) must be denied so long as the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Applying the plausibility standard outlined in *Twombly*, the court need only determine whether the factual allegations contained within the plaintiff's complaint "raise a right to relief above the speculative level." 550 U.S. at 555. And a claim is plausible so long as the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (noting further that the plaintiff need only "nudge[] his" claims "across the line from the conceivable to the plausible").

Thus, "a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "Moreover, when, as here, a defendant seeks dismissal of a civil rights complaint, '[the court] must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Presley v. City Of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards*, 178 F.3d at 244) (emphasis in original).

## II.    Mr. Johnson Properly Pled False Arrest in Violation of the Fourth Amendment (Count I)

Mr. Johnson amply alleged that the Agents lacked probable cause and violated his Fourth Amendment rights in the course of their brutal arrest. In seeking to escape accountability for their unlawful actions, Defendants attempt to muddle the distinction between a wrongful stop

without reasonable suspicion and a false arrest without probable cause. However, Mr. Johnson's claim is for false arrest, and therefore, the relevant inquiry is whether the Agents had probable cause to *arrest* him.[1] As is plain from the allegations of the Complaint, they did *not*.

> The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. An arrest is a seizure of the person, and subject to limited exceptions not relevant here, the general rule is that "Fourth Amendment seizures are 'reasonable' only if based on probable cause." *Dunaway v. New York*, 442 U.S. 200, 213 (1979).

*Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001). "Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). "Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.* "If a person is arrested when no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." *Rogers*, 249 F.3d at 290.

Thus, "the appropriate question is whether a reasonable police officer could have believed that arresting" Mr. Johnson on charges of public intoxication, obstructing justice, and possessing a false identification card "was lawful, in light of clearly established law and the information the officers possessed." *See id.* Consequently, "it is necessary to address the contours of the offense at issue in this case." *Sestito v. DeBrular*, 634 F. Supp. 2d 615, 622 (E.D. Va. 2009) *aff'd in part sub nom. Sestito v. Heirwater*, 378 F. App'x 258 (4th Cir. 2010). Examination of "the contours of" public intoxication, obstruction of justice, and possessing a

---

[1] Whether or not the Agents possessed reasonable suspicion to stop Mr. Johnson in the first place is thus immaterial to the relevant inquiry (whether or not the Agents possessed probable cause at the exact moment of arrest), and Defendants' reliance on such arguments is inapposite.

false identification card demonstrate that the Agents completely lacked probable cause at the time they arrested Mr. Johnson.[2]

### A. The Agents Did Not Have Probable Cause to Arrest Mr. Johnson for Public Intoxication

Defendants attempt to justify the Agents' warrantless arrest of Mr. Johnson by arguing that they possessed probable cause to arrest him for public intoxication in violation of Va. Code §18.2–388.  However, a person is "intoxicated" only if he "has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior."  Va. Code Ann. §4.1–100.  As such, probable cause for public intoxication requires signs of "physical impairment caused by alcohol consumption."  *United States v. Brown*, 401 F.3d 588, 597 (4th Cir. 2005).  "[G]lassy, bloodshot eyes" and smelling "strongly of alcohol" is *insufficient* to create probable cause.  *Id*; *see also Sestito*, 634 F. Supp. 2d at 623 (probable cause cannot be based on agitation, as "mere 'agitation,' without more, is simply not indicative of intoxication").

Defendants pay mere lip service to this issue, simply noting vaguely in a footnote that Mr. Johnson's "conduct outside Trinity objectively supports the belief" that he was intoxicated.  Doc. No. 13 at 20.  Yet, the Complaint is devoid of *any* support for their contention.  To the contrary, the Complaint explicitly alleges that, during his exchange with the owner of Trinity, Mr. Johnson was not belligerent and "at no point did Martese show any signs of intoxication."  Compl. ¶¶ 22, 25; *see also* ¶ 32 ("Martese was not yelling, did not appear intoxicated, and was

---

[2] At a minimum, whether the Agents had probable cause is a deeply fact intensive question, inappropriate for resolution on a motion to dismiss.  *See Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000) ("Determining whether the information surrounding an arrest suffices to establish probable cause is an individualized and fact-specific inquiry.")

-4-

not aggressive towards the Agents.").[3]  Accordingly, given the absence of any signs of

intoxication (let alone the actual "physical impairment" required by case law), the Agents could

*not* have reasonably believed that they had probable cause to arrest Mr. Johnson for public

intoxication.  *See Rogers*, 249 F.3d at 290; *Brown*, 401 F.3d at 597 (holding, because "Brown

showed no signs of physical impairment caused by alcohol consumption," that "Officers Lewis

and Petrosky lacked probable cause to arrest Brown for public intoxication").

### B.    The Agents Did Not Have Probable Cause to Arrest Mr. Johnson for Obstruction of Justice

Mr. Johnson purportedly was arrested for violating Va. Code Ann. §18.2–460(A), which

states that "[i]f any person without just cause knowingly obstructs a . . . law-enforcement officer

. . . in the performance of his duties . . . he shall be guilty of a Class 1 misdemeanor."

Obstruction requires "'acts clearly indicating an intention on the part of the accused to prevent

the officer from performing his duty.'"  *Ruckman v. Commonwealth*, 505 S.E.2d 388, 389 (Va.

Ct. App. 1998) (quoting *Jones v. Commonwealth*, 126 S.E. 74, 77 (Va. 1925)).  Importantly, the

statute also "requires 'actual hindrance or obstruction of the officer,' 'opposition or resistance by

direct action.'"  *Rogers*, 249 F.3d at 291 (internal citations omitted).  "'[O]bstruction of justice

does *not* occur when a person fails to cooperate fully with an officer or when the person's

conduct merely renders the officer's task more difficult' or 'frustrate[s] [his or her]

investigation.'"  *Id.* (alteration in original) (emphasis added) (quoting *Ruckman*, 505 S.E.2d at

389, 390).

Here, reviewing the facts as set forth in the Complaint, the Agents had no reasonable

---

[3] Defendants' assertion that Mr. Johnson's illegally obtained statement is relevant to the probable cause inquiry is erroneous.  Doc. No. 13 at 20 n. 4.  The statement was made *after* his arrest, Compl. ¶¶ 41, 44, and therefore cannot be the basis for probable cause.  *E.g.*, *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (probable cause must be based on "the facts known to the arresting officer *at the time of the arrest*") (emphasis added).

belief that Mr. Johnson was attempting to obstruct them.[4]   As alleged in the Complaint, Miller

approached Mr. Johnson "from behind and grabbed his arm" and did not identify himself as law

enforcement. Compl. ¶ 26.  As Mr. Johnson was "startled," he "pulled his arm away and"

continued walking.  *Id.* at ¶ 27.  Miller followed Mr. Johnson, "and again grabbed his arm,

holding his elbow" and, "[f]or the first time . . . demanded to see Martese's 'fake' identification

card, while aggressively attempting to twist Martese's arm behind his back." *Id.* at ¶ 28.  It was

*only* at this point that Mr. Johnson saw his badge and realized Miller was law enforcement.  *Id.* at

¶ 30.  Mr. Johnson immediately attempted to comply with Miller's demand to see his

identification by trying to reach for his pocket and "explain to the agent he had done nothing

wrong."  *Id.* at ¶ 31.  Custer then inserted himself into the situation, grabbing Mr. Johnson's other

arm and preventing him from complying with Miller's order.  *Id.* at ¶ 31.  The Complaint is

devoid of any allegation that Custer witnessed Mr. Johnson being turned away from Trinity, or

that Miller requested his assistance.  Any reasonable officer would have recognized that Mr.

Johnson was not attempting to obstruct anything; rather, he continued to try to explain the

situation and to show them his valid identification card.  *Id.* at ¶ 34.[5]  And because no reasonable

---

[4] Defendants' argument to the contrary in their brief is based on their (skewed) characterization of the facts and drawing inferences in their favor, which is improper on a motion to dismiss.  *See Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 736-37 (E.D. Va. 2010) ("on a motion to dismiss, 'the material allegations of the complaint are taken as admitted,'" and "'the complaint is to be liberally construed in favor of *plaintiff*'") (quoting *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)) (emphasis added).  For example, Defendants' contention that Mr. Johnson "admits" that he "saw Agent Miller," Doc. No. 13 at 18, is too cute by half.  Mr. Johnson alleges that he was "startled from being grabbed from behind by someone he did not know."  Compl. ¶ 27.  The only reasonable inference to be drawn from this allegation is that Mr. Johnson did not know who was grabbing him from behind, especially as "Miller did not identify himself as law enforcement or otherwise attempt to introduce himself to Martese before grabbing his arm."  Compl. ¶ 26.

[5] Defendants' arguments regarding Mr. Johnson's "subjective intent" miss the point.  *See* Doc. No. 13 at 19.  First, they rely on characterizations of the facts that are inappropriate on a motion to dismiss (*i.e.*, arguing that Mr. Johnson was not "slammed" to the ground, despite the Complaint's clear allegations to the contrary).  Second, they ignore the fact that, when reading

-6-

officer could have inferred that Mr. Johnson actually intended to prevent Miller from performing his duties, the Agents plainly lacked probable cause to arrest Mr. Johnson for obstruction. *See Ruckman*, 505 S.E.2d at 389; *see also Wilson v. Kittoe*, 337 F.3d 392, 399 (4th Cir. 2003) ("[T]o constitute an obstruction . . . there must be acts clearly indicating an intention on the part of the accused *to prevent* the officer from performing his duty . . . .") (emphasis in original).

Moreover, Mr. Johnson's actions did not actually obstruct Miller in investigating whether Mr. Johnson possessed a fake identification card. When Miller finally spoke to Mr. Johnson,[6] he "demanded to see Martese's 'fake' identification card." Compl. ¶ 27. Such a request would have required Mr. Johnson to reach into his pocket to retrieve his identification, and thus, actually envisioned the *exact action* Mr. Johnson tried to take. While Defendants complain that Mr. Johnson "attempted to free himself," *see* Doc. No. 13 at 19, Mr. Johnson "was not yelling, did not appear intoxicated, and was not aggressive towards the Agents" Compl. ¶ 33. As such, Mr. Johnson's attempts to follow the Agent's instructions "did not obstruct the ability of the officers to conduct their planned search," and therefore, could not fall within §18.2-460's ambit. *See Rogers*, 249 F.3d at 291 (finding that the plaintiff's actions in "'stepping in front of [the officer]'

---

the Complaint's allegations in context, no reasonable officer would have understood Mr. Johnson's actions to show any actual intent to impede the Agents in performing their duties. Thus, objectively, the Agents lacked probable cause to arrest Mr. Johnson.

[6] Although Defendants argue that the Agents had probable cause to arrest Mr. Johnson for obstruction after he initially pulled away from Agent Miller, the Complaint clearly alleges that, at that time, Miller "approached Martese from behind" and "did not identify himself as law enforcement or otherwise attempt to introduce himself to Martese before grabbing his arm." Compl. ¶ 26. Therefore, when Mr. Johnson "pulled his arm away" from "someone he did not know," Miller had neither identified himself nor given Mr. Johnson *any* commands. *See id.* at ¶ 27. Given this context, no reasonable officer would have believed that Mr. Johnson's simple act showed any actual intent to impede Miller from performing his duties. *See Wilson*, 337 F.3d at 399-400; *see also Ruckman*, 505 S.E.2d at 389 (noting that even "an accused's hiding or seeking 'to escape [an] officer by merely running away [is] not such an obstruction as the law contemplates'") (quoting *Jones*, 126 S.E. at 76) (alteration in original).

and 'getting in his face'" did not constitute obstruction because his actions "did not make it difficult or impossible for the officers" to conduct their planned search).

In fact, it was while he continued to explain the situation and reach for his wallet that the Agents "slammed Martese into the brick walkway, face first," thereby effectively arresting Mr. Johnson. Compl. ¶ 34; *see Chestnut v. Prince George's Cnty.*, No. 08:10-CV-583-AW, 2011 WL 939034, at *3 (D. Md. Mar. 16, 2011) (holding that "Defendant Lineman's alleged act of throwing [the plaintiff] on the ground constituted a false arrest in violation of 42 U.S.C. §1983"). The Agents *still* had no probable cause for Mr. Johnson's arrest, as all he had done was try to explain the situation and present his valid identification card to the Agents. *Id.* at ¶¶ 31, 34. Defendants' implication that Mr. Johnson's "writhing" in pain demonstrated obstruction because he "did not complain of any pain" is belied by context and common sense. *See* Doc. No. 13 at 19. The Agents had just slammed Mr. Johnson onto a brick walkway and he had blood streaming down his face. Compl. ¶ 35. Any reasonable officer would recognize that Mr. Johnson's movements were due to his extreme pain, and not some attempt to impede the Agents or resist. Yet, the Agents continued their vicious treatment of Mr. Johnson as Cielakie roughly handcuffed and shackled him. Compl. ¶¶ 38-40.

In short, there was simply no probable cause to arrest Mr. Johnson for obstruction of justice, as no reasonable officer would have believed the Mr. Johnson's attempt to present his identification and explain the situation was intended to or actually did obstruct the Agents. Accordingly, as in *Rogers*, "because Virginia's obstruction of justice statute clearly fails to encompass [the Agents'] behavior, . . . [Mr. Johnson's] arrest was plainly without probable cause . . . [and] violated his clearly established Fourth Amendment rights." *See Rogers*, 249 F.3d at

292.[7]

**C.     The Agents Did Not Have Probable Cause to Arrest Mr. Johnson for Possessing a Fake Identification Card**

It is settled that "[p]robable cause must be supported by more than a mere suspicion . . . ." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). Yet here, it is apparent that, at best, Miller had only a "mere suspicion" that Mr. Johnson possessed a fake identification card. All Miller witnessed was Mr. Johnson presenting his identification card to the owner of Trinity, the owner giving it back, and Mr. Johnson and the owner engaging in a friendly conversation. Compl. ¶¶ 20-24. This, without more, does not constitute probable cause. Tellingly, the Agents did not even examine Mr. Johnson's identification card. Mr. Johnson tried to show it to them and to explain the situation but could not because the Agents were unreasonably physically retraining him. Compl. ¶¶ 31, 34. Miller did not question the owner of Trinity as to whether Mr. Johnson was using a fake identification, or even ask why Mr. Johnson was turned away. *See* Compl. ¶ 26.

This is simply insufficient to constitute probable cause. *See United States v. Dede*, 83 F. App'x 732, 737-38 (6th Cir. 2003) (finding probable cause to arrest one defendant for possession of a false identification after examining the identification card, but concluding that no probable cause existed to arrest a second defendant for possession of a false identification where the officers did not introduce the card into evidence and did not specify why they thought it was

---

[7] Defendants cite one case, *Martin v. Mendoza*, 230 F. Supp. 2d 665 (D. Md. 2002), as factual support for their position. *Martin* is inapplicable. As an initial matter, *Martin* was an opinion on summary judgment, after discovery. Moreover, there, the disorderly conduct arrest was actually supported by probable cause, because the plaintiff (1) admitted he "was highly offended by [the officer's] suspicions of him and reacted in such a loud and boisterous manner that [the officer] was required repeatedly to admonish him to 'calm down' as they were in a public place and in the presence of other patrons; and (2) was slow . . . in complying with [the officer's] lawful order that he depart the . . . Metro station after [the officer] reasonably concluded that he would not lower his voice or desist from his continued challenge to the propriety of the initial detention." *Id.* at 671. Here, by contrast, Mr. Johnson was not loud or aggressive towards the Agents, and tried to comply with Miller's order immediately upon seeing his badge and receiving his instruction. Compl. ¶¶ 31-32.

inauthentic). Further, the Agents acted unreasonably and "did not avail [themselves] of readily available information that would have clarified matters." *See Sevigny v. Dicksey*, 846 F.2d 953, 957 (4th Cir. 1988) (officer acted unreasonably and without probable cause where he did not make rudimentary inquiries of witnesses and "clarify the factual situation."). Therefore, viewing the well-plead allegations in the Complaint in Mr. Johnson's favor and understanding the contours of the relevant case law, the Agents plainly did <u>not</u> have probable cause to arrest Mr. Johnson for possession of a false identification. *See Rogers*, 249 F.3d at 292.[8]

### III.  Mr. Johnson Has Stated an Excessive Force Claim Against the Agents (Count II)

The Complaint amply demonstrates that the Agents' use of force against Mr. Johnson was objectively unreasonable given the circumstances. In reviewing allegations of excessive force, the officer's actions are analyzed under an "objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). This inquiry "'requires careful attention to the facts and circumstances of each particular case.'" *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (quoting *Graham*, 490 U.S. at 396). "Those facts and circumstances include 'the severity of the crime at issue,' whether the 'suspect poses an immediate threat to the safety of the officers or others,' and whether the suspect 'is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 527 (quoting *Graham*, 490 U.S. at 396). "The extent of the plaintiff's injury is

---

[8] Defendants appear to argue that Mr. Johnson's actions in initially pulling away from Miller supplied the absent probable cause to believe that Mr. Johnson possessed a fake identification. *See* Doc. No. 13 at 18-19. First, this argument is based on a reading of the facts that is plainly contradicted by Mr. Johnson's allegations (*i.e.*, that Mr. Johnson "saw [Miller's] badge, knew he was an officer and still pulled away"). As discussed *supra*, viewed in the light most favorable to Mr. Johnson, a reasonable officer would have understood that Mr. Johnson first did not recognize Miller as law enforcement given Miller grabbed him from behind and later sought only to comply with Miller's directives. Second, even if Mr. Johnson's allegations could be read as Defendants do (which they cannot), the act of instinctively pulling away from an unknown individual who had failed to identify himself says nothing about whether or not Mr. Johnson actually possessed a fake identification. Thus, even if Miller initially had reasonable suspicion to stop Mr. Johnson, nothing about their encounter would have allowed that reasonable suspicion to transform into probable cause.

also a relevant consideration." *Id.* Further, "[t]he objective reasonableness standard is intensely fact-based and [often] cannot be adequately analyzed on a motion to dismiss." *Drake v. Higgins*, No. CIV. A. 97-0143-C, 1998 WL 372641, at *3 (W.D. Va. June 29, 1998).

Here, the facts alleged in the Complaint show that all of the objective reasonableness criteria weigh in Mr. Johnson's favor. First, as discussed above, no crimes had been committed and the Agents had no probable cause to believe that a crime had been committed. A plaintiff who is subjected to police force but has committed no crime has "stated a claim for violation of his constitutional right to be free from excessive police force." *Jones*, 325 F.3d at 528. But, "[e]ven in a case in which the plaintiff had committed a crime, when the 'offense was a minor one,'" the Fourth Circuit has "found that the first *Graham* factor weighed in plaintiff's favor." *Id.* In particular, a "nonviolent misdemeanor offense [i]s not of the type that would give an officer any reason to believe that [the plaintiff] was a potentially dangerous individual." *Smith v. Ray*, 781 F.3d 95, 102 (4th Cir. 2015) (collecting cases recognizing that misdemeanor offenses such as disobeying a peace officer's orders and driving while intoxicated weigh against finding excessive force was justified).

In *Smith*, "at the time [the officer] grabbed [the plaintiff's] arm without explanation, he at most had reason to suspect that she may be guilty of the misdemeanor of contributing to the delinquency of a minor" and the first Graham factor weighed against the officer. *Id.* Here, at the moment Miller grabbed Mr. Johnson's arm, he had at best mere suspicion that Mr. Johnson was in possession of a false identification. The nonviolent misdemeanor nature of that offense requires that the first *Graham* factor weigh strongly against the Agents.[9]

---

[9] Notably, Defendants do not even address the nonviolent nature of the offenses in arguing (incorrectly) that the first *Graham* factor weighs against Mr. Johnson. *See* Doc. No. 13 at 22. As *Smith* teaches, this factor is dispositive in analyzing the first *Graham* factor, regardless of

Second, no reasonable officer would have believed that Mr. Johnson posed an immediate threat to the safety of the Agents or others. A key factor in this analysis is whether the plaintiff is armed or suspected of being armed. *See Jones*, 325 F.3d at 528-29 (finding no reasonable threat of safety where plaintiff was not armed or suspected of being armed). More generally, courts consider if the plaintiff gave any indication that he was "at all inclined to cause [the officer] any harm or that []he had any capacity to do so." *Smith*, 781 F.3d at 102. Mr. Johnson was neither armed nor suspected of being armed. As soon as Mr. Johnson realized that Miller was law enforcement (by that time Miller had already begun to twist Mr. Johnson's right arm behind his back), Mr. Johnson attempted to explain the situation and reach for his identification to comply with Miller's order. Compl. ¶¶ 28, 30.[10] He continued his futile attempt to comply with Miller's order to produce his identification and to "explain the situation" after Custer approached and grabbed Mr. Johnson's left arm. Compl. ¶ 34. Mr. Johnson "was not yelling, did not appear intoxicated, and was not aggressive towards the Agents." Compl. ¶ 32. Thus, he gave no indication he was inclined to harm the Agents or had the capacity to do so. Importantly, the Agents did *not* face a highly tense situation involving hardened criminals or suspected dangerous criminal activity. Rather, they approached a college student out with his friends in a low-risk area immediately adjacent to UVa suspected of nonviolent misdemeanor offenses. The second *Graham* factor thus weighs strongly against the Agents.

Third, no reasonable officer would have believed that Mr. Johnson was attempting to flee.

whether the Agents had probable cause to believe that Mr. Johnson had committed those offenses (which they did not). *See Smith*, 781 F.3d at 102.

[10] Beyond being a self-serving factual argument, Defendants' assertion that Mr. Johnson "did not respond" to the Agents and, during the unlawful encounter, offered no "verbal response or explanation," Doc. No. 13 at 22, is belied by the plain allegations of the Complaint. *See* ¶ 31 (Mr. Johnson "attempted . . . to explain to the agent that he had done nothing wrong"); ¶ 34 (Mr. Johnson "continued to try . . . to explain the situation to the Agents"). Defendants' argument should be given no credence.

-12-

While Defendants argue otherwise (by asserting, without any nod to context, that Mr. Johnson tried to free himself, walk away, and reach into his pocket), *see* Doc. No. 13 at 23, they ignore the fact Mr. Johnson only instinctively pulled away after Miller grabbed him from behind without identifying himself. Compl. ¶ 27. This "instinctive[ ] attempt to pull h[im]self from [the Agent's] grasp" cannot reasonably be considered an attempt to flee. *See Smith*, 781 F.3d at 102; *see also Rowland v. Perry*, 41 F.3d 167, 172, 174 (4th Cir. 1994) (finding third *Graham* factor weighed against officer where plaintiff alleged officer grabbed his collar from behind and plaintiff instinctively pulled away).

Moreover, read in their entirety as required, and not in self-serving sound bites, Mr. Johnson's attempts to "free himself" from the Agents' grasp and reach into his pocket were *so that he could comply with Miller's order*. Compl. ¶¶ 31, 34. The fact that Mr. Johnson tried to comply with Miller's order (once he realized that Miller was law enforcement)[11] *but could not* (because he was being physically restrained) does *not* show any attempt by Mr. Johnson to flee from law enforcement.

Similarly, Defendants' reference to Mr. Johnson's writhing on the ground in pain is a red herring — at that point Mr. Johnson had been slammed to the ground by the Agents and had suffered a severe injury with blood gushing down his face. Compl. ¶¶ 34-37.[12] His slight movements due his to tremendous pain cannot justify the Agents' brutal actions. *See Jones*, 325 F.3d at 530 ("Deputy Keller also cannot justify his actions based on Jones's slight physical movement—simply beginning to stand up 'just a little bit' while in handcuffs in an effort

---

[11] Notably Miller never identified himself as law enforcement throughout the encounter. Compl. ¶¶ 27, 29.

[12] Defendants' characterization of Mr. Johnson's allegation that he was "grabbed" and "slammed" face first into a brick walkway as "subjective" is also improper on a motion to dismiss. *See Nahigian*, 684 F. Supp. 2d at 736-37. Defendants' attempt to argue the facts must therefore be rejected.

(according to Jones) to bring the handcuffs to the front of his body in order to alleviate breathing problems . . . .").[13]

Nor may the Agents baldly assert that Mr. Johnson's claim for excessive force fails merely because he was provided medical treatment after the fact. While denial of medical treatment is a separate, cognizable constitutional claim, the Agents cite no law, and we have found none, that holds a plaintiff's receiving medical treatment needed due to excessive force undercuts a claim of excessive force. For all of these reasons, the third *Graham* factor weighs heavily against the Agents.

Finally, the level of force the Agents used caused Mr. Johnson severe injuries — Mr. Johnson suffered severe facial and other lacerations that bled profusely and required ten stitches, along with facial swelling, and bruising along his torso and arms. Compl. ¶¶ 35, 43. The severity of the injury often demonstrates that the plaintiff has established his excessive force claim. *See Jones*, 325 F.3d at 530-31 (broken nose, facial lacerations, and bruised ribs weighed in favor of establishing excessive force claim); *Rowland*, 41 F.3d at 174 (severity of injury coupled with totality of circumstances showed denial of summary judgment on qualified immunity was proper). As the *Graham* factors all weigh against finding that the Agents' conduct was objectively reasonable, and considering the severity of Mr. Johnson's injuries, Mr. Johnson's excessive force claim should be permitted to proceed. *See, e.g.*, *Guerrero v. Deane*, No. 1:09cv1313 (JCC/TRJ), 2010 WL 670089, at *12 (E.D. Va. Feb. 19, 2010) (finding excessive

---

[13] Defendants' citation to *Dunn v. Vanmeter*, No. 5:09-CV-00085, 2010 WL 3154972 (W.D. Va. Aug. 9, 2010)—a case decided on summary judgment—is likewise inapposite. There, the plaintiff's actions in attempting to enter his house (where there might have been weapons or other contraband) after being informed that he was under arrest, and after he continued to struggle against the officers, allowed a reasonable officer to believe that the plaintiff had been resisting or evading arrest. *See id.* at *5. Because Mr. Johnson's actions in this case do not give rise to a similar belief, the third *Graham* factor also weighs against the Agents.

-14-

force claim should go forward where two of the three *Graham* factors outweighed the fact that the officer "may have [had] a plausible argument that Mrs. Guerrero resisted arrest").[14]

## IV. Mr. Johnson Has Stated a §1983 Failure to Train or Supervise Claim Against ABC (Count III)

As ABC is a self-funding, autonomous entity, Compl. ¶ 11, it is not entitled to Eleventh Amendment Immunity and is thus a "person" under 42 U.S.C. §1983, subject to liability on Mr. Johnson's failure to train or supervise claim (a "*Monell*" claim).

### A. As A Self-Funding, Autonomous Entity, ABC Is Not Immune Under the Eleventh Amendment

Because a self-funding, autonomous entity is not an "arm of the state" entitled to Eleventh Amendment immunity, Mr. Johnson properly stated a claim against ABC. In determining whether an entity is an arm of the state for Eleventh Amendment purposes, "the most important factor is whether the state treasury will pay any resulting judgment." *Harter v. Vernon*, 101 F.3d 334, 338 (4th Cir. 1996). The other factors are "whether the entity exercises a significant degree of autonomy from the state, whether it is involved with local versus statewide concerns, and how it is treated as a matter of State law." *Id.* at 340 (quoting *Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n*, 822 F.2d 456 (4th Cir. 1987)). Notably, Defendants ignore these factors (just as they ignore Mr. Johnson's well-pled allegations) in summarily

---

[14] Further, Mr. Johnson's claims regarding Cielakie's excessive force are properly encompassed in his excessive force claim. In arguing that his claim against Cielakie must fail because handcuffing is not excessive force, Defendants ignore the well-pleaded allegations in the Complaint. Specifically, Defendants ignore that, viewing the allegations in the Complaint in their entirety, Mr. Johnson was not "actively resisting arrest." As alleged, Cielakie's acts of excessive force were his roughness with Mr. Johnson's arms. Compl. ¶ 38. Further, the only case cited in support of their short argument, *Deavers v. Vasquez*, 57 F. Supp. 3d 599 (E.D. Va. 2014), was a decision on summary judgment. Thus, at a minimum, this question cannot be resolved on a motion to dismiss. *See Guerrero*, 2010 WL 670089, at *12 (finding allegations that "Officer Moore allegedly ordered a female officer, Officer ROE, to tighten Mrs. Guerrero's handcuffs, and she complied, even though Mrs. Guerrero never attempted to escape the squad car" sufficient to state a claim for excessive force against Officer ROE).

-15-

concluding that ABC is an arm of the state. Analyzing the factors under the proper framework, ABC is subject to suit by Mr. Johnson.

In an analogous case, the Fourth Circuit ruled that where an entity is self-funded, the first, and most critical factor, "weighs heavily against" finding it an arm of the state. *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 138-39 (4th Cir. 2014). *C.f. DeBauche v. Va. Commw. Univ.*, 7 F. Supp. 2d 718, 722 (E.D. Va. 1998) *aff'd sub nom. DeBauche v. Trani*, 191 F.3d 499 (4th Cir. 1999) (finding judgment paid by university would come out of state treasury where the state treasury "is a major source of funds for the university."). In *Oberg*, in reviewing a decision on a motion to dismiss, the court assessed whether the Pennsylvania Higher Education Assistance Program ("PHEAA") was an arm of the state and thus entitled to immunity. In analyzing the first factor, the court recognized that "PHEAA's substantial 'moneys' derive exclusively from its own operations," and that its funds were available to the agency to be utilized by the board of directors for carrying out the purposes of the agency. *Oberg*, 745 F.3d at 138. Thus, because any judgment would not be paid from the state's treasury, the first factor weighed against a finding of state immunity. *See id.*

Here, Mr. Johnson alleges that ABC "is funded solely through its own revenues." Compl. ¶11. Section 4.1-116 of the Virginia Code, addressing the disposition of ABC's moneys, further supports this conclusion. All moneys collected by ABC "shall be set aside as and constitute an Enterprise Fund" for payment of salaries and all other costs and expenses associated with ABC's administration. *Id.* That section further vests ABC with the power to place a certain amount of its profits into a reserve fund to be used "in connection with the administration" of ABC; thus the funds are available to ABC for purposes of carrying out its functions. *Id.* Defendants' contention that because, per §4.1-116, its funds are deposited into the

-16-

state treasury, ABC is entitled to immunity is erroneous.  *See* Doc. No. 13 at 9.  While its funds are deposited into the treasury, they are kept separate, and when "funds are held in a segregated account apart from general state funds . . . such an arrangement counsels against establishing arm-of-the-state status under this factor."  *Oberg*, 745 F.3d at 138-39.  Accordingly, the first and most important factor demonstrates that ABC is *not* an arm of the state, as any judgment will be paid out of ABC's own revenue, rather than the state's treasury.[15]

The second factor, autonomy from the state, further weighs against finding that ABC is an arm of the state.  *Oberg* is again instructive.  There, the court recognized that PHEAA was financially independent, had the authority to contract, purchase and sell property in its own name, sue and be sued, and control its funds.  *Id.* at 139.  Thus, even though the board was comprised of gubernatorial appointees as well as state legislators or officials and even though state officials had some degree of veto power over its actions, on balance, and "consider[ing] all reasonable inferences in favor of the plaintiff as [the court] must at this stage," the autonomy analysis counseled against finding PHEAA an arm of the state.  *Id.*; *see also id.* at 141-42 (finding second factor weighed against finding VSAC an arm of the state "as a matter of law" where the board was (1) "broadly empowered to adopt policies and regulations governing its lending activities" and (2) was financially independent, and exercised corporate powers, even though Vermont had "important oversight authority over VSAC" and the majority of the board consisted of state officers or gubernatorial appointees); *Harter*, 101 F.3d at 341 (finding "significant autonomy" where sheriff had freedom "to hire, discharge, and supervise the

---

[15] Even if the Court finds it is unclear whether the state would be liable for a judgment, this issue is inapt for resolution on a motion to dismiss.  *See Oberg*, 745 F.3d at 141 (ruling that while unclear whether Vermont would be liable for a judgment against the Vermont Student Assistance Corporation ("VSAC"), "we must construe all facts in the light most favorable to the plaintiff, so we assume that this critical (albeit not dispositive) first factor weighs against arm-of-the-state status").

employees in his office").

Here, Mr. Johnson alleges that "ABC is run by a board which directs all agency operations, including promulgating its own regulations and appointing all employees of ABC." Compl. ¶11. Indeed, statutory provisions vest ABC with broad authority and autonomy. Aside from being self-funding and controlling its funds, ABC can, among other things, lease land, purchase "any plant or equipment," "appoint every agent and employee required for its operations," issue subpoenas and "hold and conduct hearings," "promulgate regulations," "assess and collect civil penalties and civil charges for violations," and finally, "do all acts necessary and advisable to carry out the purposes of this title." Va. Code Ann. §4.1-103. Tellingly, ABC's "power to regulate shall be broadly construed." Va. Code Ann. §4.1-111.

Based on this statutory scheme, there can be little doubt that ABC exercises a significant degree of autonomy from the state. Under *Oberg*, such broad, encompassing powers outweigh the few of indicia of state control that Defendants latch onto, such as the Governor's ability to appoint and remove board members and that the General Assembly "compensates them." Doc. No. 13 at 8.[16] Consequently, the second factor weighs against finding that ABC is an arm of the state.

The third factor, involvement with statewide, as opposed to local, concerns, shows that ABC's activities are both at the local and state level. ABC has the power to determine "the localities within which" liquor stores will be established "and the location of such stores." Va. Code Ann. §4.1-103; *see also* §4.1-119 (ABC establishes stores for the sale of alcoholic beverages "in such counties, cities, and towns" as it finds advisable). Moreover, various

---

[16] Defendants' use of the word "compensates" citing Va. Code Ann. §4.1-102, is misleading. This section merely states that board salaries are "fixed by the General Assembly." As ABC is self-funding, the proper inference is that board salaries are paid from ABC's revenues.

statutory provisions address local referenda for the sale of alcoholic beverages, a local activity with which ABC is involved. *See* Va. Code Ann. §4.1-121 – 129. Thus, there are sufficient indicia of ABC's involvement with local matters that this issue cannot be resolved on a motion to dismiss. *See Oberg*, 745 F.3d at 141.

Finally, ABC is treated independently as a matter of state law. ABC is exempted from the Virginia Public Procurement Act, Va. Code. Ann. §2.2-4300, *et. seq.*, which pertains to "governmental procurement from nongovernmental sources." Va. Code Ann. § 4.1-104. This exemption suggests that ABC is treated as separate from the state. The extensive autonomy afforded ABC supports this conclusion. *See Harter*, 101 F.3d at 343 (level of autonomy is relevant to fourth factor). In short, the relevant factors compel a conclusion that ABC is *not* an arm of the state and thus *not* immune under the Eleventh Amendment.[17]

At a minimum, given Mr. Johnson's allegations that ABC is "funded solely through its own revenues" and "is run by a board which directs all agency operations, including promulgating its own regulations and appointing all employees of ABC," Compl. ¶11, resolution of this issue is premature. *Lamb v. Tenth Judicial Dist. Drug Task Force*, 944 F. Supp. 2d 586 (E.D. Tenn. 2013) is an apt example. In *Lamb*, the plaintiff brought §1983 claims against the Tenth Judicial District Drug Task Force ("DTF"), which defendants claimed was a state entity immune under the Eleventh Amendment. *Id.* at 549. The court rejected this position, as the plaintiff alleged "that the DTF is 'self-financing' and establishes its own rules and regulations.

---

[17] Should the Court find that the third and fourth factors are less clear as to whether ABC is an arm of the state (which it should not), Mr. Johnson respectfully submits that the strength of the first two factors require, at this early stage, the Court to conclude that ABC is not an arm of the state. *See Oberg*, 745 F.3d at 140-41 ("In sum, although the third and fourth factors suggest that PHEAA is an arm of the state, the first (strongly) and second (albeit less strongly) point in the opposite direction. At this early stage, construing the facts in the light most favorable to the plaintiff we must conclude that Dr. Oberg has alleged sufficient facts that PHEAA is not an arm of the state").

-19-

The complaint also notes it is governed by a Board of Directors." *Id.* at 593-94.  Thus, whether

DTF was entitled to Eleventh Amendment immunity could not be decided on a motion to dismiss

as, given the facts alleged, determination of the issue required "consideration of materials

beyond the face of the complaint."  *Id.* at 593-94.

The only case Defendants cite in support of their flawed argument, *Dance v. City of

Richmond Police Dep't*, No. CIV.A.3:09-CV-423-HE, 2009 WL 2877152 (E.D. Va. Sept. 2,

2009) is inapposite.  There, the plaintiff did not allege that ABC is self-funded or that ABC is

autonomous.  *See Dance* Complaint, attached as **Exhibit A**.[18]  Thus, because the plaintiff there

did not fully present the Court with relevant facts as to the nature of ABC (or the relevant case

law), the Court did not have the opportunity to consider the arguments presented here in its

Eleventh Amendment analysis.  *See Harter*, 101 F.3d at 342 (rejecting defendant's proffered

state court holdings as "there is no reasoning provided for [either] court[s'] conclusion")

(alteration in original).  Thus, under applicable law, and construing all inferences in Mr.

Johnson's favor, ABC is *not* an arm of the state and Mr. Johnson's *Monell* claim should proceed.

**B.**     **As ABC is Not an Arm of the State, It is a "Person" Under §1983**

Defendants' assertion that regardless of Eleventh Amendment immunity, ABC is not

subject to an action under §1983 is misguided.  It is settled that "[t]he Eleventh Amendment is a

bar to the jurisdiction of a federal court, and as such, it precedes the statutory question of

'personhood' under §1983. Once the Eleventh Amendment inquiry is complete, there is no need

to consider 'personhood.'"  *Harter*, 101 F.3d at 338.  Thus, "[i]f an official or entity is not

immune from suit under the Eleventh Amendment that official or entity is a 'person' subject to

suit under §1983."  *Id.* (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989)

---

[18] Mr. Johnson respectfully requests that the Court take judicial notice of the *Dance* complaint, which is a publicly filed document.  *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) (court may take judicial notice of court filings in deciding a motion to dismiss).

(while states and state entities as not "persons" subject to suit under §1983, this "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes")). As set forth in detail above, construing the well-pleaded facts in Mr. Johnson's favor, ABC is not an "arm of the state" and is therefore a "person" subject to suit under §1983.

## V. Mr. Johnson Has Alleged Sufficient Facts to State a Plausible Claim for Failure to Train or Supervise (Count III)

As Mr. Johnson has alleged specific facts showing (1) knowledge of ABC agents' widespread use of excessive force, (2) ABC and Walker's failure to properly train the agents or change the relevant policies, customs, or practices, and (3) their perpetuation of such conduct, Mr. Johnson properly alleges his *Monell* claim. A *Monell* claim is properly stated by alleging

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Mr. Johnson alleges that "ABC agents have a history of aggressive, excessive, and unjustified behavior in effectuating their duties," and that the relevant Defendants "had specific knowledge of the policy, custom, or widespread practice of ABC officers' use of unreasonable, disproportionate, and wrongful force and tactics in approaching suspects," highlighted by specific failings, such as the failure to train agents to deploy an appropriate and proportionate level of force. Compl. ¶¶ 50, 53, 83, 86. Mr. Johnson then alleges that this conduct "stems from and is caused by a systemic failure to train and supervise agents by Defendants ABC and Walker," and despite their specific knowledge, Defendants "failed to change this policy, custom, or widespread practice." Compl. ¶¶ 83, 86, 87. Rather, through "policies, discussions and

-21-

advancement decisions, [they] perpetuated, reinforced, and sanctioned such practices." *Id.*

Moreover, Mr. Johnson points to a specific incident in April 2013 involving another UVa student

(also suspected of a nonviolent misdemeanor) against whom ABC agents deployed excessive

force and wrongful tactics, as well as "others that Plaintiff believes to have occurred," as factual

support for Defendants' knowledge. Compl. ¶¶ 84-86. Finally, their "failures were the moving

force behind [the Agents'] wrongful, negligent and/or reckless seizure and assault on Martese."

Compl. ¶ 91.

 Under *Stroud*, these allegations easily state a claim for failure to train, particularly when

bolstered by Mr. Johnson's specific reference to another instance of ABC agents engaging in

constitutional violations. *See Owens v. Balt. City State's Attorneys Office,* 767 F.3d 379, 403

(4th Cir. 2014) (holding allegations of "reported and unreported cases from the period of time

before and during the events complained of establish that the [defendant] had a custom, policy,

or practice of knowingly and repeatedly" violating constitutional rights); *Moody v. City of

Newport News, Va.*, 93 F. Supp. 3d 516, 535 (E.D. Va. 2015) (finding allegations regarding

police department's routine failure to investigate excessive force claims sufficient to state a

*Monell* claim where general allegations regarding failures were "enhanced" with a specific

example of one similar incident seven years prior).

 Despite Defendants' arguments to the contrary, these are factual allegations, which

support Mr. Johnson's *Monell* claim. Indeed, Mr. Johnson is only required to state a claim that is

plausible on its face; "establishing the factual nexus" is the purpose of discovery. *See Edwards*,

178 F.3d at 245 (noting in order to survive dismissal on *Monell* claim, a plaintiff "is not required

under Rule 8(a)(2) to 'detail the facts underlying his claims,' or 'plead the multiple incidents of

constitutional violations that may be necessary at later stages to establish the existence of an

-22-

official policy or custom and causation'") (quoting *Jordan v. Jackson*, 15 F.3d 333, 339 (4th Cir. 1994)); *see also Global Bankcard Servs., Inc. v. Global Merch. Servs., Inc.*, No. 1:11-cv-00110 (IDD), 2011 WL 2268057, at *4 (E.D. Va. June 7, 2011) ("Even under the *Iqbal* standard . . . Rule 8 is still a notice pleading provision and a party's allegations need not be put to proof at the pleading stage."). As such, Defendants' attempt to minimize Mr. Johnson's reference to the April 2013 incident is unavailing. *See Moody*, 93 F. Supp. 3d at 535 (finding a specific reference to *one* similar incident seven years prior provided sufficient facts to survive a motion to dismiss).

Notably, Defendants ignore this critical distinction between pleading standards and evidence required to prevail at trail, as all of the Fourth Circuit cases they cite are appeals from decisions after discovery, on summary judgment, after an evidentiary hearing, or after trial. *See Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999) (appeal from grant of summary judgment); *Shaw*, 13 F.3d at 797 (addressing denial of summary judgment on supervisory liability claim); *Hughes v. Halifax Cnty. Sch. Bd.*, 855 F.2d 183, 184 (4th Cir. 1988) (challenging directed verdict on supervisory liability claim); *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (addressing jury's finding of supervisory liability); *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980) (appeal from after evidentiary hearing and findings of fact and conclusions of law by Magistrate Judge in habeas action).[19] Each of these cases addresses the plaintiff's *burden of proof, not burden of pleading*. In fact, one of the very cases Defendants cite recognizes that the question of supervisory liability "is ordinarily one of fact, not law," and thus ill-suited for disposition on a motion to dismiss. *See Shaw*, 13 F.3d at 799.

---

[19] *Caldwell v. Green*, 451 F. Supp. 2d 811 (W.D. Va. 2006), the sole case Defendants cite that adjudicated a motion to dismiss, is inapplicable. There, the court dismissed the *Monell* claim because the court found no constitutional violations were properly alleged against the deputy; thus the *Monell* claim against the supervisor also failed. *Id.* at 821. As Mr. Johnson has amply alleged sufficient constitutional claims against the Agents, *Caldwell* is inapplicable.

Defendants also incorrectly argue that Walker cannot be liable for failure to train and supervise because Walker was not present or personally involved with Mr. Johnson's brutal, unlawful arrest and his lack of physical proximity to Trinity. Doc. No. 13 at 11. This is a red herring. It does not matter that Walker was not present on the night of Mr. Johnson's assault. Nor does Mr. Johnson need to allege that Walker had knowledge about his agents' unlawful practices at the Corner specifically. Rather, as alleged, Walker had knowledge about the widespread unlawful and excessive practices of his agents, particularly with respect to those (wrongfully) suspected of nonviolent, misdemeanor offenses. This is sufficient to state a claim for negligent supervision and training. *See Owens*, 767 F.3d at 403; *Moody*, 93 F. Supp. 3d at 535. Accordingly, Mr. Johnson has sufficiently alleged his *Monell* claim against Walker and ABC and Defendants' Motion should be denied.

**VI.    Defendants Are Not Entitled to Qualified Immunity as Their Conduct Clearly Violated Mr. Johnson's Well-Established Constitutional Rights and Was Unreasonable**

Public officials are entitled to qualified immunity on constitutional claims only if "their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Balt. Cnty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013). "To establish a qualified-immunity defense, a public official must demonstrate that (1) a plaintiff has not alleged or shown facts that 'make out a violation of a constitutional right,' or that (2) 'the right at issue was [not] 'clearly established' at the time of' its alleged violation." *Owens*, 767 F.3d at 395-96 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Moreover, while "[a] qualified immunity defense can be presented in a Rule 12(b)(6) motion . . . when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" *Id.* (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). Rather, qualified immunity is better decided on a more fulsome record.

-24-

*Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005). Importantly, "[t]he burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Meyers*, 713 F.3d at 731.

As set forth below, the Agents and Walker are not entitled to qualified immunity on any of Mr. Johnson's claims, as the Complaint amply alleges that their conduct was unreasonable and a clear violation of Mr. Johnson's rights. At a minimum, their claimed entitlement to qualified immunity is based on their arguing the facts, and thus cannot be resolved on a motion to dismiss.

**A.** **The Agents Are Not Entitled to Qualified Immunity on Mr. Johnson's False Arrest Claim**

As set forth in detail *supra*, Mr. Johnson has more than sufficiently alleged that the Agents were without probable cause to arrest him, as the facts stated in the Complaint show that Mr. Johnson did nothing to lead the Agents to reasonably believe that a crime was being committed. *See* Compl. ¶¶ 20-34. Further, the right to be free from unreasonable seizures and arrests "has been clearly established constitutional law for decades." *Harrison v. Prince William Cnty. Police Dep't*, 640 F. Supp. 2d 688, 702 (E.D. Va. 2009). Indeed, the Agents do not dispute that this is a clearly established right. Rather, their short and conclusory argument rises and falls on disputed facts. As set forth above in detail, and as alleged in the Complaint, the Agents were completely lacking probable cause to arrest Mr. Johnson. Thus, no reasonable officer could have believed that their conduct was lawful and the Agents are not entitled to qualified immunity.

**B.** **The Agents Are Not Entitled to Qualified Immunity on Mr. Johnson's Excessive Force Claim**

The Agents do not, because they cannot, dispute that on the night of Mr. Johnson's unlawful arrest it "was surely clear that arrestees had a general constitutional right to be free from the use of excessive force by police officers." *Shaw*, 13 F.3d at 802; *see also Guerrero*, 2010 WL 670089, at *13 ("The constitutional violation alleged by the plaintiffs—that the police

-25-

officers in this case used excessive force during their arrest—is a well-established and common claim."). Rather, as with the false arrest claim, their argument relies solely on their factual argument that their conduct was reasonable because they believed such an extreme degree of force was necessary. But, as set forth above, the well-pled allegations of the Complaint plainly establish that under the framework set forth by the Supreme Court and the Fourth Circuit, the amount of force the Agents used was unreasonable. Therefore they are *not* entitled to qualified immunity. *See Jones*, 325 F.3d at 527-28 (applying *Graham* factors and assessing severity of injuries to determine if officer entitled to summary judgment on qualified immunity defense).

### C. Walker Is Not Entitled to Qualified Immunity on Mr. Johnson's *Monell* Claim

As *Monell* liability was clearly established at the time of the Agents' conduct, and the Complaint alleges that Walker knew the agents were using wrongful, excessive force and engaging in unlawful seizures, Walker is not entitled to qualified immunity. To establish a qualified immunity defense, Walker must show that: (1) it was not "clearly established at the time of [his agents'] conduct that [Walker] could be held liable under §1983 for constitutional violations committed by" his agents; (2) it was not "clearly established at the time [Walker] was supervising [his agents] that" engaging in seizures without probable cause and "the degree of force that [Walker] knew that [his agents were] using against arrestees was unconstitutional" and (3) that "a reasonable person in [Walker's] position" would have thought his actions were lawful. *See Shaw*, 13 F.3d at 801 (analyzing qualified immunity on summary judgment).

As an initial matter, Walker has plainly failed to carry his burden of demonstrating that he is entitled to qualified immunity, contending merely that "the allegations against Walker are too deficient to defeat qualified immunity." Doc. No. 13 at 29. Walker does not address any of the elements addressed above, and this conclusory sentence, without any further analysis or

-26-

argument, is simply insufficient to carry his burden. In any event, Walker is not entitled to qualified immunity.

First, *Monell* liability has been clearly established in the Fourth Circuit since 1984. *See Shaw*, 13 F.3d at 802. Thus, it was clearly established at all times relevant to the Complaint that Walker could be held liable for his agents' conduct. Furthermore, the constitutional right to be free from both unlawful seizures and the use of excessive force by law enforcement has been established for decades. *See Harrison*, 640 F. Supp. 2d at 702 (unlawful seizures); *Shaw*, 13 F.3d at 802 (excessive force). Finally, no reasonable officer could have believed that allowing warrantless arrests without probable cause is constitutional, or that allowing brute, significant amounts of force to be used against unarmed arrestees who pose no risk of harm to the officers or anyone else is constitutional. Accordingly, on the facts alleged in the Complaint and applicable law, Walker is not entitled to qualified immunity.

## VII. Mr. Johnson Properly Alleges an Assault Claim Against Miller and a Battery Claim Against All of the Agents (Counts VI and VII)

Consistent with their general approach in this Motion, Defendants' attack on Mr. Johnson's properly pled assault and battery claims ignore the well-pled allegations in the Complaint. In Virginia, to plead a viable claim for assault, the plaintiff must allege "that the defendant 'performed an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in the other person's mind a reasonable apprehension of an imminent battery.'" *Bowie v. Murphy*, 624 S.E.2d 74, 80 (Va. 2006) (quoting *Etherton v. Doe*, 597 S.E.2d 87, 89 (Va. 2004)). In *Bowie*, allegations that the assailant "attempted to strike [the plaintiff] with a camera, placing [the plaintiff] in fear of physical injury" and then actually struck him were sufficient to state a claim for assault because "it asserted that [the assailant] intended to strike [the plaintiff] in the chest." *Id.* Here, Mr. Johnson has plainly

-27-

alleged that Miller approached him "from behind and grabbed his arm without probable cause or reasonable suspicion to believe Martese had committed a crime." Compl. ¶ 110. Moreover, Miller's act was "intentional" and intended to place Mr. Johnson "in reasonable apprehension of bodily harm and/or harmful and/or offensive and unpermitted contact with Martese's person." *Id.* at ¶ 111. This is plainly sufficient to state a claim for assault under Virginia law.

Similarly, battery is "an unwanted touching which is neither consented to, excused, nor justified." *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003). Here, the Complaint plainly alleges that each of the Agents' touching Mr. Johnson was "unwanted, unexcused, and unjustified." Compl. ¶ 114. Furthermore, Mr. Johnson has alleged physical injuries, including facial lacerations requiring stiches, Compl. ¶ 117, as well as bruising and swelling, Compl. ¶ 43.

Defendants' fallback position that the Agents' assault and battery of Mr. Johnson was legally justified is unavailing. As set forth above, the Agents' actions were unlawful and unjustified, as their use of force was unreasonable, negating this defense. *See Rowland*, 41 F.3d at 174 (finding excessive force claim should proceed as objective reasonableness factors weighed in plaintiff's favor, thus "parallel state law claim of assault and battery [are] subsumed within the federal excessive force claim and so go[] forward as well"); *Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010) ("Where a plaintiff alleges both a §1983 excessive force claim and common law claims for assault and battery, [the] determination of the reasonableness of the force used under §1983 controls [the] determination of the reasonableness of the force used under the common law assault and battery claims.").

Moreover, this defense is factual and cannot be decided on a motion to dismiss. *See Crihfield v. City of Danville Police Dep't*, No. 4:07CV00010, 2007 WL 3003279, at *3 (W.D. Va. Oct. 11, 2007) (denying motion to dismiss as to qualified immunity, assault, and battery, as these

-28-

claims and defenses are factual and could not be determined on a motion to dismiss); *see also Smith v. Ray*, 855 F. Supp. 2d 569, 583 (E.D. Va. 2012) *aff'd*, 781 F.3d 95 (4th Cir. 2015) (finding same disputed material facts that precluded summary judgment ruling on reasonableness of officer's use of force precluded resolution of state law claims for assault and battery). Defendants' Motion to Dismiss Mr. Johnson's assault and battery claims should therefore be denied.

## VIII. The Agents Are Not Entitled to Sovereign Immunity Because Their Actions Were Grossly Negligent (Count IV)

As Mr. Johnson has alleged that the Agents were grossly negligent, they are not entitled to sovereign immunity on Mr. Johnson's negligence claim. Sovereign immunity applies to discretionary functions of government employees unless the employee's actions were "grossly negligent." *Veney v. Ojeda*, 321 F. Supp. 2d 733, 747 (E.D. Va. 2004). "Gross negligence is defined as the 'absence of slight diligence, or the want of even scant care.' It is that degree of negligence that 'shows an utter disregard of prudence amounting to complete neglect of the safety of another.'" *McLenagan v. Karnes*, 27 F.3d 1002, 1009 (4th Cir. 1994) (quoting *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987)). Gross negligence is a factual question to be decided by a jury. *Chapman v. City of Va. Beach*, 475 S.E.2d 798, 801 (Va. 1996). In *Chapman*, the Court found the jury verdict of gross negligence was supported by evidence showing the city's knowledge of a dangerous condition but failure to take any action. *Id.* at 801. In *Veney*, the court found a genuine question of material fact existed as to whether the officer was grossly negligent when he threw the plaintiff to the ground and arrested him for obstruction of justice, after finding the record supported plaintiff's position that no reasonable officer would have thought the arrest was lawful and that the use of force was unreasonable and excessive. 321 F. Supp. 2d at 747; *see also Valladares ex rel. Valladares v. Cordero*, No. 1:06CV1378 JCC, 2007

-29-

WL 773911, at *2 (E.D. Va. Mar. 8, 2007) (allegations that officer slammed a 15-year-old boy into a parked car when the boy tried to push the officer off his brother stated a claim for gross negligence).

Here, Mr. Johnson sufficiently alleged that the Agents acted with a total lack of diligence, care, and completely neglected his safety. *See generally*, Compl. ¶¶ 96-99. Specifically, the Agents "willfully, knowingly, wrongfully, negligently and/or recklessly assaulted Martese without any reasonable justification and ignored other non-physical and/or non-violent options to ascertain whether Martese possessed or had used a fake identification card." Compl. ¶ 97. Moreover, "[t]he Agents' actions involved a reckless or callous disregard for the duty they owed to Martese." *Id.* at ¶ 98. These allegations, taken together with Mr. Johnson's allegations regarding the Agents' constitutional violations, sufficiently state a claim for gross negligence. Consequently, the Agents are *not* entitled to sovereign immunity.

## IX. Mr. Johnson States a Negligent Supervision and Training Claim Against Walker Under Virginia Law[20] (Count V)

Defendants contend that Virginia does not recognize a tort for negligent supervision and training. However, Defendants ignore the growing trend among Virginia state and federal courts to allow negligent supervision and training claims to proceed, at least past the motion to dismiss stage. In *Hernandez v. Lowe's Home Centers, Inc.*, 83 Va. Cir. 210, 215 (Va. Cir. Ct. 2011), the court recognized a state law claim for negligent supervision. In doing so, the court distinguished *Chesapeake & Potomac Telephone v. Dowdy*, 365 S.E.2d 751 (Va. 1988), as *Dowdy* held only that there was no duty to supervise under the circumstances of that specific case (*i.e.*, in an employer-employee situation), *not* that a duty to supervise never exists at all. *Id.* at 213. As the Court in *Dowdy* never opined as to whether a claim for negligent supervision by a *third party*

---

[20] Given ABC's assertion of sovereign immunity with respect to this state law claim, Mr. Johnson agrees to withdraw Count V against ABC only.

-30-

might be cognizable, the *Hernandez* court allowed the plaintiff's claim there to proceed. *See id* (allowing plaintiff's claim to go forward against the defendant because the defendant's failure to supervise harmed a third party invitee—not the employee himself).

The *Hernandez* court further recognized that the Supreme Court of Virginia has recognized liability for negligent hiring and negligent retention. *Id.* at 214. In both contexts, an employer is liable when its failure to use reasonable care foreseeably creates a danger of harm to others. *Id.* Similarly, negligent supervision is simply another form of liability for negligence. *Id.* Thus, the court allowed the negligent supervision claim to proceed. *Id.* at 215; *see also Bush v. Serco, Inc.*, 2015 WL 5703116, *4 (Va. Cir. Ct. 2015) (overruling demurrer on negligent supervision claim, finding *Dowdy* distinguishable and the circuit court opinions declining to recognize negligent supervision as not binding).

Similarly, federal courts in Virginia, including this Court, have recognized the split of authority and opined, without deciding, that such a claim may be cognizable. *See Cook v. John Hancock Life Ins. Co. (U.S.A)*, No. 7:12-CV-00455, 2015 WL 178108, at *13-14 (W.D. Va. Jan. 14, 2015*)* (recognizing that "several Virginia circuit courts . . . have interpreted *Dowdy's* holding as limited to its facts, and have allowed a negligent supervision claim to proceed, at least past the demurrer stage" but finding claim inadequately pled under facts of case); *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*, 16 F. Supp. 3d 636, 664 (W.D. Va. 2014) (in context of insurance coverage dispute, finding a plaintiff could present evidence of the insured's negligent supervision in the underlying case and request an instruction on it, thus finding a duty to defend by insurer); *Parker v. Wendy's Int'l, Inc.*, 41 F. Supp. 3d 487, 492 (E.D. Va. 2014) (recognizing split of authority in Virginia courts but declining to determine "whether a claim of negligent supervision would ever be cognizable under Virginia law" because the plaintiff failed to plead facts

-31-

supporting such a claim); *see also Grubb v. Day to Day Logistics, Inc.*, No. 2:14-CV-01587, 2015 WL 4068742, at *13 (S.D. Ohio July 2, 2015) ("[t]his court agrees with *Hernandez's* analysis of Virginia law as it pertains to negligent supervision"); *Clark v. Computer Sci. Corp.*, 958 F. Supp. 2d 208, 214 (D.D.C. 2013) (implying that while Virginia has not officially recognized torts of negligent supervision and training that does not mean they do not exist); *Johnson–Kendrick v. Sears, Roebuck & Co.*, 39 Va. Cir. 314, 319 (Va. Cir. Ct. 1996) (stating that the *Dowdy* Court "did not opine that there would never be a situation in which an employer would have a duty to supervise an employee").

Recent cases have also recognized the viability of a negligent training claim. *See Bush*, 2015 WL 5703116, *4 (recognizing viability of negligent training claim, but finding plaintiff had not sufficiently pled it); *Hernandez*, 83 Va. Cir. 210, 214 (recognizing viability of negligent training claim); *Reynolds v. Crown Equip. Corp.*, No. CIV.A.5:07CV00018, 2008 WL 2465032, at *11 (W.D. Va. June 16, 2008) (Conrad, J.) (recognizing negligent training claim and in analyzing such claim against third-party, finding that "the continuing duty to train falls upon the master," not a third-party).

Given the recent authority recognizing claims for negligent supervision and training, the Court should allow Mr. Johnson's claim to proceed. Moreover, Defendants' assertion in a footnote that Mr. Johnson "has alleged insufficient claims," Doc. No. 13 at 14, should be given short shrift. As the Complaint sets forth in detail, Walker, through his position, owed Mr. Johnson a duty to ensure that his agents were properly trained and supervised. Compl. ¶ 103. Yet Walker failed to do so, despite knowing that his agents posed a serious risk of harm (just like the harm that befell Mr. Johnson), given his agents' history of excessive force in nonviolent situations. Compl. ¶¶ 102, 105. Through his failure, Walker perpetuated, reinforced, and

-32-

sanctioned such practices. Compl. ¶ 105. Walker's failure to properly train and supervise his agents, despite knowing the threat involved, was a proximate cause of Mr. Johnson's injuries because of the Agents' unreasonable and excessive use of force on him. Compl. ¶ 107. Accordingly, Mr. Johnson has sufficiently alleged his negligent supervision and training claims against Walker. *See Trimyer v. Norfolk Tallow Co.*, 66 S.E.2d 441, 443 (Va. 1951) (under Virginia law, elements of tort claim are duty, breach, causation and damages). Defendants' Motion to Dismiss Count V should therefore be denied as to Walker.[21]

## CONCLUSION

For all of the reasons stated herein, the Court should deny Defendants' Motion on all counts, except with respect to Count V against ABC only. To the extent the Court grants Defendants' Motion with respect to any other Counts, Mr. Johnson respectfully requests leave to amend that Count.

Dated: December 10, 2015

Respectfully submitted,

By: s/ Benjamin G. Chew

Benjamin G. Chew (VSB #29113)
Joshua N. Drian (VSB #82061)
Diana L. Eisner (admitted *pro hac vice*)
Attorney for Plaintiff
MANATT, PHELPS & PHILLIPS, LLP
1050 Connecticut Avenue, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 585-6500
Fax: (202) 585-6600
[Email: BChew@manatt.com]
[Email: JDrian@manatt.com]
[Email: DEisner@manatt.com]

---

[21] Defendants' conclusory assertion that Walker is immune from liability on this claim is without merit. The claim in *Lentz v. Morris*, 372 S.E.2d 608, 610 (Va. 1988) was for simple negligence. Here, the allegations rise to the level of gross negligence, given Walker's "reckless disregard for the safety and well-being" of Mr. Johnson. Compl. ¶ 106. *See Chapman*, 475 S.E.2d at 801 (gross negligence is "reckless or total disregard for another's safety" and is a question for the jury). Thus, Walker is not entitled to immunity on this claim. *See Veney*, 321 F. Supp. 2d at 747.

-33-

John S. Davis (VSB #72420)
Charles E. James (VSB #46310)
Daniel Watkins (VSB #84592)
WILLIAMS MULLEN
Attorney for Plaintiff
200 South 10th Street, Suite 1600
P.O. Box 1320 (23218-1320)
Richmond, Virginia 23219
Telephone: (804) 420-6045
Fax: (804) 420-6507
[Email:  dwatkins@williamsmullen.com]

*Counsel for Plaintiff Martese Johnson*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December, 2015, a true and correct copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel of record:

Nicholas F. Simopoulos
General Civil and Trial Unit Manager
Assistant Attorney General
Office of the Virginia Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone: (804) 786-8199
Facsimile: (804) 371-2087
Email: nsimopoulos@oag.state.va.us

/s/_____
Benjamin G. Chew (VSB #29113)
MANATT, PHELPS & PHILLIPS LLP
1050 Connecticut Avenue, Suite 600
Washington D.C. 20036
Telephone: (202) 585-6511
Facsimile: (202) 637-1522
Email: BChew@manatt.com
