**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | |
|---|---|
| MARTESE JOHNSON,        ) | |
|               ) | |
| **Plaintiff,**      ) | |
|               ) | |
| **v.**                ) | **Civil Case No. 3:15-cv-00055-GEC** |
|               ) | |
| **VIRGINIA DEPARTMENT OF**    ) | |
| **ALCOHOLIC BEVERAGE CONTROL,** ) | |
| *et al.,*            ) | |
|               ) | |
| **Defendants.**     ) | |
| _____ ) | |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS'
EXPEDITED MOTION TO STRIKE FIRST AMENDED COMPLAINT AND FOR AN
EXTENSION OF TIME TO FILE "ADDITIONAL MEMORANDA IN RESPONSE"**</u>

      The Virginia Department of Alcoholic Beverage Control ("ABC"), Shawn Walker, John Cielakie, Thomas Custer, and Jared Miller, by counsel, submit this Memorandum in Support of Defendants' Expedited Motion to Strike First Amended Complaint and for an Extension of Time to File "Additional Memoranda in Response." In sum, the plaintiff has vastly exceeded the scope of this Court's limited leave to amend the original Complaint and, in so doing, prejudiced the Defendants in their defense of this action. Thus, this Court should strike the First Amended Complaint, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and, as warranted, grant the Defendants an extension of time to respond as appropriate.

**I.     BACKGROUND**

      **a.     The original Complaint**

      On October 20, 2015, the plaintiff filed an original Complaint, setting forth an alleged March 18, 2015, encounter between the plaintiff and three (3) ABC law enforcement officers, namely Jared Miller ("Agent Miller"), Thomas Custer ("Agent Custer"), and John Cielakie

1

("Agent Cielakie") (collectively "the Agents"). (*See* Dkt. No. 1.) The encounter involved the 12:45 a.m. stop and arrest of the plaintiff outside the Trinity bar on the Corner in Charlottesville, Virginia. (*Id.*) The original Complaint contained the following seven (7) claims:

- Count I: "False Arrest (42 U.S.C. §1983)" against the Agents;
- Count II: "Excessive Force (42 U.S.C. §1983)" against the Agents;
- Count III: "Failure to Train or Supervise (42 U.S.C. §1983 *Monell* Claim)" against ABC and the Defendant, Shawn P. Walker ("Director Walker");
- Count IV: "Negligence" against the Agents;
- Count V: "Negligent Supervision and Training" against ABC and Director Walker;
- Count VI: "Assault" against only Agent Miller; and
- Count VII: "Battery" against the Agents.

(*Id.*) The plaintiff also did not allege any bystander liability claim in Counts I or II.

On November 16, 2015, the Defendants filed a Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. Nos. 12, 13.) The Defendants sought dismissal for failure to state a claim, plausible or otherwise, and they asserted that the totality of the alleged facts and circumstances, from the objective standpoint of a law enforcement officer, demonstrated that reasonable suspicion and probable cause existed for, respectively, the plaintiff's stop and arrest. (*Id.*) Additionally, ABC asserted immunity under the Eleventh Amendment, and Director Walker and the Agents asserted, *inter alia*, qualified immunity. (*Id.*)

**b.** **The January 20, 2016 hearing on the Defendants' pending Motion to Dismiss and this Court's limited leave to amend the original Complaint.**

On January 20, 2016, the Defendants' pending Motion to Dismiss came on for a hearing before this Court. (Dkt. No. 30.) Following argument in Roanoke, Virginia, on January 21, 2016, this Court entered an Order, directing as follows:

1.  Plaintiff's oral motion for leave to file an amended complaint is GRANTED. Plaintiff shall have ten (10) days from the date of this order to file an amended complaint;

2.     Should plaintiff file an amended complaint, defendants' current responsive pleadings will be deemed sufficient to join any new issue raised. Should defendants wish to file additional memoranda in response to plaintiff's amended allegations, defendants shall have twenty (20) days from the date of receipt of plaintiff's amended complaint in which to do so;

3.     Should either side wish to orally argue any new matters raised, request to schedule such a hearing should be made before the end of the thirty (30) day period established for the amended complaint and response. If neither side makes such a request prior to the end of the thirty (30) day period, the matter shall be deemed submitted; and

4.     Discovery in this case is STAYED until the court's ruling on defendants' motion to dismiss. At that time, if necessary, the court shall issue an amended scheduling order.

(Dkt. No. 32.)

As the language of the Order demonstrates, this Court planned to rule on the Defendants' pending Motion to Dismiss, and the Motion to Dismiss was deemed sufficient to cover any amendment to the original Complaint. In fact, this Court specifically did not grant the plaintiff the opportunity to file "additional memoranda" following his amendment, but instead only granted the Defendants that opportunity.

While the Order itself did not set forth the limited scope of the leave to amend granted, the transcript from the January 20, 2016 hearing details that scope and otherwise expresses the Court's intentions as stated from the bench. *See* Exhibit 1, Hr'g Tr. Jan. 20, 2016 (copy of transcript attached); (*see also* Dkt. No. 36.) The transcript shows that this Court granted the plaintiff leave to amend only as to the plaintiff's oral motion to change Count IV from a simple negligence claim to a gross negligence claim. Exhibit 1, Hr'g Tr. 74:8-20, 84:16-85:24. This Court granted no other leave to amend, and at all other times only suggested the possibility of future amendments (or motions to amend) *after* the ruling on the Defendants' pending Motion to Dismiss. *See generally* Exhibit 1; *see also U.F.C.W. Local Health & Welfare Fund v. J.D.'s*

*Mkt.*, 240 F.R.D. 149, 153 (D. N.J. 2007) (reviewing a hearing transcript to ascertain the scope of a court's leave to amend).

> **c.** **Nevertheless, the plaintiff has filed a First Amended Complaint with no less than sixty (60) amendments, additions, changes, or deletions.**

On February 1, 2016, the plaintiff filed the First Amended Complaint. (Dkt. No. 38.) Notwithstanding the limited scope of the leave, the First Amended Complaint vastly exceeds that scope, changing the very substance of the original Complaint, including the claims, factual and legal allegations, and even the *ad damnum*. (*Id.*) Indeed, the plaintiff has changed, added, or *even deleted* no less than a total of sixty (60) allegations in the original Complaint. While the following list is not exhaustive of the impermissible amendments, the plaintiff has:

- **Added**, in an attempt to allege two new **claims** of bystander liability, sixteen (16) new factual and legal allegations against Agent Cielakie (Am Compl. ¶¶ 44-49; 78-82; 96-100);

- **Added** a new bystander liability **claim** against Agent Cielakie in Count I for false arrest (Am. Compl. ¶¶ 74-82);

- **Added** a new bystander liability **claim** against Agent Cielakie in Count II for excessive force (Am. Compl. ¶¶ 96-100);

- **Added** a new **claim** against Agents Custer and Cielakie in Count VI for assault, which he had originally pleaded only against Agent Miller (Compl. ¶¶ 108-12; Am. Compl. ¶¶ 129-34);

- **Added five new demands** for attorney's fees in Count III (Compl. ¶ 94; Am. Compl. ¶ 115), Count IV (Compl. ¶ 99; Am. Compl. ¶ 120), Count V (Compl. ¶ 107; Am. Compl. ¶ 128), Count VI (Compl. ¶ 112; Am. Compl. ¶ 134), and Count VII (Compl. ¶ 119; Am. Compl. ¶ 141);

- **Changed** his original allegation from "Because Martese had recently moved, he inadvertently provided the zip code of his mother's former address in Chicago, Illinois, rather than her current address" to "Because Martese had recently moved, he confused his current and former zip codes and inadvertently provided a zip code different than that on his identification" (*See* Compl. ¶ 20; Am. Comp. ¶ 20);

- **Changed** his original allegation from "Unbeknownst to Martese, ABC Agent Miller had been surveilling Trinity and watched this exchange between Martese and the

Owner" to "Unbeknownst to Martese, ABC Agents Miller, Custer, and Cielakie had been surveilling Trinity and watched this exchange between Martese and the Owner" (Compl. ¶ 24; Am. Compl. ¶ 24);

- **Added** an entirely new allegation that "[n]one of the Agents could hear the conversations that occurred while Martese was at Trinity. As such, they did not know why Martese was denied entry to the bar" (Am. Compl. ¶ 25);

- **Changed** his original allegation from "Agent Miller did not see any signs of intoxication while surveilling Martese" to "[t]he three Agents did not see any signs of intoxication while surveilling Martese" (Compl. ¶ 25; Am. Compl. ¶ 26);

- **Added** an entirely new (and vague) allegation that "[t]he Agents merely witnessed an individual cordially hand his identification to the bouncers at Trinity, the bouncers cordially return that identification to the individual, and the individual having a cordial conversation with the owner before beginning to walk away" (Am. Compl. ¶ 27);

- **Added** an entirely new (and vague) allegation that "Miller approached Martese from behind and in such a way as to obscure the fact that he was law enforcement" (Am. Compl. ¶ 29);

- **Added** an entirely new allegation that "[n]or did [Miller] otherwise learn why Martese had been denied entry from Trinity" (Am. Compl. ¶ 30);

- **Added** an entirely new allegation that "[d]ue to the manner in which Miller approached Martese, Martese did not see Miller before Miller grabbed his arm. Nor did Martese realize that Miller was law enforcement. Martese, startled from being grabbed from behind by someone he did not know, instinctively pulled his arm away and tried to continue walking" (Am. Compl. ¶ 31);

- **Added** two entirely new allegations that "[f]urther, Miller did not order Martese to stop or give any other verbal indication that Martese was not free to leave" and "nor had he verbally ordered Martese to stop" (Am. Compl. ¶¶ 33, 34);

- **Added**, *inter alia*, an entirely new allegation that "Martese then attempted to cooperate with Agent Miller. He began speaking with Miller so as to explain to the Agent that he had done nothing wrong and did not possess a fake identification card" (Am. Compl. ¶ 35);

- **Deleted** "in his pocket" from the original allegation that "Martese attempted to free himself from Miller's grasp to reach for his identification card in his pocket" and **changing** it to "Martese also attempted to free himself from Miller's grasp to reach for his identification card" (Compl. ¶ 31; Am. Compl. ¶ 35);

- **Added** an entirely new allegation that "Martese did not see Custer approach. Nor did Custer identify himself as law enforcement before grabbing Martese's left arm" (Am. Compl. ¶ 36);

- **Added** an entirely new allegation that "[i]nstead, [Martese] attempted to cooperate with the agents, comply with their orders, and explain the situation to them" (Am. Compl. ¶ 37);

- **Added** an entirely new allegation that "[m]oreover, Martese was not armed, and the Agents did not suspect him of being armed" (Am. Compl. ¶ 38);

- **Added** an entirely new and general allegation that the Agents had a "brief conversation with Martese" during the stop (Am. Compl. ¶ 39);

- **Changed** his original allegation from "Martese was writhing in pain" to "Martese, who had been rendered effectively helpless and barely able to move due to his injuries and the two agents roughly restraining him, was writhing in pain" (Compl. ¶ 37; Am. Compl. ¶ 43);

- **Changed** his original allegation in numerous places from "Cielakie then shackled Martese's legs together" to "Cielakie then unnecessarily shackled Martese's legs together without sufficient provocation" (*see e.g.*, Compl. ¶ 40; *see e.g.*, Am. Compl. ¶ 49); and

- **Changed** his original (and incorrect) allegation that Martese was suspected of committing "regulatory offenses" to being suspected of committing "non-violent offenses" (Compl. ¶ 53; Am. Compl. ¶ 62).

(Dkt. Nos. 1, 38); *see* Exhibit 2 (copy of First Amended Complaint highlighting amendments). Pursuant to this Court's January 21, 2016, Order, the Defendants' "additional memoranda in response" to a *permissibly-amended* pleading are due on February 22, 2016, requiring them to file the instant motion with expediency.

## II. ARGUMENT

This Court should strike the First Amended Complaint, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Specifically, the First Amended Complaint has added, changed, revised, or deleted at least sixty (60) paragraphs from the original Complaint, vastly exceeding the limited scope of the leave which this Court granted as to Count IV and changing

6

the very substance of this action. In so doing, the plaintiff has ignored proper procedure, disregarded the instructions and intentions of this Court, denied the Defendants the opportunity to review and, if necessary, oppose the amendments, and prejudiced the Defendants on their pending Motion to Dismiss.

Rule 15(a) of the Federal Rule of Civil Procedure provides that a party may amend its pleading "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has stated that leave of court "shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000); *see also* W.D. Va. Civ. R. 11(c)(2) (requiring a moving party to state "good cause" for leave to amend).

While this Court may grant leave under the standard above, Rule 15(a) only allows substantive amendments which a party specifically requests and which the Court grants. *See e.g.*, *J.D.'s Mkt.*, 240 F.R.D. at 154 (explaining that "[u]nder Rule 15(a), Defendants must have an opportunity to argue that Plaintiffs' proposed amendments . . . would prejudice [them] and . . . would be futile") (citation omitted). Thus, a party's "failure to seek the required leave of court when adding a new allegation is grounds for striking that allegation under Fed. R. Civ. 12(f)." *Id.* (internal quotation omitted).

a. **This Court only granted leave to amend to allow the plaintiff to change Count IV from a simple negligence to gross negligence claim, and, thus, any amendment beyond that scope should be stricken.**

The First Amended Complaint vastly exceeds the scope of the leave this Court granted. As the hearing transcript shows, the scope of this Court's leave was limited granting plaintiff's oral motion to change Count IV from a simple negligence to gross negligence claim. *See* Exhibit 1, Hr'g Tr. 74:8-20, 84:16-85:24. This Court granted no other leave, instead only leaving open

the possibility of amendment in the future after a ruling on the Defendants' pending Motion to Dismiss.[1]  *See generally* Exhibit 1.  This Court did not give the plaintiff leave to revise the substance of more than sixty (60) factual and legal allegations, add three new claims, or delete critical facts, including that the plaintiff was trying to reach into his pocket during the stop.

Accordingly, this Court should strike the First Amended Complaint and all of the additions, changes, deletions, and revisions, as set forth, *supra*, in Section I(c), as vastly exceeding the scope of leave.  *See e.g., Palm Beach Strategic Income, LP v. Salzman,* 457 F. Appx. 40, 43-44 (2d Cir. 2012) (affirming a dismissal of an amended complaint which exceeded the scope of the permissible leave to amend, finding no abuse of discretion); *Campbell v. United States,* 375 F. Appx. 254, 260 (3rd Cir. 2010) (affirming the dismissal of an amended complaint which exceeded the scope of the leave); *Carbajal v. Dorn*, No. CV-09-283, 2010 U.S. Dist. LEXIS 16344, at *3-5 (D. Az. Feb. 4, 2010) (granting a motion to strike when an amended complaint vastly exceeded the limited scope of the leave, i.e., to name a party, by adding more than sixty (60) new allegations and a new claim).

> **b.** **This Court did not grant leave to add factual and legal allegations and claims against Agent Cielakie on bystander liability in Count I or Count II.**

Additionally and most significantly, this Court did *not* grant the plaintiff leave to add new allegations and claims of bystander liability against Agent Cielakie in Count I (false arrest) or Count II (excessive force).  As argued at the hearing, Agent Cielakie has absolutely no place in this action due to his lawful and limited role in handcuffing the plaintiff during his arrest; and the plaintiff's futile attempt to add new allegations and claims against him delays and denies him his

---

[1] For example, this Court did not grant the plaintiff leave to amend as to Counts III and V, which are against ABC and Director Walker, but it left open the possibility should "hard evidence" surface.  *See e.g.*, Exhibit 1, Hr'g Tr. 60:1-15, 81:2-7, 83:4-84:2, 92:2-6.  ABC asserts, irrespective, that the Eleventh Amendment bars any claims against it.

right to be free from these proceedings.[2]  *See generally* Exhibit 1.  This Court should not

sanction the plaintiff's effort to sneak in new allegations and claims against him or the other

Agents at this stage of the case.

Indeed, at the hearing, this Court expressly instructed the plaintiff that it would first rule

on the Defendants' pending Motion to Dismiss before deciding whether to grant leave as to

Agent Cielakie.  Specifically, this Court instructed the plaintiff, "I've told you what I'm going to

do as to Counts Three and Five.[[3]] I'm not as sure about Mr. Cielakie; that's still under

consideration. ***But you'll be granted leave to amend if that turns out against you***."  Exhibit 1,

Hr'g Tr. 78:23-24 (emphasis added).  This language demonstrates this Court's intention to rule

on the Defendants' pending Motion to Dismiss prior to any amendment involving Agent

Cielakie.  Additionally, this Court only stated that a future amendment to add bystander liability

claims was "not out of the realm of possibility." *Id.* at 79:4-6.  But, in so doing, this Court

instructed that future motions would be necessary, instructing that it "***would anticipate***, based on

what's been said here today, ***motions for leave to amend*** only as to counts two [it appears the

Court meant Count III] and five, and possibly ***on the issue of bystander liability***, but you know,

one questions whether that would be a viable cause in that case."[4]  *Id.* pp.93:23-94:2 (emphasis

---

[2] Notably, the plaintiff, who was walking *away* from Trinity, now alleges that Agent Cielakie
was at the door and witnessed the plaintiff pull his arms away *three times* from Agent Custer
and Agent Miller and, after a sudden fall, twist or writhe on the ground.  As argued on January 20,
2016, this repeated pulling away suffices to establish probable cause for obstruction.  *See e.g.,*
*Brown v. Commonwealth*, No. 0770-09-2, 2010 Va. App. LEXIS 20, at *6 (Va. Ct. App. Jan. 19,
2010) (holding that a criminal defendant's "act of pulling his arm from [a police officer]
constituted active resistance against a police officer so as to constitute obstruction of justice.")
[3] Again, Counts III and V are the plaintiff's claims against ABC and Director Walker, on which
this Court did not grant leave to amend at this time.
[4] The Defendants unequivocally agree, and they should have had the opportunity to oppose the
plaintiff's amendments beforehand.  Moreover, opposition is appropriate because the plaintiff
could have easily included bystander liability claims in the original Complaint, notwithstanding
their lack of merit, rather than waiting until *after* the Defendants argued their Motion to Dismiss.

9

added).  Therefore, because this Court did not grant the plaintiff leave to add new allegations and bystander liability claims, this Court should strike the First Amended Complaint.

> **c.**     **This Court also did not grant, and the plaintiff did not request, leave to amend the assault claim in Count VI to add Agents Custer and Cielakie.**

Consistent with the unilateral approach above, the plaintiff also attempts to amend and sneak in a new state law claim against Agents Custer and Cielakie.  Specifically, the First Amended Complaint attempts to amend Count VI for assault to include Agent Custer and Agent Cielakie.  This Court, however, never granted leave to amend in this fashion, and the plaintiff, in fact, never requested it.  *See generally* Exhibit 1.  Thus, this Court should strike the First Amended Complaint for this additional reason.

> **d.**     **This Court also did not grant, and the plaintiff never requested, leave to amend to add five (5) new demands for attorney's fees in Counts III–VII.**

Similarly, this Court never granted leave, nor did the plaintiff ask for leave, to add five (5) new demands for attorney's fees in Counts III, IV, V, VI, and VII.  For the most part, such demands are futile and without legal basis.  That is, with respect to the state law claims in Counts IV, V, VI and VII, no provision of Virginia law permits attorney's fees under the circumstances of this action.[5]  Even if it did, this Court should strike these allegations as well as beyond the scope of the leave granted by this Court.  *See e.g.*, *Index Fund, Inc. v. Hagopian*, 107 F.R.D. 95, 97-98 (S.D.N.Y. 1985) (striking claim for punitive damages raised in amended complaint where plaintiff failed to first obtain leave of court under Rule 15(a)).

---

[5] Had the plaintiff followed appropriate procedure and this Court's instructions, the Defendants could have properly challenged the futility of this and other amendments.  Yet, the plaintiff's unilateral actions have essentially deprived them of that opportunity.

**e.** **The First Amended Complaint should be stricken in its entirety because it attempts to change the very substance of the claims and prejudices the Defendants in their defense.**

On the whole, the plaintiff's unilateral amendments, including the no less than sixty (60) additions, changes, revisions, or deletions to the original Complaint for which leave of this Court was never requested or obtained, change the substance of this action and are unduly prejudicial to the Defendants. The Defendants have raised meritorious arguments in their Motion to Dismiss, upon which this Court expressly informed the plaintiff it would rule. The Defendants have relied upon this sound instruction.

Yet, the plaintiff's unilateral actions depart from this Court's instructions and intentions. In so doing, these actions prejudice the Defendants, in part, because the plaintiff: (1) advances entirely new factual and legal allegations, claims, and theories (e.g., assault now against Agents Cielakie and Custer and now bystander liability claims against Agent Cielakie) which the Defendants have not addressed in their pending Motion to Dismiss; (2) fashions new allegations, claims, and theories in a careful (but deficient) attempt to moot the meritorious arguments which Defendants' pending Motion to Dismiss asserts; and (3) deprives the Defendants of their opportunity to review any requests for an amendment and, if appropriate, oppose them on futility or other grounds. The Defendants should not have to review and oppose amendments for the first time on a prior Motion to Dismiss, and this Court has not sanctioned the plaintiff's unilateral approach. *See Samuel v. Rose's Stores, Inc.*, 907 F. Supp. 159, 162 (E.D. Va. 1995) (noting that a motion to strike is proper to challenge amendments beyond the scope of leave if they "affect the substance of the claims").

In the end, the Defendants are entitled to the safeguards of an orderly practice, including the dismissal of the claims as the plaintiff has originally and deficiently pleaded them, and the

11

opportunity to review and oppose, as warranted, amendments.  The Defendants' Motion to Dismiss is pending, and this Court has expressed its intention to rule.

Given the prejudice involved, this Court should strike the First Amended Complaint in its entirety, including the latest additions, changes, revisions, and deletions, because they are prejudicial and beyond the scope of the leave granted.  *See e.g.*, *In re Keithley Instruments, Inc.*, 599 F. Supp. 2d 908, 913 (N.D. Ohio 2009) (striking allegations in an amended complaint that "exceeded the scope of leave granted by the Court" on grounds that they allowing them to go forward would "severely prejudice Defendants"); *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (holding that "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.")

## III.    CONCLUSION AND REQUEST FOR RELIEF

Wherefore, this Court should grant the Defendants' Motion to Strike First Amended Complaint and for an Extension of Time to File "Additional Memoranda in Response" and strike the First Amended Complaint in its entirety.  Additionally, the Defendants request this Court award the following additional relief as warranted under the circumstances:

- That the plaintiff must file within five (5) days of an Order granting the instant motion a First Amended Complaint in conformity with this Court's January 20-21, 2016, ruling and intentions;

- That the First Amended Complaint may be amended only to change the style of Count IV from a simple negligence claim to a gross negligence claim;

- That the Defendants may file any "additional memoranda in response," as originally permitted by this Court's January 21, 2016, Order, within twenty (20) days of the filing of the plaintiff's conforming First Amended Complaint;

- That the Court subsequently grant the Defendants' pending Motion to Dismiss for the reasons stated on brief and at oral argument; and

- That the parties may subsequently seek oral argument, as originally permitted.

Alternatively, should this Court be inclined to deny the instant motion, the Defendants respectfully request an extension of time of twenty (20) days from the Order denying the same to file their "additional memoranda in response" to the First Amended Complaint. Given the plaintiff's unilateral actions and prejudice to the Defendants, good cause exists for an extension.

**Respectfully submitted,**

**VIRGINIA DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, SHAWN WALKER, JOHN CIELAKIE, THOMAS CUSTER, and JARED MILLER**

By _____/s/ Nicholas F. Simopoulos_____
Nicholas F. Simopoulos (VSB No. 68664)
General Civil and Trial Unit Manager
Assistant Attorney General
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-8199 Telephone
(804) 371-2087 Facsimile
nsimopoulos@oag.state.va.us

Mark R. Herring
Attorney General of Virginia

Rhodes B. Ritenour
Deputy Attorney General

Ronald N. Regnery
Trial Section Chief/Senior Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of February, 2016, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification

of such filing (NEF) to counsel of record for the plaintiff.

By _____/s/_ Nicholas F. Simopoulos_____
Nicholas F. Simopoulos (VSB No. 68664)
General Civil and Trial Unit Manager
Assistant Attorney General
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone: (804) 786-8199
Facsimile: (804) 371-2087
Email:  nsimopoulos@oag.state.va.us
*Counsel for the Defendants*