# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | | |
|---|---|---|
| MARTESE JOHNSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Case No. 3:15-cv-00055-GEC** |
| | ) | |
| **VIRGINIA DEPARTMENT OF** | ) | |
| **ALCOHOLIC BEVERAGE** | ) | |
| **CONTROL,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## <u>DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>

The defendants move to dismiss the First Amended Complaint ("FAC"), pursuant to this Court's May 16, 2016 Order (Dkt. No. 47). As previously argued in their Motion to Dismiss and brief in support ("MTD") (Dkt. Nos. 49, 50), the FAC fails to state a claim against any of the defendants upon which relief can be granted, and this Court should dismiss this action and all claims with prejudice. First, the facts alleged in the FAC alone demonstrate the existence of probable cause to arrest the plaintiff on March 18, 2015, as well as the reasonableness and constitutionality of all alleged conduct of the ABC Agents Miller, Custer, and Cielakie ("Agents"). Also, this action is barred as a matter of law by the Eleventh Amendment, sovereign immunity, and qualified immunities of the defendants. Moreover, the FAC fails to allege objective facts and circumstances to support a single federal or state law claim against any of the defendants, whether plausible or otherwise, and the plaintiff's Opposition to the MTD ("Opposition") (Dkt. No. 53) simply fails to compel differently. For the reasons previously

stated, and because the Opposition fails to present a sustainable legal argument to salvage the FAC from Rule 12(b)(6) dismissal, this Court should grant the MTD.

## ARGUMENT

### I. The alleged seizure was valid because the Agents possessed probable cause to arrest the plaintiff (Count I – False Arrest).

The Opposition misunderstands the relevant probable cause inquiry, ignores critical objective facts and circumstances pled in the FAC *itself*, and incorrectly concludes that the FAC "alleges the absence of probable cause required." (Opp'n, p.10.) As argued in the MTD, Count I fails to state a false arrest claim under 42 U.S.C. § 1983 because the totality of the objective facts and circumstances as alleged in the FAC undeniably demonstrates the existence of probable cause to arrest the plaintiff. Ignored by the Opposition, the constitutionality of a seizure does not depend on the offenses charged or initially suspected as "the arrest is nonetheless valid if, based on the facts known to the officer, objective probable cause existed as to *any* crime." *United States v. McNeill*, 484 F.3d 301, 311 (4th Cir. 2007). Thus, the Opposition is simply wrong that: "'the appropriate question is whether a reasonable police officer could have believed that arresting' Mr. Johnson on charges of public intoxication, obstructing justice, and possessing a false identification card 'was lawful, in light of clearly established law and the information the officers possessed.'" (Opp'n, pp. 10-11) (citing *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001). While the answer to that question is certainly yes, it is not the probable cause inquiry which determines the validity of an arrest.

As previously argued by the defendants, and contrary to the Opposition's unavailing contentions, the FAC fails to state a false arrest claim for several reasons. First, probable cause existed at the outset to arrest the plaintiff for, *inter alia*, the suspected offense of possessing a false identification. Even if that probable cause was arguable or mistaken, reasonable suspicion

ripened into probable cause to arrest him. Additionally, the objective facts and circumstances alleged in the FAC demonstrate the existence of probable cause to support a valid arrest for the offenses of obstruction and public intoxication. As such, the alleged seizure of the plaintiff was reasonable, there was no violation of the Fourth Amendment, and Count I should be dismissed.

### A. The Relevant Probable Cause Framework

It is well-established that an arrest is valid under the constitution if an arresting officer acts with probable cause. *United States v. Williams*, 10 F.3d 1070, 1073 (4th Cir. 1993). Probable cause means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williams*, 10 F.3d at 1073-1074 (citation omitted). A determination of whether an officer has sufficient probable cause to arrest is a fact-specific inquiry determined under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

In conducting this inquiry, a court may consider "an officer's practical experience and the inferences the officer may draw from that experience." *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004) (citing *Ornelas v. United States*, 517 U.S. 690, 700 (1996)). In determining whether probable cause exists, the court "examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer amount' to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas*, 517 U.S. at 696). In this context, "the probable cause standard is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Pringle*, 540 U.S. at 370-71 (quoting *Illinois v. Gates*, 462 U.S. at 231). Indeed, "it is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily,

or even usefully, reduced to a neat set of legal rules." *Id.* Probable cause must be supported by more than a mere suspicion, but, importantly here, evidence sufficient to convict is not required. *Wong Sun v. United States*, 371 U.S. 471, 479 (1963); *see also Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012) (stating that "probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.") (citing *Adams v. Williams*, 407 U.S. 143, 149 (1972)).

The Opposition does not address these well-established principles of probable cause, but rather focuses on authority which almost exclusively deals with Fourth Amendment qualified immunity at the summary judgment level.[1] (Opp'n, pp. 10-11) (citing *Rogers* 249 F.3d 279) (resolving "the sole issue before [the Court], whether the officers are entitled to summary judgment in this case on the basis of qualified immunity."); *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (denying qualified immunity on summary judgment); *Sestito v. DeBrular*, 634 F. Supp. 2d 615, 622 (E.D. Va. 2009) (denying summary judgment to officers where disputed facts did not show probable cause to support public intoxication arrest);[2] *Wadkins v.*

---

[1] The Opposition cites *Safar v. Tingle*, No. 1:15-cv-467, 2016 U.S. Dist. LEXIS 46253 (E.D. Va. Apr. 4, 2016). *Safar* is currently on appeal to the Fourth Circuit, and the Opposition cites it for the State law proposition that "when the facts relating to probable cause are in dispute, there is a question of fact for the jury." *Id.* at \*12. However, in *Safar*, the district court sustained an officer's motion to dismiss the federal 42 U.S.C. § 1983 claim for unconstitutional arrest, finding that "once an arrest warrant has issued, 'a prosecutor retains all discretion to seek an indictment' and 'a police officer is not liable for a plaintiff's unlawful seizure of a person . . . .'" *Safar*, at \*23. Thus, while arguably germane to the instant case, *Safar* does not support the survival of Count I of the FAC past the pleading stage.
[2] Though finding a lack of probable cause "at this stage," the district court significantly noted: "[i]mportantly, defendants do not seek, nor does the record support, a finding that plaintiff's initial arrest was supported by probable cause for any other crime." *Sestito,* 634 F. Supp. 2d at 623-24 n.14.

*Arnold*, 214 F.3d 535, 539 (4th Cir. 2000) (finding detective entitled to qualified immunity on summary judgment).[3]

The instant probable cause inquiry (whether probable cause as to any crime existed based on the facts known to the Agents at the time of the arrest) is different than the two-part qualified immunity inquiry regarding potential violation of a clearly established constitutional right ("whether a police officer acting under the circumstances at issue [1] reasonably could have believed that [2] he had probable cause to arrest . . . ." *Sevigny v. Dicksey*, 846 F.2d 953, 956 (4th Cir. 1988) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)). For the qualified immunity inquiry, "a court's determination whether a constitutional right not to be arrested under particular circumstances was 'clearly established' requires identification both of the facts known to the arresting officer and the contours of the criminal offense asserted as the justification for arrest." *Pritchett*, 973 F.2d at 314. Such was the only issue in *Rogers* as well, and the cases cited by the Opposition fail to address whether probable cause exists in a particular context such that an arrest is valid under the Constitution.

**B.     Probable cause existed to arrest for possession of a false identification in violation of Virginia Code §§ 4.1-305(B) and 18.2-204.1(B).**

First, the FAC and Opposition place central emphasis on their allegations that the plaintiff's identification card was valid and that he was later charged with obstruction and public intoxication. (FAC ¶¶ 3, 20; Opp'n, pp.11-14.) Whether the plaintiff's identification card was in fact valid speaks to the sufficiency of the evidence to convict the plaintiff, not to the existence of probable cause to validate an arrest. *See DeFillippo*, 443 U.S. at 36 (holding that "the validity of

---

[3] The Opposition cites *Wadkins* for the proposition that determination of whether probable cause existed for the plaintiff's arrest is "inappropriate for resolution on a motion to dismiss." (Opp'n, p.11). This simply is not the holding in *Wadkins* – there was no motion to dismiss at issue before the Fourth Circuit and the Court never addressed the sufficiency of a plaintiff's pleadings regarding probable cause.

the arrest does not depend on whether the suspect actually committed a crime . . . .") The fact that the plaintiff was eventually charged with other offenses besides possession of a false identification is also of no moment because "it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with . . . or whether a person is later acquitted of the crime for which she or he was arrested." *Sennett*, 667 F.3d at 535-36 (citations omitted)); *see also United States v. Lesane*, 498 F. App'x 363, 366 n.2 (4th Cir. 2012) (stating that "[t]he fact that Lesane was arrested for interfering with a police investigation does not negate the fact that officers may also have arrested him for a narcotics offense.")

Second, according to the Opposition, "all that the Agents witnessed was 'an individual cordially hand his identification to the bouncers at Trinity, the bouncers cordially return the identification to the individual, and the individual having a cordial conversation with the owner before beginning to walk away.'" (Opp'n pp.11; citing FAC ¶ 27.) At the outset, this was not "all that the Agents witnessed," and the Opposition cannot avoid dismissal of Count I by simply ignoring the totality of the remaining objective facts and circumstances alleged on the very face of the FAC – which undeniably demonstrate the existence of probable cause in validation of the arrest at issue. (MTD, Dkt. No. 50 pp.21-26).

Indeed, the Agents' alleged observations of the plaintiff before any stop or seizure, as pled in the FAC, more than sufficiently establish probable cause to effectuate a valid arrest for possession of a false identification in violation of Virginia Code §§ 4.1-305 and 18.2-201, thus ending the false arrest inquiry. As alleged, the Agents observed the plaintiff's presentation of his identification to the owner and bouncers at the door of a bar at approximately 12:45 a.m. on St. Patrick's day, and after standing in a line, the plaintiff's subsequent exchange with the owner

while he held the identification, the owner's return of the ID to the plaintiff, and the plaintiff walking away as he was denied entry to the bar.

For reasons that remain unclear, the Opposition contends that probable cause did not exist despite the Agents' observations because: "[n]one of the Agents could hear the conversations that occurred while Martese was at Trinity [so] they did not know why [he] was denied entry to the bar." (FAC ¶ 25; Opp'n, p.11). This new allegation in the FAC simply has no bearing on the probable cause inquiry. Again, "[b]ecause probable cause is an objective test, we examine the facts within in the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act." *Gomez v. United States*, No. 97-1025, 1998 U.S. App. LEXIS 7707, at *8-9 (4th Cir. Apr. 20, 1998). Even if that allegation somehow could be read to temperate the bases for probable cause, "the fact that any one fact . . . would not alone support a finding of probable cause does not mean that probable cause was absent, since '[a]n assessment of the presence of probable cause must be based on the totality of the relevant circumstances.'" *Sennett* at 536 (citing *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011)).

The Opposition insists the Agents' observations of the plaintiff alone did not establish probable cause to arrest for possession of a false identification because that would "ignore the host of other reasons why Mr. Johnson might have been turned away from Trinity." (Opp'n, p.12). The plaintiff hypothesizes that "perhaps the bouncer at the door did not like Mr. Johnson or perhaps he was wearing the wrong type of shoes or an inappropriate hate. Perhaps the establishment was at capacity or perhaps it allowed a specific ratio of women to men that had not been met." (*Id.*) It is difficult to fathom how a reasonable person observing the rejection of the plaintiff's identification card by the Trinity bouncers at the door could conclude he was denied

entry because of his shoes, hat, or gender. And, if the bar was at capacity, there would have been no need to check ID cards at the door. In any event, the FAC affirmatively demonstrates the Agents believed the plaintiff was denied entry because he had presented a false identification at the door. (FAC ¶ 2). The Agents believed this because they witnessed the bouncers reject the plaintiff's card at the door and deny him entry, believing he had presented a false identification. The Opposition's alternative "hypotheticals" are as implausible as they are irrelevant to the instant inquiry.

Next, the Opposition argues the Agents lacked probable cause because "they 'did not stop to speak to the owner of or any other bouncers at Trinity;' or even ask why Mr. Johnson had been turned away." (Opp'n, p.13; citing FAC ¶ 30). Citing *Sevigny*, 846 F.2d at 957, the Opposition concludes: "[T]his failure 'to avail [themselves] of readily available information that would have clarified matters" means the arrest was invalid because it lacked probable cause. (Id.). This is simply not true.[4] The inquiry for probable cause to validate an arrest "is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct a further investigation." *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998); *see United States v. Galloway*, 274 F. App'x 241, 248 (4th Cir. 2008) (rejecting such an argument "because once probable cause to arrest a suspect is established, an officer is not required to continue to investigate for exculpatory evidence before arresting such suspect."); *see also United States v.*

---

[4] Based on the facts and circumstances alleged in the FAC, there was no need for "information that would have clarified matters" as it was clear from the Agents' observations that the plaintiff was denied entry to the bar due to the belief that he presented a false ID to the bouncers at the door. This supplied the Agents with probable cause to make an arrest, and no further investigation was required by law. Had the Agents nonetheless interviewed the owner or bouncers at Trinity before taking further action, they would have been told what they already knew - that the plaintiff was denied entry to Trinity because he was believed to have presented a false identification to the bouncers at the door.

*Sokolow*, 490 U.S. 1, 11 (1989) (declaring that "the reasonableness of an officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques.")

Contrary to the Opposition, *Sevigny* does not stand for the proposition that the Agents were required to make "rudimentary inquiries" of the owner and bouncers at Trinity and a "reasonable investigation before finding the existence of probable cause." (Opp'n, pp.13, n.2). This was not the holding in *Sevigny*, which addressed an officer's qualified immunity assertion, rather than the existence of probable cause to validate an arrest, declaring "[W]e start with the fact, as found by the jury and not challenged on this appeal, that [the officer] did not have probable cause to make the arrest." *Id.* at 956. Moreover, probable cause is not some "finding" to be made by an officer only upon an active investigation of potentially suspicious conduct. Rather, it is an objective legal concept that exists, without regard to an officer's state of mind, when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Williams,* 10 F.3d at 1073-1074.

Ultimately, the totality of the objective facts and circumstances alleged in the FAC shows that based on the facts known to the Agents at the time of the alleged seizure at issue, a reasonable person would have formed the justifiable belief that the plaintiff possessed and had attempted to use a false identification in order to access Trinity, in violation of Virginia Code §§ 4.1-305(B) and 18.2-204.1(B). This probable cause validated the alleged arrest of the plaintiff and Count I should be dismissed for failure to state a claim.

**C.** **Notwithstanding the existence of probable cause, reasonable suspicion also existed and and, as a result of the plaintiff's conduct, ripened into probable cause to arrest.**

Even if probable cause was arguable, or if the Agents were mistaken as to probable cause, reasonable suspicion undeniably existed, and the plaintiff's objective conduct, based on the objective facts and circumstances alleged in the FAC, quickly ripened that suspicion into probable cause. Thus, Count I also fails under this lens. The Opposition appears to concede that the Agents did in fact suspect the plaintiff possessed a false identification card. (Opp'n, pp. 10, 11, 13). However, without any legal support whatsoever, the Opposition incorrectly concludes "it is immaterial whether the Agents possessed reasonable suspicion to stop Martese in the first place." (*Id.*, p. 10). Again, this is not true. An initial seizure of a suspect may be supported by a reasonable articulable suspicion of criminal activity sufficient to justify what is called a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). "Brief stops in order to determine the identify of a suspicious individual or to maintain the status quo while obtaining more information are permitted if reasonable in light of the facts known to the officers at the time." *United States v. Perate*, 719 F.2d 706, 709 (4th Cir. 1983). Reasonable suspicion to conduct a stop may "transform," or "ripen," into probable cause to perform an arrest. *United States v. Johnson*, 599 F.3d 339, 340 (4th Cir. 2010).

The objective, not subjective, facts, as alleged in the FAC, show that reasonable suspicion existed to stop the underage plaintiff outside Trinity. The Agents observed the plaintiff standing in a line and then showing an identification card to the owner of Trinity, witnessing a verbal exchange about the identification card, the return of the identification card to the plaintiff, and him being "denied entry." The plaintiff started to leave the pub. A reasonable officer in the position of the Agents, possessed, at the least, an articulable and particularized set

of facts to believe that criminal activity was afoot. Contrary to the Opposition, the Agents were under no obligation to speak to the owner of Trinity, or witnesses, first and could have immediately caught up to and stopped the plaintiff. Again, the Supreme Court has stated that the "[r]easonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques." *United States*, 490 U.S. at 11. This is because "[s]uch a rule would unduly hamper the police's ability to make swift, on-the-spot decisions . . . and it would require courts to 'indulge in unrealistic second-guessing.'" *Id.* (quotations and citations omitted).

The Agents' reasonable suspicion quickly ripened into probable cause. The plaintiff, having displayed conduct sufficient to warrant a belief of criminal activity in the totality, started to walk away from the scene. Agent Miller stopped the plaintiff from behind. The plaintiff, without saying a word, opposed the stop. By force, the plaintiff pulled away, freed himself, and continued to walk away. At this moment, reasonable suspicion had ripened into probable cause for a misdemeanor offense. The Opposition attempts to justify the plaintiff's defiance to law enforcement by arguing, implausibly, that "Agent Miller approached [him] from behind 'in such a way as to obscure the fact that he was law enforcement,' and that Miller 'did not identify himself as law enforcement.'" (Opp'n, p.13; citing FAC ¶¶ 28-29). The Opposition further explains the plaintiff was thus "startled from being grabbed from behind by someone he did not know, instinctively pulled his arm and tried to continue walking.'" (*Id.*; FAC ¶ 31).

The plaintiff's objectively silent and physically opposed conduct, as alleged in the FAC, did not cease. Agent Miller followed the plaintiff and grabbed him a second time, seeking the

identification card.[5]  The FAC alleges that Agent Miller merely attempted "to twist Martese's arm behind his back" and "[a]t or around this point . . . Martese saw the officer's badge and realized he was a member of law enforcement." (FAC ¶¶ 32, 34). The FAC does not allege the Agent Miller actually twisted the plaintiff's arm, and the attempted twist was presumably thwarted as the plaintiff, who still had one free arm this entire time, again tried to free his arm from Agent Miller's grasp and reach into his pocket.  Departing from the clear language of the FAC, the Opposition argues "*after* having his arm twisted behind his back without provocation (and without being given any notification that Miller was an ABC agent), Martese 'saw the officer's badge and realized that he was a member of law enforcement.'" (Opp'n, p.6; citing FAC ¶ 34).  The factual allegations in the FAC, rather than the revisionist framing by the Opposition, control here.[6]

In the totality, the plaintiff's second attempt to free himself and reach into his pocket, while still having a free arm, gives rise to a reasonable inference of unknown conduct, even a future use of force.  Upon this second act of resistance, the Agents had a third cause to arrest the plaintiff.  The plaintiff's subsequent physical opposition to Agents Custer and Cielakie, *viewed*

---

[5] The Opposition represents that "only *after* this second unwarranted and unannounced contact did Agent Miller 'demand[] to see Martese's 'fake' identification card, while aggressively attempting to twist Martese arm behind his back.'" (Opp'n, p.6).  However, the FAC does not state that Agent Miller's request for the identification card came after the second contact.  (FAC ¶ 32).

[6] The plaintiff's attempts to parse out each of his individual movements to show their innocence, while implausibly describing the individual actions of law enforcement, does not extinguish the clear existence of reasonable suspicion which ripened into probable cause to arrest the plaintiff on multiple crimes.  Addressing such attempts, "[T]he Supreme Court has consistently rejected the notion that courts can second-guess police officers by speculating on possible innocent reasons for a[n] [arrestee's] actions. It has likewise prohibited courts from engaging in the sort of 'divide-and-conquer analysis' that treats each action by a[n] [arrestee] in isolation, finds each of them to be possibly innocent, and thus picks apart an officer's reasonable assessments." *United States v. Perkins*, 363 F.3d 317, 327 (4th Cir. W. Va. 2004) (quoting *United States v. Arvizu*, 534 U.S. 266, 277-78 (2002)).

*objectively and as stated in the FAC*, corroborate the reasonableness of the Agents' beliefs.

Therefore, Count I fails under this alternative lens.

### D. The Agents also possessed probable cause to believe that the plaintiff was obstructing or about to obstruct, in violation of Virginia Code § 18.2-460.

The probable cause to arrest the plaintiff for possessing a false identification ends the inquiry. *See Sevigny*, 846 F.2d at 956 n.4. Yet, the Opposition, as argued above, attempts to distract by relying more upon the ensuing offenses and charges of obstruction and public intoxication, in violation of Virginia Code §§ 18.2-460 and 18.2-388. Even considering these offenses in the inquiry, probable cause existed under the totality to arrest for them as well.

With respect to obstruction, Virginia Code § 18.2-460 provides that, "[i]f any person without just cause knowingly obstructs a . . . law-enforcement officer . . . in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer,. . . he shall be guilty of a Class 1 misdemeanor." Va. Code § 18.2-460(A). On this offense, the Supreme Court of Virginia has explained:

> To constitute obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to "obstruct" ordinarily implies opposition or resistance by direct action and forcible or threatened means.

*Love v. Commonwealth*, 212 Va. 492, 495 (1971) (quotation omitted). Various circumstances, even minor in nature, have supported findings of probable cause to arrest for obstruction. *See e.g., Figg*, 312 F.3d at 637 (holding that a plaintiff's exiting from her vehicle during a traffic stop after being ordered to remain inside the vehicle made it "undisputed that the officers at the scene had probable cause to believe that [the plaintiff] had violated Virginia's obstruction of justice statute"); *Smith v. Ray*, 855 F. Supp. 2d 569, 586 (E.D. Va. 2012) (holding that "even a minor act of resistance can be considered obstruction of justice" and finding that the act of "pulling [an]

13

arm away" from a police officer established probable cause for an arrest); *Guerrero v. Deane*, 750 F. Supp. 2d 631, 653 (E.D. Va. 2010) (holding that a police officer had probable cause to arrest a plaintiff simply for being "about to commit" an obstruction when he suddenly came toward the officer, made hand gestures, and stood "very close"); *Coffey v. Morris*, 401 F. Supp. 2d 542, 547 (W.D. Va. 2005) (finding probable cause to arrest a plaintiff for obstruction when she left her vehicle during an investigation and attempted to walk to her nearby residence).

Here, and even though it is not necessary for obstruction, the plaintiff applied objective force when he pulled away and tried to free himself, while still having a free arm. Additionally, the objective facts stated in the FAC support and reveal a justifiable and reasonable belief that the plaintiff's acts were also intended to obstruct the Agents in their duties of stopping and arresting him. The plaintiff was walking away, physically opposed Agent Miller's initial approach, and repeatedly attempted to "free himself" from law enforcement's constitutional efforts in effecting a lawful seizure of the plaintiff. Irrespective of whether the evidence is sufficient to convict the plaintiff, as the Opposition essentially posits;[7] a reasonable police officer could have believed that the plaintiff was obstructing or about to obstruct. The plaintiff's conduct, viewed from the perspective of an officer at the scene, defeats this claim.[8]

Moreover, the purported explanations posited by the FAC and the Opposition for the plaintiff's acts of defiance to law enforcement should be summarily rejected as both implausible and irrelevant to the instant probable cause inquiry. "[T]he test is not whether the conduct under

---

[7] For example, the Opposition cites to *Ruckman v. Commonwealth*, 28 Va. App. 428, 430 (1998), but that case expressly held that the "the evidence" was "insufficient to support the conviction" for obstruction.

[8] The Opposition also relies upon *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001), but *Rogers* is highly distinguishable from the plaintiff's action. In addition to addressing the issue of qualified immunity, as opposed to probable cause to validate an arrest, it involved only an act of "purely verbal resistance" to the search of a home. Here, the plaintiff said not a single word, save "I go to UVA," and his resistance outside a pub was physical in nature.

question is consistent with innocent behavior " and an arrestee's "plausible explanations, based on [his] subjective mindset . . . do not factor into the probable cause calculus . . . ." *Sennett* at 531 (citing *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009); *see also United States v. Booker*, 612 F.3d 596, 601 (7th Cir. 2010) (finding "the possibility of an innocent explanation does not vitiate properly established probable cause.").  The Opposition cannot avoid a finding of probable cause as to obstruction for example, by insisting that the plaintiff's acts to "free his arms so he could reach in his pocket" (FAC ¶94) were innocent attempts to comply with law enforcement's demands to see his identification.  For this alternative reason, Count I fails to state a false arrest claim under § 1983.

     **E.**     **The Agents also possessed reasonable suspicion and probable cause to believe that the plaintiff was intoxicated in public, in violation of Virginia Code § 18.2-388.**

     The Agents also possessed probable cause to arrest the plaintiff for public intoxication, in violation of Virginia Code § 18.2-388.  Virginia Code § 18.2-388 directs, in part, that, "[i]f any person . . . is intoxicated in public . . . he shall be deemed guilty of a Class 4 misdemeanor."  Virginia law defines "intoxicated" as "a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior."  Va. Code § 4.1-100.  Contrary to the Opposition, no requirement exists in Virginia that a person be "physically impaired" in order to be legally intoxicated.  *See McGhee v. Commonwealth*, 280 Va. 620, 624 (2010) (recognizing the decision in *United States v. Brown*, 401 F.3d 588 (4th Cir. 2005), but merely "assuming without deciding" that a physical impairment is a requirement for the offense).

     The totality of the FAC's objective, not subjective, facts and circumstances supports a belief that the Agents had probable cause to arrest the plaintiff for public intoxication.  A

reasonable police officer could have believed that the plaintiff's behavior outside Trinity, coupled with his inability to recite his own zip code on his own identification card, was the result of alcohol. While the FAC and Opposition insist the Agents did not actually hear the plaintiff fail to accurately recite his own zip code to the Trinity bouncers at the door (FAC ¶ 25), this situation was verbally relayed to Agent Miller (FAC ¶ 35) upon his initial approach and reiterated on multiple occasions to the Agents before the plaintiff eventually submitted to the seizure. While the FAC and Opposition claim that the plaintiff was not "belligerent," did not "yell," and was not "aggressive," these characteristics are not essential for a person to be legally intoxicated under Virginia law. Furthermore, the FAC admits that the plaintiff made incriminating statements about his alcohol use to Agent Miller after the arrest, further supporting a charge of public intoxication. While the plaintiff does not disclose his specific statements to this Court, it would not be "manifestly unreasonable" for this Court to consider the general nature of them when examining whether a reasonable police officer under the totality of circumstances had a justifiable belief to arrest him. *Arrington v. City of New York*, No.15-170, 2015 U.S. App. LEXIS 18005, at *5-6 (2d Cir. Oct. 15, 2015). Thus, to the extent the plaintiff attempts to limit his false arrest claim to the public intoxication charge, this Court should reject the attempt.

**F.    The FAC fails to state a claim for false arrest against Agent Cielakie under a theory of bystander liability.**

Because the alleged seizure at issue in this case was validly supported by probable cause, there was no constitutional violation for false arrest and thus no grounds for bystander liability against Agent Cielakie. To the extent the FAC alleges that Agent Cielakie participated in effectuating the alleged seizure, by virtue of using leg shackles and handcuffs while the plaintiff was on the ground, then the plaintiff's allegation of bystander liability, fails as a matter of law.

16

*See Myers v. Taylor*, C.A. 1:14-cv-156, 2015 U.S. Dist. LEXIS 162791 (N.D. W. Va. 2015) (dismissing claim of bystander liability on grounds that an officer "cannot be liable as a bystander to a violation he alleged committed.") The Opposition simply fails to address the grounds for dismissal of this claim, as presented in the MTD, and Count I should thus be dismissed on all theories of direct and bystander liability against the defendants.

## II. The Agents did not subject the plaintiff to unconstitutional force under the circumstances alleged (Count II).

In opposing the dismissal of Count II, the Opposition relies upon highly distinguishable cases to support its argument. For example, the Opposition cites excessive force cases in which a plaintiff was suspected of no crime *whatsoever* or only of a minor crime and, (not to diminish the injury here) sustained a severe and gratuitous injury. *See e.g.*, *Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015) (holding that a denial of summary judgment was proper when a male police officer forcibly threw a smaller, non-fleeing, and verbally responsive female to the ground just outside her front door, slammed his knee into her back, wrenched her arm, and repeatedly punched her, breaking her rib and causing permanent shoulder injury); *Jones v. Buchanan*, 325 F.3d 520 (4th Cir. 2003) (finding that summary judgment was inappropriate when a police officer had thrown an *already handcuffed* person to the floor, jumped on him, broke his nose, and bruised his ribs, even though the suspect was suspected of *no crime or offense whatsoever*); *Rowland v. Perry*, 41 F.3d 167 (4th Cir.1994) (holding that a denial of summary judgment was correct when a police officer tackled and broke the knee of a mentally-disabled suspect who was suspected of not returning a five-dollar bill he had found on the ground to its owner)[9]; *Guerrero v. Deane*, No.

---

[9] For the purposes of Count I, the Court also affirmed the dismissal of the 42 U.S.C. § 1983 false arrest claim. *Rowland*, 41 F.3d at 174 (stating that "[i]n order for qualified immunity to attach, it is not necessary that probable cause for an arrest actually exist. It is necessary only that the officer be objectively reasonable in believing that it is present.").

1:09-cv-1313, 2010 U.S. Dist. LEXIS 14468 (E.D. Va. Feb 19, 2010) (denying a motion to dismiss on an excessive force claim when a police officer tightened a plaintiff's handcuffs, causing a laceration to the plaintiff's hands, even though the plaintiff was suspected of no crime); *Drake v. Higgins*, No. 97-0143, 1998 U.S. Dist. LEXIS 9800 (W.D. Va. June 29, 1998) (holding that a plaintiff stated an excessive force claim because not even the slightest amount of force, or the grabbing of a collar, was necessary as he was suspected of committing no offense whatsoever).[10]

　　None of the exacerbating factors in the cases cited by the Opposition exist here.  Rather, as argued in the Motion to Dismiss, the totality of the alleged facts and circumstances in the Complaint objectively satisfy the factors of *Graham v. Connor* in favor of the Agents. Furthermore, unlike the plaintiffs in the cases above, the plaintiff here was thought to have committed at least one serious offense, including underage possession of a false identification. His conduct elevated to the offenses of obstruction and public intoxication.  The plaintiff, who was not already handcuffed, was in a crowded and uncertain environment.  Once the Agents caught up to him, he, objectively and physically opposed them, trying to "free himself."  The plaintiff's conduct was visible, such that three Agents had to intervene, and Agent Cielakie had to use a second pair of handcuffs just to connect the plaintiff's hands, as the plaintiff twisted on

---

[10] The Opposition also incorrectly quotes important language from this case.  The Opposition cites this Court as having stated, "[t]he objective reasonableness standard is intensely fact-based and [**often**] cannot be adequately analyzed on a motion to dismiss."  (Opposition p. 19.)  This Court, however, actually stated, "[t]he objective reasonableness standard is intensely fact-based and **in this case** cannot be adequately analyzed on a motion to dismiss."  *Drake*, 1998 U.S. Dist. LEXIS 9800, at *11.  Nevertheless, the plaintiff's action is distinct from *Drake* and, given the ample facts alleged, permits resolution on the Rule 12(b)(6) motion.

the ground.[11] The totality does not show an unreasonable level of force or an amount of force above any beyond on that which was necessary to complete the arrest.

Finally, the FAC fails to state a claim for excessive force under a direct or bystander theory of liability against Agent Cielakie. The Opposition simply reiterates the insufficient allegations against Agent Cielakie as a defendant in this action, and as presented by the MTD, the FAC fails to allege any constitutional violation by any of the Agents for excessive force. Despite the argument that Agent Cielakie was "rough," neither the FAC nor the Opposition provide a subjective or plausible basis to allege an excessive force against him. Agent Cielakie's role was limited to employing leg shackles and a second set of handcuffs only after the plaintiff was already on the ground and twisting around. Agent Cielakie caused no injury to the plaintiff, and the plaintiff complained to him of no pain. *See also Carter v. Morris*, 164 F.3d 215, 219 n.3. (4th Cir. 1999) (holding that a claim that handcuffs were too tight during an arrest failed to state an excessive force claim); *Guerrero v. Deane*, 750 F. Supp. 2d 631, 655 (E.D. Va. 2010) (dismissing a claim of excessive force when a plaintiff claimed that his handcuffs were too tight but caused no injury).

The FAC likewise fails to state a claim of excessive force under a bystander liability theory against Agent Cielakie because, as argued in the MTD, there was no constitutiotnal violation by any of the Agents. Even if the FAC did state a claim of excessive force by Agents Miller or Cielakie, Count II fails to allege bystander liability against Agent Cielakie for such force because the FAC lacks sufficient objective facts to show Agent Cielakie had the requisite level of specific knowledge that another is violating an individual's constitutional rights, that must be present to impose personal liability for another's constitutional violation. *See Randall v.*

---

[11] Even viewed in the plaintiff's favor, the plaintiff offers no reason, aside from his twisting, for Agent Cielakie's use of the second pair of handcuffs.

*Prince George's Cty.*, 302 F.3d 188, 204 n.2 (4th Cir. 2002). Moreover, to the extent the FAC alleges that Agent Cielakie participated in use of unconstitutional force, by virtue of using leg shackles and handcuffs while the plaintiff was on the ground, then the plaintiff's allegation of bystander liability, fails as a matter of law. *See Myers v. Taylor*, C.A. 1:14-cv-156, 2015 U.S. Dist. LEXIS 162791 (N.D. W. Va. 2015) (dismissing claim of bystander liability on grounds that an officer "cannot be liable as a bystander to a violation he allegedly committed.") Ultimately, the Opposition simply fails to address the grounds for dismissal of this claim, as presented in the MTD and Count II should thus be dismissed on all theories of direct and bystander liability against the defendants.

**III.    Count III of the FAC should be dismissed with prejudice (42 U.S.C. § 1983 Negligent Training and Supervision)**

**A.    Count III against ABC is barred by Eleventh Amendment immunity, and this Court should also reject the Opposition's meritless argument that ABC is not an agency and arm of the Commonwealth for immunity purposes under 42 U.S.C. § 1983 (Count III - Negligent Training and Supervision).**

At the outset, Count III against ABC is barred by Eleventh Amendment immunity as the plaintiff, in responding to the defendants' original Motion to Dismiss, properly conceded that ABC is entitled to sovereign immunity to Count V under Virginia state law, stating that: "[G]iven ABC's assertion of sovereign immunity with respect to this state law claim, Mr. Johnson agrees to withdraw Count V against ABC only." (Dkt. No. 23, p.30 n.20). This acknowledgement of ABC's sovereign immunity requires dismissal of Count III on Eleventh Amendment immunity grounds as well. "Under the Eleventh Amendment a 'suit generally may not be maintained directly against the State itself, or against an agency or department of the State, unless the state has waived its sovereign immunity.'" *Bd. of Supervisors of Warren Co. v. Va. Dep't of Soc. Serv.*, 731 F. Supp. 735, 738 (W.D. Va. 1990) (holding that "it is clear,

therefore, that unless Virginia has waived its sovereign immunity the Eleventh Amendment requires that the suit against the institutional defendants be dismissed since they are both 'agencies or departments' of the State") (citation omitted.) In addition to the plaintiff's concession that ABC's sovereign immunity has not been waived, the FAC and Opposition concede that ABC "is an agency" of the Commonwealth. (FAC ¶ 11). As such, "the Eleventh Amendment absolutely bars suits against state agencies irrespective of the type of relief sought," Count III against ABC should be dismissed as a matter of law, and the plaintiff is judicially estopped from arguing otherwise in its Opposition. *Id.*, 731 F. Supp. at 738 n.4.

Assuming *arguendo* the plaintiff's concession of ABC's immunity did not end the inquiry, the Opposition's attempts to argue that ABC is not an arm of the Commonwealth for the purposes of Eleventh Amendment immunity also fails. (*See* Opp'n, pp. 24-30.) The Opposition erroneously argues that, unlike the Commonwealth, the ABC is a "person" under 42 U.S.C. § 1983. (*Id.*) These arguments are meritless, and this Court should summarily reject them.

First, as argued in the MTD, this Court's sister jurisdiction has already reviewed the Commonwealth's comprehensive statutory scheme creating and governing ABC and, in so doing, held that ABC is an arm of the Commonwealth entitled to Eleventh Amendment immunity. *See Dance v. City of Richmond Police Dep't*, No. 3:09-cv-00423, 2009 U.S. Dist. LEXIS 80389 (E.D. Va. Sept. 2, 2009). The Opposition's arguments, which selectively rely upon a procedural posture and its legal conclusions pertaining to "autonomy" and "self-funding," are entitled to no deference. (Opp'n, pp. 24-30.) Contrary to the Opposition's suggestion, *Dance* was neither incomplete without such conclusions nor otherwise "flawed" in its decision. (*Id.* at 24.) No further analysis is required here.

Even if the FAC's legal conclusions can be viewed, at best, as unsupported factual conclusions, they are still defeated by Virginia law, which this Court may consider here. In reviewing a motion under Rule 12(b)(6), this Court "'may properly take judicial notice of matters of public record,' including statutes." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, et al.*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Significantly, "[t]he existence of sovereign immunity is a question of law." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008) (citation omitted).

Based on the foregoing principles establishing the ABC's Eleventh Amendment immunity, the thorough analysis of the *Oberg* factors set forth in the MTD, and the relevant law regarding 42 U.S.C. § 1983 constitutional claims previously presented by the defendants, Count III against ABC should be dismissed with prejudice.

### B. The FAC fails to state a plausible or sufficient claim of negligent training and supervision against Director Walker, pursuant to 42 U.S.C. § 1983 (Count III – Negligent Training and Supervision).

The Opposition recites the same conclusory allegations as did the FAC, none of which factually or specifically speaks to Director Walker, or establishes a plausible nexus between him and the events of March 18, 2015. As with most of its claims, the FAC does not allege facts which state a claim beyond the sheer possibility. And, aside from alleging an occupation and address, the FAC alleges not a single, non-conclusory statement against Director Walker. Thus, this Court should dismiss Count III against him with prejudice.

The authority on which the Opposition relies is also either distinguishable or inapposite. *See e.g., Owens v. Balt. City State's Attorneys Office,* 767 F.3d 379 (4th Cir. 2014) (holding that a plaintiff had pled sufficient factual content to state a claim of an unlawful custom, policy, or

practice against *a municipal police department*); *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994) (denying a motion for summary judgment on a supervisory liability claim when an officer had committed no less than twenty (20) instances of assaultive conduct and facts showed that his supervisor was aware of them and responded to them with callousness). And, even more interestingly, the Opposition cites authority which *actually dismissed a supervisory liability claim for failure to train or supervise* under 42 U.S.C. § 1983. *See Moody v. City of Newport News*, 93 F. Supp. 3d 516, 538-42 (E.D. Va. 2015) (granting a Rule 12(b)(6) motion to dismiss the 42 U.S.C. § 1983 claims of failure to train and supervise). No basis exists to keep Director Walker in this action.

Despite its erroneous authority, the Opposition then claims that the "Defendants ignore the critical distinction between pleading standards and evidence required to prevail at trail [sic]." (Dkt. No. 23, p. 23.) This conclusion is flawed. First, the FAC, due to its prolixity, has supplied this Court with a more than ample record for adjudication on the instant Rule 12(b)(6) MTD. Second, Director Walker *and* the Opposition have cited authority from this Court and its sister Court which dismissed 42 U.S.C. § 1983 claims on a Rule 12(b)(6) motion. *See Moody, supra,* 93 F. Supp. 3d 516; *Caldwell v. Green*, 451 F. Supp. 2d 811, 821 (W.D. Va. 2006) (observing that a plaintiff cannot meet his burden by citing a single or isolated incidents, irrespective of whether or not an underlying constitutional violation occurred). Dismissal here is appropriate.

In the end, litigation is a very serious event for an individual. Because the FAC has pleaded no factual basis whatsoever to subject Director Walker to a $3,000,000 lawsuit, and because the Opposition does not rescue this claim in any way, this Court should dismiss Count III against Director Walker with prejudice.

**IV.    Director Walker and the Agents are entitled to qualified immunity on all claims, and the ample facts alleged in the FAC permit the rightful application of the defense here.**

The Opposition argues that Director Walker is not entitled to qualified immunity because a claim for "*Monell* liability was clearly established at the time of the Agents' conduct, and as the FAC alleges that Walker knew the agents were using wrongful, excessive force and engaging unlawful seizures." (Opp'n, p. 37.) First, the plaintiff has alleged not a single fact or plausible constitutional violation against Director Walker as a supervisor. Alone, this failure justifies qualified immunity.

Second, the FAC has not made the necessary showing under *Shaw v. Stroud*, 13 F.3d 791. Specifically:

> Because of the nature of § 1983 supervisory liability, the plaintiff[] must make several separate showings to demonstrate that [Director Walker] lacked qualified immunity: (1) it was "clearly established" at the time of [the Agents'] conduct that [Director Walker] could be held liable under § 1983 for constitutional violations committed by [the Agents]; (2) it was "clearly established" at the time [Director Walker] was supervising [the Agents] that the degree of force that [Director Walker] knew that [the Agents were] using against arrestees was unconstitutional; [*and*] (3) a reasonable person in [Director Walker's] position would have known that his actions were unlawful.

*Id.* at 801 (alterations and emphasis added). Because the FAC has not pleaded any facts against Director Walker, the plaintiff cannot, without conclusion and speculation, satisfy these elements. In the end, nothing plausibly links Director Walker to the events or Agents. Director Walker could not have known whether the acts on March 18, 2015 were lawful at the time.

Moreover, the Fourth Circuit has held that, "[i]n determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (citations omitted). In this action,

the Complaint has alleged a violation of rights only in a general or abstract sense. *See* Dkt. No. 23, p. 27 (arguing a right exists to be free from a false arrest and excessive force); *Crihfield v. City of Danville Police Dep't*, Nos. 4:07-cv-00010, 4:07-cv-00011, 2007 U.S. Dist. LEXIS 79182, at \*8 (W.D. Va. Oct. 11, 2007) (observing that "[w]e know that there is a general right to be free from excessive force, but this is too broad.") While a person possesses these broad rights, more specificity is required in the qualified immunity context. The more appropriate question here is whether the plaintiff's clearly-established right to resist a lawful stop and arrest under the objective sequence of events and facts alleged was violated; the answer is that it was not because the plaintiff has no such clearly-established right. *Commonwealth v. Hill*, 264 Va. 541, 548 (2002) (holding that "a person in this Commonwealth does not have the right to use force to resist an unlawful detention.")

Finally, even if probable cause is arguable or if the Agents were mistaken in their determination, qualified immunity still is appropriate. This Court has observed that arguable probable cause suffices for qualified immunity. *See Plaster v. Boswell*, No. 6:05-cv-00006, 2007 U.S. Dist. LEXIS 80197, at \*23 (W.D. Va. Oct. 30, 2007) (stating that "[t]he issue for immunity purposes is not probable cause in fact but arguable probable cause") (quotation omitted). Arguable probable cause suffices as well on a Rule 12(b)(6) motion. *See e.g.*, *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014) (affirming Rule 12(b)(6) dismissal of a false arrest claim when "arguable probable cause" existed); *Arrington*, 2015 U.S. App. LEXIS 18005, at \*5-6 (affirming a Rule 12(b)(6) dismissal of 42 U.S.C. § 1983 false arrest claim on qualified immunity grounds when the question of probable cause was "arguable" because reasonable police officers could disagree as to whether it existed, and it was not "manifestly unreasonable" to consider information learned after the arrest); *Springman v. City of Venice*, 439 F. App'x. 861, 865-66

(11th Cir. 2011) (same and holding that the facts alleged fell short of alleging a plausible claim, as the allegations only demonstrated conduct merely consistent with a violation of a plaintiff's rights). And, the Fourth Circuit recognizes that mistaken probable cause does not defeat an entitlement to qualified immunity. *See Street v. Surdyka*, 492 F.2d 368, 374 (4th Cir. 1974).

Finally, with respect to Agent Cielakie, no clearly-established right exists to be free from handcuffing without injury in order to effectuate a lawful stop, cooperation, or an arrest. Thus, this Court should dismiss all claims against the Agents on the rightful grounds of qualified immunity. *Behrens v. Pelletier*, 516 U.S. 299, 306-07 (1996) (holding, in part, that qualified immunity may be adjudicated on a motion to dismiss).

## V. The FAC fails to state a claim for assault and battery against the Agents (Counts VI and VII)

As to Count VI, the Agents possessed reasonable suspicion and probable cause to approach, stop, and arrest the plaintiff after he was denied entry to Trinity. As set forth in the MTD and further argued herein, the actions of the Agents at all times, based on the plaintiff's own objective factual allegations in the FAC, were reasonable, lawful, and justified. As such, and for the reasons contained in the MTD, Count VI fails.

Similarly, Count VII fails against the Agents for the reasons set forth in the MTD. The FAC fails to present sufficient objective factual allegations to show any of the Agents had *specific intent* to inflict bodily harm upon the plaintiff. Moreover, as previously stated herein and in the MTD, the plaintiff's seizure was lawful and constitutional as were the Agents' actions as alleged in the FAC. As such, a legal justification for both claims of assault and battery. For these reasons, and those previously argued by the defendants, Count VII should be dismissed against the Agents in its entirety.

**VI.    The FAC fails to state a claim for gross negligence against the Agents (Count IV).**

The Opposition fails to present a single sustainable legal argument that would overcome the arguments and grounds for dismissal of Count IV presented in the MTD.  At the outset, the FAC fails to allege that the Agents owed the plaintiff any cognizable legal duty in tort which could establish a gross negligence claim under Virginia law.  The FAC merely recites the *prima facie* elements of a state law claim for gross negligence and ultimately fails to allege sufficient objective factual allegations that could support a claim under Count IV against the Agents arising from the lawful seizure of the plaintiff in this case.  Moreover, the FAC and the Opposition place central emphasis on the allegation that "the Agents failed to investigate the situation" and they "unreasonably ignored other non-physical and/or non-violent options to ascertain whether Martese possessed or had used a fake identification card."  (FAC ¶¶ 118-119).  As previously argued by the defendants, there was no constitutional requirement for such investigation based on the objective facts alleged in the FAC and likewise, a claim of gross negligence under Virginia law cannot be based on such an alleged "failure to investigate."  *See e.g. Boyce v. Bennett*, No. 2:14-cv-249, 2015 U.S. Dist. LEXIS 151875, at *27-28 (E.D. Va. Nov. 9, 2015) (dismissing gross negligence claim against police officer for alleged negligent investigation as Virginia law did not recognize such a cause of action); *see also Durham v. Horner*, 759 F. Supp. 2d 810, 815 (W.D. Va. 2010) (holding there is no gross negligence "cause of action against police officers for conducting investigations.")  For these reasons, and those previously argued and set forth in the MGD, Count IV of the FAC fails to state a claim for relief and should be dismissed with prejudice.

**VII. Count V fails to state a claim upon which relief can be granted, and the Supreme Court of Virginia and numerous Virginia circuit courts have never held that negligent supervision and training are cognizable claims (Count V).**

Finally, this Court should dismiss Count V. The Opposition cites two cases from the Circuit Court of the City of Norfolk, Virginia, to support a sweeping proposition, in part, that the Motion to Dismiss "ignore[s] the growing trend among Virginia. . . courts" to recognize the claims negligent supervision and training. (*See* Opp'n, pp.41-42) This proposition is unsupported, as the MTD has cited seven Virginia circuit court decisions refusing such claims. Moreover, it also cited to a recent reported decision from this Court and its sister jurisdiction on similar grounds. Last, the Opposition's citation to *Reynolds v. Crown Equipment Corp.*, No. 5:07-cv-00018, 2008 U.S. Dist. LEXIS 46534 (W.D. Va. June 16, 2008), is of no value, as the defendant does not appear to have objected to the cognizability of a negligent training claim.

Irrespective, of paramount importance here is the fact that the Supreme Court of Virginia has not recognized and defined claims of negligent training and supervision. This lack of recognition and definition is critical. First, Director Walker has had no legal notice that these claims exist, let alone their elements and factual prerequisites. Consequently, he has no opportunity to meaningfully defend against them. Second, because the Supreme Court of Virginia has not defined these claims, it has not established any defenses to them. As a result, Director Walker is deprived of a second opportunity to assert actual defenses.

Nevertheless, to the extent these claims are akin to a simple negligence claim, as argued, *supra*, Director Walker is entitled to sovereign immunity. And, the FAC has failed to state a claim for gross negligence upon which relief can be granted, as set forth above. Finally, the FAC, assuming *arguendo* that these claims are cognizable, has failed to plead them with

28

plausibility. The Opposition does not rescue this claim in any fashion. Accordingly, this Court should dismiss Count V with prejudice against Director Walker.[12]

## III.    CONCLUSION

Despite its length and prolixity, the FAC has failed to allege sufficient and plausible claims. As to the latter, the Supreme Court of the United States has stated that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the well-pleaded facts do not permit a court to infer more than the mere possibility of misconduct, there has not been a showing that a plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 678. Notwithstanding the insufficiencies of the plaintiff's pleading, the fAC has wholly failed to meet this important standard. Finally, Eleventh Amendment, sovereign, and qualified immunity rightfully apply. Thus, this Court should grant the Motion to Dismiss the FAC, dismiss all claims with prejudice, and award the defendants any relief deemed proper.

**Respectfully submitted,**

**VIRGINIA DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, SHAWN WALKER, JARED MILLER, THOMAS CUSTER, JOHN CIELAKIE**
By _____/s/ Nicholas F. Simopoulos_____
Nicholas F. Simopoulos (VSB No. 68664)
General Civil and Trial Unit Manager
Assistant Attorney General
Alexander K. Page (VSB No. 78894)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 786-8199 Telephone
(804) 371-2087 Facsimile
nsimopoulos@oag.state.va.us
apage@oag.state.va.us

---

[12] The plaintiff has conceded this claim as to ABC. (Dkt. No. 23, p. 30 n.20.)

Case 3:15-cv-00055-GEC-JCH   Document 54   Filed 06/24/16   Page 29 of 30   Pageid#: 1009

Mark R. Herring
Attorney General of Virginia

Rhodes B. Ritenour
Deputy Attorney General

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of June, 2016, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notification of such

filing (NEF) to counsel of record for the plaintiff.

By _____/s/_ Nicholas F. Simopoulos_____
Nicholas F. Simopoulos (VSB No. 68664)
General Civil and Trial Unit Manager
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-8199
Facsimile: (804) 371-2087
Email:  nsimopoulos@oag.state.va.us
*Counsel for Defendants*