CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 1 3 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

MARTESE JOHNSON,                    )
                                     )
            Plaintiff,               )     Civil Action No. 3:15-CV-00055
                                     )
v.                                   )     **MEMORANDUM OPINION**
                                     )
DEPARTMENT OF ALCOHOLIC              )     Hon. Glen E. Conrad
BEVERAGE CONTROL, et al.,            )     Chief United States District Judge
                                     )
            Defendants.              )

Plaintiff Martese Johnson filed this action against the Virginia Department of Alcoholic

Beverage Control, its Director, and three of its agents, alleging claims under both 42 U.S.C.

§ 1983 and state law. The case is presently before the court on defendants' motion to dismiss

plaintiff's amended complaint. For the following reasons, the court will grant in part and deny in

part the motion.

### Background

The following summary of the facts, taken from the plaintiff's amended complaint, is

accepted as true for purposes of the defendants' motion to dismiss. See Erickson v. Pardus, 551

U.S. 89, 94 (2007).

The Department of Alcoholic Beverage Control ("ABC") is an agency funded solely

through its own revenues and tasked with controlling the distribution of alcoholic beverages and

enforcing state laws pertaining to alcoholic beverages. Am. Compl. ¶ 11. ABC is run by a board

that directs its operations, including promulgating its own regulations and appointing its

employees. Id. Defendant Shawn Walker is the Director of ABC ("Director Walker").

Defendants Jared Miller, Thomas Custer, and John Cielakie (collectively, the "Agents") are

special agents at ABC.

At the time of the events giving rise to the complaint, plaintiff Martese Johnson ("Johnson") was a twenty-year-old University of Virginia ("UVA") student. In the early morning hours of March 18, 2015, Johnson and a friend went to Trinity Irish Pub ("Trinity"). Trinity is located in an area adjacent to UVA's campus, known as "the Corner." In Virginia, persons under the age of twenty-one are permitted to enters bars after presenting a valid form of identification. After waiting in a line that spanned approximately half the block, plaintiff presented his valid I.D. to the owner of Trinity, who then asked him to recite his zip code. Because plaintiff had recently moved, he did not recite the correct zip code and was denied entry into Trinity. Id. ¶ 20-21. Johnson did not appear intoxicated. Id. ¶ 22. After being denied entry, Johnson and the owner of Trinity spoke for a few minutes about the high school to which they had mutual ties. Id. ¶ 23.

Agents Miller, Custer, and Cielakie were surveilling Trinity, and they witnessed the exchange between plaintiff and the owner of Trinity. Id. ¶ 24. They did not hear the exchange between plaintiff and the owner, which plaintiff describes as a "cordial" interaction. Id. at ¶ 23-25. The Agents did not know why Johnson was denied entry into the bar, did not see any signs of intoxication, and did not witness Johnson acting in a belligerent manner. Id. ¶ 25-27. However, as Johnson walked away from Trinity, Agent Miller approached him from behind and grabbed his arm. Id. at ¶ 28. Miller did not identify himself as a law enforcement agent, and due to the manner in which Miller approached him, Johnson did not realize that Miller was a law enforcement agent. Id. ¶ 31.

Startled, plaintiff pulled his arm away and tried to keep walking. Id. ¶ 31. Agent Miller grabbed plaintiff's arm again and demanded to see what Miller called plaintiff's "fake" I.D. Id. ¶ 32. Miller then "aggressively attempt[ed] to twist Martese's arm behind his back." Id.

2

Miller still had not identified himself as a law enforcement agent. Id. ¶ 32-33. At or around this point in time, plaintiff saw Miller's law enforcement badge. Id. ¶ 35. He then attempted to cooperate with Miller. He also attempted to free himself to reach his I.D. Id. ¶ 35.

Agent Custer witnessed the interaction, approached the two men, and grabbed plaintiff's left arm. Id. ¶ 36. This prevented plaintiff from complying with Agent Miller's orders. Without provocation, Agents Miller and Custer "slammed" plaintiff to the ground, causing plaintiff to suffer a severe laceration to his forehead and scalp. Id. ¶ 40. Agent Custer then proceeded to "roughly and aggressively" place handcuffs around plaintiff's left wrist. Soon after, Agent Cielakie, who had observed the entire altercation, placed a second pair of handcuffs around plaintiff's right wrist and connected them to the handcuffs surrounding plaintiff's left wrist. Agent Cielakie also placed leg shackles around plaintiff's ankles. Id. ¶ 42, 46, 49. Plaintiff alleges that he was "not yelling, did not appear intoxicated, and was not aggressive towards the Agents" throughout the entire course of events. Id. ¶ 37. Plaintiff was not armed, and the agents did not suspect him to be. Id. at ¶ 38. After the incident, Agent Miller obtained a warrant for obstruction of justice and public intoxication. Both charges were subsequently dropped.

The complaint alleges that, prior to this altercation, ABC had a history of aggressive, excessive, and unjustified behavior which was exemplified in an April 2013 incident where ABC agents, including Agent Cielakie, surrounded the car of UVA student Elizabeth Daly (the "Daly Incident"). The agents slammed on her windows with steel flashlights and punched her windshield based on the belief that a case of water in Daly's car was a case of beer. Daly was arrested and spent several hours in jail, but the charges against her were eventually dropped. Johnson contends that, because of the Daly Incident and other incidents not specified, Walker had specific knowledge of the policy, custom, or widespread use of unconstitutional seizures by

3

ABC agents. Id. ¶ 62. Moreover, this problem was so widespread that other law enforcement agencies had reduced ABC's access to joint operations. Id. ¶ 63.

## Procedural History

Johnson filed his original complaint on October 12, 2015, alleging violations of his rights under the Fourth Amendment to the United States Constitution, as applicable to the Commonwealth of Virginia through the Fourteenth Amendment. Johnson also asserts several violations of various state tort laws. On November 16, 2015, defendants filed their first motion to dismiss. On January 21, 2016, after a hearing, the court granted plaintiff's motion for leave to file an amended complaint. On February 1, 2016, plaintiff filed his first amended complaint, adding new factual allegations and new claims. Defendants filed a motion to strike the plaintiff's first amended complaint, which the court denied.

The amended complaint asserts three causes of action arising under 42 U.S.C. § 1983 and four state law claims. In Counts I through III, the plaintiff claims that Agents Miller, Custer, and Cielakie violated his rights to be free from unreasonable seizures and that defendants ABC and Director Walker failed to train and supervise the Agents. Counts IV, VI, and VII allege that defendants Miller, Custer, and Cielakie acted with gross negligence and assaulted and battered the plaintiff; Count V asserts a claim of negligent supervision and training against Director Walker. Defendants have moved to dismiss the amended complaint pursuant to Rule 12(b)(6). The motions have been fully briefed and are ripe for review.

## Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all

4

reasonable factual inferences in the plaintiff's favor. Erickson, 551 U.S. at 94; see also Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

The instant complaint is filed pursuant to 42 U.S.C. § 1983 and state law. Although not a source of substantive rights itself, § 1983 provides "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). To state a claim under § 1983, a plaintiff must allege sufficient facts to establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Defendants have moved to dismiss all seven claims asserted against them. The court will address each claim in turn.

### I.   Claims Against Agents Miller, Custer, and Cielakie

#### A. False Arrest

Agents Miller, Custer, and Cielakie have moved to dismiss all claims asserted against them. In Count I of the amended complaint, Johnson claims that Agents Miller and Custer violated his rights under the Fourth Amendment, as applied to the Commonwealth of Virginia

5

through the Fourteenth Amendment, by seizing him without probable cause to believe that he had violated or was violating any law. Am. Compl. ¶ 70. The plaintiff further alleges that Agent Cielakie witnessed the entire unlawful seizure but failed to act to prevent it, giving rise to bystander liability under 42 U.S.C. § 1983.[1]

Defendants contend that they are entitled to qualified immunity against the claims brought against them. State officers are entitled to qualified immunity from civil liability for performing discretionary functions only insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To establish a qualified-immunity defense, a public official must demonstrate that (1) a plaintiff has not alleged or shown facts that 'make out a violation of a constitutional right,' or that (2) 'the right at issue was [not] clearly established at the time of' its alleged violation." Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 395-96 (4th Cir. 2014) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). The court need not address the two prongs in order. Pearson, 555 U.S. at 236 ("[W]hile the sequence set forth…is often appropriate, it should [not] be regarded as mandatory.").

For a right to be "clearly established," "[t]he contours of the right [in question must be] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The "clearly established" prong of the qualified immunity analysis ensures that officers are on notice of their unlawful conduct. Barfield v. Kershaw Cty. Sheriff's Office, 638 F. App'x 196, 203 (4th Cir. 2016). It protects against bad guesses in gray areas, not transgressions of bright lines. Maciariello v. Sumner, 973

---

[1]     Plaintiff also alleges a theory of bystander liability against Agent Cielakie for his excessive force claim. Because these claims against Cielakie arise under a failure to intervene claim, those claims are discussed separately from the direct counts against Agents Custer and Miller.

F.2d 295, 298 (4th Cir. 1992). "While a case directly on point is not required for a court to conclude that the law was clearly established, "'the existing precedent must have placed the statutory or constitutional question' confronted by the officer 'beyond debate.'" Johnson v. Holmes, --- F. Supp. 3d. ---, 2016 WL 4702832, at *3 (W.D. Va. Sept. 6, 2016) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).

In the context of arrests, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. To state a claim for false arrest, a plaintiff must show that the officers decided to arrest him without probable cause. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002) (citing Dunaway v. New York, 442 U.S. 200, 213 (1979)). Probable cause means that the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person...in believing...that the suspect has committed...an offense." United States v. Williams, 10 F.3d 1070, 1073-74 (4th Cir. 1993). It is of no moment that the offense is minor. Figg v. Schroeder, 312 F.3d 625, 636-37 (4th Cir. 2007) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). To find probable cause, there must exist only "enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed." Id. When deciding whether probable cause exists, "a police officer may draw inferences based on his own experience." Ornelas v. United States, 517 U.S. 690, 699 (1996). However, a plaintiff's claim will survive when it rests upon facts which made it unjustifiable for a reasonable officer to conclude that the plaintiff was violating the law. Id.

Defendants argue that the facts, as alleged in the amended complaint, demonstrate that the Agents had, at the very least, reasonable suspicion to stop, if not probable cause to arrest, Johnson for possession of a false I.D., a violation of Virginia law,[2] when Johnson walked away from Trinity. Even if the Agents did not have probable cause to arrest Johnson because of a false I.D., defendants contend that whatever reasonable suspicion they did have ripened into probable cause to arrest when Johnson pulled his arm away from Agent Miller, in violation of Virginia's obstruction statute. Alternatively, defendants assert that they had probable cause to arrest Johnson for public intoxication. Finally, even if the facts do not support a finding of probable cause, the defendants urge the court to find that they are entitled to qualified immunity.

There is no question that the right to be free from unlawful arrests "has been clearly established constitutional law for decades." Harrison v. Prince William Cty. Police Dep't, 640 F. Supp. 2d 688, 702 (E.D. Va. 2009). In the Fourth Circuit, however, the boundaries of what actions constitute probable cause to arrest for possession of a false I.D. do not appear clear. Indeed, the court has found only a single, unreported related case. See Corker v. Jones, 955 F.2d 40, 1992 WL 29282, at *1 (4th Cir. Feb. 21, 1992) (finding probable cause when the plaintiff was unable to explain to a third party how he obtained his press pass). It is true that "qualified immunity was never intended to relieve government officials from the responsibility of applying familiar legal principles to new situations." Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001) (Michael, J., concurring); see also Wilson v. Layne, 526 U.S. 603, 615 (1999) (refusing to require that there be a previous legal disposition addressing the precise conduct to find a right clearly established so long as the conduct's illegality would have been evident to a reasonable officer on the basis of existing law). However, looking to the "totality of the circumstances,"

---

[2]   Virginia Code § 18.2-204.1(B) provides that "any person who obtains, possesses, sells, or transfers any document for the purpose of establishing a false status, occupation, membership, license or identity for himself or any other person is guilty of a Class 1 misdemeanor."

8

including the fact that the incident occurred during the early-morning hours on Saint Patrick's Day weekend at a favored UVA student hangout, and that the officers witnessed Johnson stand in line with a friend for half a block before handing his I.D. to a bouncer, getting it back, and then walking away from a bar, the court believes that a reasonable ABC Agent would believe that they had probable cause, albeit possibly incorrectly. See Butz v. Economou, 483 U.S. 478, 507 (1978) (noting that qualified immunity covers reasonable "mistakes in judgment, whether the mistake is one of fact or one of law"); Plaster v. Boswell, No. 6:05CV00006, 2007 WL 3231533, at *6 (W.D. Va. Oct. 30, 2007) (noting that the issue of probable cause was a "close call," and thus the officers were entitled to qualified immunity because they possessed "arguable probable cause."). Therefore, the court finds that the Agents are entitled to qualified immunity on the false arrest claim and will grant defendants' motion as to Count I.

**B. Excessive Force**

Plaintiff also alleges that the Agents used excessive force when they grabbed his right arm and "attempted to twist" it behind his back, grabbed his left arm, threw him to the ground, and handcuffed and shackled him while he was lying on the ground. Defendants argue that Johnson's repeated attempts to free himself and continued physical resistance could lead a reasonable officer to believe that, in order to protect the officer's own safety, such force was necessary to prevent Johnson from leaving. Defendants also point out that Johnson has alleged no physical injuries or pain from the handcuffs and thus argue that Johnson has failed to plead an excessive force claim as to the handcuffing.

"Claims of excessive force occurring during an arrest are to be evaluated under the Fourth Amendment to the United States Constitution." Russell v. Wright, 916 F. Supp. 2d 629, 636 (W.D. Va. 2013). "The [Fourth Amendment's] protection against unreasonable seizures

includes the right to be free of 'seizures effectuated by excessive force.'" Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006)). In analyzing a Fourth Amendment excessive force claim, the court reviews the facts and circumstances "from the perspective of a reasonable officer on the scene." Graham v. Connor, 490 U.S. 386, 395-96 (1989). In considering whether the force used was reasonable, "a court must focus on the moment that the force is employed." Henry, 652 F.3d at 531. This "reasonableness" inquiry is objective and "subjective concepts like 'malice' and 'sadism' have no proper place in [it]." Graham, 490 U.S. at 399. Instead, relevant considerations include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. The court may also consider the extent of the plaintiff's injury. Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003). "Ultimately, the question to be decided is 'whether the totality of the circumstances justifie[s] a particular sort of...seizure.'" Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015) (quoting Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)). However, there is no question that officers "are entitled to use force in order to effectuate" an investigatory stop. United States v. Smith, 386 F. App'x. 399, 403-04 (4th Cir. 2010).

The court believes that the Agents had, at the very least, reasonable suspicion to stop Johnson. The court cannot agree that grabbing Johnson's arm, holding on to his elbow, "attempt[ing] to twist" his arm behind his back, and grabbing his left arm were objectively unreasonable ways to effectuate such investigatory stop. United States v. Haye, 825 F.2d 32, 35 (4th Cir. 1987) ("By its very nature...a Terry stop is involuntary, and the suspect is not free to avoid it by flight. To that extent, his freedom is limited, and the policeman is authorized to use such reasonable force as may be necessary to accomplish the purpose of the limited stop.").

Moreover, plaintiff alleges no injury from the grabbing of his arms. See Jones, 325 F.3d at 527 (stating that a court may consider the extent of plaintiff's injury).

While the court has determined that the initial use of force was reasonable, the court finds that Johnson has pled facts supporting a plausible claim for excessive force based on Agents Custer and Miller's decision to "slam" Johnson to the ground. See Elliot v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996) ("Graham requires us to focus on the moment force was used; conduct prior to that moment is not relevant in determining whether an officer used reasonable force."); Am. Compl. ¶ 40. Applying the first Graham factor to this use of force, at all times relevant, the only potential violations that could have reasonably been considered by the officers were misdemeanor offenses. See Va. Code. §§ 4.1-305(B), 18.2-204.1(B), 18.2-388, and 18.2-460(A); Graham, 490 U.S. at 395-96 (listing the severity of the offense as one factor to consider in determining whether the force used was objectively reasonable). "When the offense committed is a minor one, '[the Fourth Circuit has] found that the first Graham factor weigh[s] in plaintiff's favor.'" Jones, 325 F.3d at 528; see also Stafford v. Barnes, 1:14CV267, 2016 WL 3580752, at *1, *4 (D.S.C. June 28, 2016) (believing the plaintiff's alleged facts as true, the severity of the crime was a misdemeanor [disruption offense] and "not severe").

Limiting the inquiry to the four corners of the complaint, the second Graham factor similarly counsels in favor of denial of defendants' motion. According to the complaint, the Agents had no reason to believe that Johnson was armed, and Johnson "attempted to cooperate" upon recognizing that Agent Miller was a law enforcement agent. Am. Compl. ¶ 34-35. Further, "Martese was not yelling, did not appear intoxicated, and was not aggressive towards the Agents." Id.¶ 37. These facts, if proven true, suggest that an objectively reasonable officer would not find that Johnson posed an immediate safety threat. See Graham, 490 U.S. at 396 (listing

11

whether the suspect posed an immediate threat to the safety of the officers as a relevant consideration).

Furthermore, the court believes that from the facts pled, the third <u>Graham</u> factor supports the allegation that Agents Miller and Custer used objectively unreasonable force. Both <u>Rowland v. Perry</u>, 41 F.3d 167 (4th Cir. 1994), and <u>Smith v. Ray</u>, 781 F.3d 95 (4th Cir. 2015), allowed a claim for excessive force to survive when a plaintiff "instinctively tried to escape" the officer's use of force. <u>Smith</u>, 781 F.3d at 102; <u>see also Rowland</u>, 41 F.3d at 174 ("Rowland maintain[ed] that he resisted only to the extent of instinctively trying to protect himself from the defendant's onslaught."). Here, Johnson alleges that he instinctively pulled away from an unknown individual grabbing his arm. Once he determined that Agent Miller was a law enforcement agent, Johnson became compliant and only "attempted to free himself from Miller's grasp to reach for his identification card in order to comply with Miller's order and to prove his innocence." Am. Compl. ¶ 35. Nothing in the complaint suggests that Johnson was "actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396. Finally, considering the extent of the injury from plaintiff hitting the ground, which included a severe laceration to the head and permanent scarring, the court believes that "the totality of the circumstances," as pled, do not justify the level of force used to effect the seizure. <u>Tennessee v. Garner</u>, 471 U.S. at 8-9.

Defendants Miller and Custer argue that they are entitled to qualified immunity as to the excessive force claim. "[T]hat police officers…used excessive force during their arrest [] is a well established and common claim." <u>Guerrero v. Deane</u>, No. 1:09-CV-1313, 2010 WL 670089, at *13 (E.D. Va. Feb. 19, 2010). In this context, the court finds it well settled that an officer may not "slam" to the ground an unarmed, nonthreatening, misdemeanor suspect who is in the process of attempting to comply with the officer's demands. <u>Barfield</u>, 638 F. App'x at 203-204

(collecting cases). As in <u>Rowland</u> and <u>Smith</u>, where qualified immunity was denied, Agents Custer and Miller "took a situation where there obviously was no need for the use of any significant force and yet took an unreasonably aggressive tack." <u>Smith v. Ray</u>, 781 F.3d 95, 104 (4th Cir. 2015). Accordingly, the court does not believe that Agents Custer and Miller are entitled to qualified immunity on the excessive force claim and will deny defendants' motion to dismiss Count II as to these two defendants.

To the extent plaintiff alleges that Agent Cielakie used excessive force by handcuffing Johnson's wrist, connecting those handcuffs with the handcuffs surrounding Johnson's other wrist, and shackling Johnson's legs, the court believes that this claim must fail.[3] At the moment Agent Cielakie employed this measure of force, he was assisting with what a reasonable law enforcement agent would believe to be a lawful arrest. "A standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified...in effecting the underlying arrest." <u>Brown v. Gilmore</u>, 278 F.3d 362, 369 (4th Cir. 2002). As the Supreme Court has made clear, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 397-98. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" is objectively unreasonable. <u>Id.</u> (citing <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1978)). An officer will not be liable when he reasonably, but mistakenly, believed that the circumstances justified using more force than what was needed in hindsight. <u>See</u> <u>Guerrero v. Deane</u>, 750 F. Supp. 2d 631, 653 (E.D. Va. 2010). In the instant case, Miller and Custer had already thrown Johnson to the ground before Cielakie intervened. From the facts as pled, the court believes that a reasonable officer in Agent

---

[3]     Plaintiff also claims that Agent Cielakie failed to intervene, which is discussed <u>infra</u>.

Cielakie's position could believe that further handcuffing of the plaintiff was necessary. Accordingly, Agent Cielakie cannot be seen as having used an objectively unreasonable amount of force.

Even if further cuffing was not necessary, district courts in this circuit have repeatedly dismissed claims of excessive force when the plaintiff has failed to allege physical injury suffered as a result of a handcuffing. See Cunningham v. Ruffkin, No. 1:15-CV-1650, 2016 WL 6396015, at *5 (E.D. Va. Oct. 26, 2016) ("Even if the cuffing was excessive, Plaintiff has failed to show that she suffered an injury as a result of the conduct....[L]ack of evidence of significant physical harm undermines a claim for excessive force based on the manner of cuffing."); Amon v. Stubbs, No. 3:11-CV-491, 2011 WL 6100334, at *5 (E.D. Va. Dec. 7, 2011) (dismissing a claim for excessive force when the plaintiff alleged only mental anguish and discomfort from the manner of handcuffing); Hale v. City of Newport News, No. 4:11-CV-28, 2011 WL 4621182, at *11 n.18 (E.D. Va. Sept. 30, 2011) ("[E]xcessive force claims stemming from the use of handcuffs fail as a matter of law only when a plaintiff's injuries are limited to minor scrapes or soreness."); Cooper v. City of Virginia Beach, 817 F. Supp. 1310, 1314 (E.D. Va. 1993) ("[T]he presence, nature, and extent of any resulting injury constitute important elements in the reasonableness calculus."). Here, Johnson's allegations include no injury from his handcuffing or shackling by Agent Cielakie. Thus, the court will dismiss any claim of excessive force against Agent Cielakie.

## C. Bystander Liability against Cielakie

Johnson has also alleged that Agent Cielakie violated his right to be free from an unreasonable seizure under a theory of bystander liability. A law enforcement officer may be liable for a failure to intervene under § 1983 if the bystanding officer "(1) knows that a fellow

officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cty., 302 F.3d 188, 204 (4th Cir. 2002). For liability to attach, the officer must possess "a realistic opportunity to intervene to prevent the harm from occurring." Id. (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). Defendants argue that Agent Cielakie cannot be held liable under a theory of bystander liability because he did not have the opportunity to prevent Agents Miller and Custer from seizing Johnson and throwing him to the ground. The court agrees.

Johnson analogizes this case to three other cases in which a plaintiff's bystander liability claim survived. The court, however, finds the facts, as pled here, distinguishable. For example, in Donohue v. Lambert, the plaintiff pled that several agents stood idly by while two agents beat him for over four minutes. No. 7:13-CV-00397, 2014 WL 4825258, at *2 (W.D. Va. Sept. 25, 2014). Similarly, in Chavez v. McIntire, the plaintiff pled that the officers maced him for a second time, kicked him in the side at least five times, and struck him on the side with a stick. 424 F. Supp. 2d 858, 860 (W.D. Va. 2006). Finally, in Smith v. Taylor, the plaintiff was injured during an escort procedure and told the offending officer several times that the restraints were too tight. No. 7:14-CV-0002, 2015 WL 1194131, at *2 (W.D. Va. March 16, 2015). The critical distinction between the instant case and the three upon which plaintiff relies is the opportunity to intervene. See Randall, 302 F.3d at 203 (requiring a "realistic opportunity to intervene" to impose bystander liability). Taking all inferences in favor of the plaintiff, the complaint fails to assert a factual scenario in which Agent Cielakie would have known of the constitutional violation and had sufficient time to stop it. Therefore, the court will dismiss all claims of bystander liability against Agent Cielakie.

### D. State Law Claims

In Counts IV, VI, and VII, Johnson alleges state law violations for gross negligence, assault, and battery. The court finds ample authority indicating that plaintiff's claims of gross negligence, battery, and assault "rise or fall" with his excessive force claim. See Ware v. James City Cty., 652 F. Supp. 2d 693, 711-712 (E.D. Va. 2009) ("While the Veney court analyzed whether [throwing the plaintiff to the ground was] 'grossly negligent,' other courts appear to reverse the equation, asking whether the actions were 'objectively reasonable' and, presumably, therefore not grossly negligent....While using different terms, these courts appear to be describing the [same] applicable test.") (citing Veney v. Ojeda, 321 F. Supp. 2d 733, 747 (E.D. Va. 2004)); Cleveland v. City of Detroit, 275 F. Supp. 2d 832, 842 (6th Cir. 2003) ("Just as a trier of fact could find that [the remaining defendants] were objectively unreasonable...a trier of fact could find that same failure grossly negligent."); Griffin v. Hardrick, 604 F.3d 949, 956 (6th Cir. 2010) ("Where a plaintiff asserts a battery claim under [state] law that arises out of the same use of force as her § 1983 excessive-force claim, the analysis is the same for both causes of action."); Jesionowski v. Beck, 937 F. Supp. 95, 105 (D. Mass. 1996) ("Thus, in other words, the plaintiff's assault and battery claims will rise or fall in the same manner as his Fourth Amendment claims...."); Johnson v. City of Fayetteville, 91 F. Supp. 3d 775, 815-16 (E.D.N.C. 2015) ("In excessive force cases such as this, a 'parallel state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well.'") (citing Rowland, 41 F.3d at 174).

Because the court believes that plaintiff has sufficiently pled his state law claims, however, it need not definitively answer whether application of the same principles are appropriate to both the state law and federal torts. Johnson has sufficiently pled that Agents

Miller and Custer acted with gross negligence when they threw him to the ground. See Frazier v. City of Norfolk, 234 Va. 388, 393 (1987) ("Gross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another.") (citations omitted); Valladares v. Cordero, No. 1:06-CV-1378, 2007 WL 2471067, at *6 (E.D. Va. Aug. 27, 2007) ("Officer['s] action of slamming the small teenager's head into the car...demonstrates the possibility of wantonness."). Similarly, because he has pled a plausible claim for excessive force, Johnson has laid the factual predicate to support his assault and battery claims. See Burruss v. Riley, No. 3:15-CV-00065, 2016 WL 3360532, at *6 (quoting Valentine v. Roanoke Cty. Police Dep't, No. 7:10-CV-00429, 2011 WL 3273871, at *5 (W.D. Va. July 29, 2011)) ("[A]n arrest utilizing excessive force is a battery because that touching is not justified or excused and therefore is unlawful."); Smith v. Ray, 855 F. Supp. 2d. 569, 583 (E.D. Va. 2012) ("Because material facts in dispute preclude a finding on summary judgment whether or not Officer Ray's use of force was reasonable, those same disputes prevent resolution of Smith's state law claims for assault and battery."), aff'd, 781 F.3d 95 (4th Cir. 2015).

The court, however, has determined that the facts pled do not support a claim of excessive force against Agent Cielakie and that the Agents are entitled to qualified immunity on the false arrest claim. Because of this, the court concludes that Johnson fails to plead the facts necessary to support claims of assault and battery against Agent Cielakie. See Ware, 652 F. Supp. 2d 693, 712 (E.D. Va. 2009) ("A plaintiff's assault or battery claim can be defeated by a legal justification for the act...and Virginia law recognizes that police officers are legally justified in using reasonable force to execute their lawful duties."); Smith, 855 F. Supp. 2d. at 583 ("A police officer's use of reasonable force in the course of making a lawful arrest is justification sufficient to avoid liability for assault and battery."). Therefore, the court will deny

defendants' motion to dismiss the state law claims as to Agents Miller and Custer and will grant defendants' motion to dismiss the state law claims against Agent Cielakie.

## II.  **Claims Against ABC and Walker**

### A. **Section 1983 Supervisory Liability**

Johnson asserts a claim of supervisory liability against Director Walker and ABC, alleging that Director Walker and ABC failed to train or supervise and that these defendants were aware that ABC Agents had a "widespread practice of [using] unreasonable, disproportionate, and wrongful force and tactics in approaching suspects." Am. Compl. ¶ 107. It is well-settled that "supervisory officials are not vicariously liable for constitutional injuries inflicted by their subordinates." Newbrough v. Piedmont Regional Jail Auth., 822 F. Supp. 2d 558, 582 (E.D. Va. 2011) (citing Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisors, however, may be liable when they have "promulgated a custom or policy that caused a constitutional violation." Id. "A policy or custom for which a [supervisory official] may be held liable can arise…through an omission, such as failure to properly train officials, that 'manifests deliberate indifference to the rights of citizens.'" Lytle v. Doyle, 326 F.3d 463, 417 (4th Cir. 2003) (citing sources). When pleading a § 1983 violation through an omission, "[a] plaintiff must point to a 'persistent and widespread practice of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 402-03 (4th Cir. 2014) (quoting Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987)). Both the knowledge and the indifference prongs "can be inferred from the 'extent' of employees' misconduct." Id.

18

## 1. ABC

In moving to dismiss the claim against ABC, defendants argue that ABC is an arm of the state and therefore entitled to immunity under the Eleventh Amendment of the United States Constitution. See Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) (noting that Eleventh Amendment immunity "encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). Johnson urges the court to find that the facts pled demonstrate that ABC is not an arm of the State, and therefore, not entitled to sovereign immunity. Whether an agency "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend...depends, at least in part, upon the nature of the entity created by state law." Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). When "applying the arm-of-the-state analysis," the court considers four nonexclusive factors: (1) whether the state is either legally or functionally liable for a judgment against the agency; (2) "the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions"; (3) "whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns"; and (4) "how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State." U.S. ex. rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency, 745 F.3d 131, 136-38 (4th Cir. 2014) (citing cases).

Looking to the agency's enabling statute,[4] the court believes that ABC is an arm of the State. As to the first <u>Oberg</u> factor, the "Board, may, <u>in the name of the Commonwealth</u>, be sued...to recover damages...." Va. Code. § 4.1-106 (emphasis added). Additionally, "all moneys collected [by ABC]...shall be paid directly and promptly into the state treasury...without any deductions...." <u>Id.</u> § 4.1-116. These moneys, less net profits, are set aside to create an "Enterprise Fund." <u>Id.</u> This "Enterprise Fund" is subject to appropriation and used for the payment of ABC salaries and "costs and expenses incurred in establishing and maintaining government stores." <u>Id.</u> ABC may deduct from net profits a certain amount to create a reserve fund, but the statute specifically notes that the reserve fund is to "provide for depreciation on the buildings, plants and equipment." <u>Id.</u> The remaining net profits are transferred by the Comptroller to the general fund of the State treasury and may, in certain circumstances, be distributed to the many localities across Virginia. <u>Id.</u> In disposing of moneys collected by ABC, the Virginia Code does not provide for whether ABC pays for judgments against it. Moreover, ABC is sued "in the name of the Commonwealth." <u>Id.</u> § 4.1-116. Therefore, the court believes that the first <u>Oberg</u> factor weighs in favor of finding ABC to be a State agency.

Assessing the remaining factors, the conclusion that ABC is entitled to Eleventh Amendment immunity becomes clearer. ABC's board members are appointed by the Governor and confirmed by the General Assembly of Virginia. Va. Code. § 4.01-102. The Governor elects the chairman, and the General Assembly affixes the board's salary. <u>Id.</u> ABC must provide yearly reports to the Governor and the General Assembly, including detailed financial statements. <u>Id.</u> § 4.1-114. ABC is also given the power to regulate the transportation of beer and wine throughout Virginia, suggesting that ABC is involved with "state concerns." <u>Id.</u> § 4.1-112.

---

[4]     The court notes that it is permitted to consider "matters of public record outside the pleadings." <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986).

Despite this authority, the enabling statute still dictates certain operating procedures, such as which days ABC may not open stores, when ABC must send notices via certified mail versus regular or electronic mail, and which employees must undergo background checks. Id. Therefore, applying the Oberg factors to this agency, the court believes that ABC can fairly be considered an arm of the State, entitled to Eleventh Amendment immunity. Accordingly, the court will dismiss all claims against ABC.

### 2. Director Walker

The court next considers whether Johnson has failed to state a § 1983 supervisory liability claim against Director Walker. While prevailing on the merits of such a claim is exceedingly difficult, stating "a claim to relief that is plausible on its face" is easier. Owens, 767 F.3d at 403 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In Owens, the Fourth Circuit determined that a plaintiff had sufficiently stated a claim for relief when he pled two specific facts: (1) that reported and unreported cases established a custom, policy, or practice of suppressing evidence, and (2) that a number of relevant motions were filed demonstrating this alleged custom of suppressing exculpatory evidence. Id. The Fourth Circuit found that these were factual allegations, "the veracity of which could plausibly support a Monell claim." Id. (referencing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).

It is not enough, however, that a plaintiff plead facts giving rise to a "persistent and widespread" pattern or practice. Spell, 824 F.2d at 1386. A plaintiff must also make factual assertions that demonstrate a causal link between the supervisor's inaction and the harm suffered. Shaw v. Stroud, 13 F.3d 791, 799 (1994). This requirement "encompasses cause in fact and proximate cause" and "may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." Id. (citing Slakan v. Porter, 737 F.2d 368, 376 (4th Cir.

1984)).

Here, the court believes that plaintiff has sufficiently pled a "'persistent and widespread' pattern or practice, the hallmark of an impermissible custom" and a "plausible causal nexus between the alleged practice" of failing to train or supervise and the harm sustained. Owens, 767 F.3d at 403 (citing Spell, 824 F.2d at 1386); Newbrough, 822 F. Supp. 2d at 587 ("For the same reasons, it is also reasonable to conclude, at this juncture, that the deprivation of [plaintiff's] rights was a natural and foreseeable consequence of [the supervisor's] alleged...indifference toward [] that broad practice."). Johnson includes in his complaint factual assertions about a 2013 incident involving another University of Virginia student. Am. Compl. ¶ 60. He also alleges other, similar instances and contends that other law enforcement agencies have reacted to "ABC's heavy-handed tactics by reducing its access and participation in joint operations." Id. ¶ 63, 105. The court believes that these are facts, "the veracity of which could plausibly support a Monell claim." Owens, 767 F.3d at 403.

As to whether Director Walker is entitled to qualified immunity, there is little question that the possibility of supervisory liability due to inaction was clearly established at the time of Director Walker's alleged inaction leading to the altercation. Shaw, 13 F.3d at 802 ("At the time of [defendant's] inaction, § 1983 liability for supervisors was clear."). Additionally, the court has already determined that plaintiff has stated a claim for excessive force and sufficiently pled that Director Walker had actual or constructive knowledge of a pattern or practice of using excessive force and acted with deliberate indifference to this practice. Thus, the question becomes whether a reasonable supervisor possessing the same information would have believed his conduct was lawful. See Shaw, 13 F.3d at 801. From the facts alleged in the complaint and the plethora of cases addressing supervisory liability and excessive force, the court cannot conclude that "a

22

reasonable person in [Director Walker's] position would [not] believe that his [failure to train or supervise on the force used] violated clearly established law." Shaw, 13 F.3d 791, 802. Therefore, the court will deny defendants' motion to dismiss Count III against Director Walker.[5]

## B. Negligent Supervision and Training

Count V of Johnson's complaint alleges state law claims of negligent supervision and training against Director Walker. It is axiomatic that "[t]here can be no actionable negligence unless there is a legal duty, a violation of the duty, and a consequent injury." Chesapeake & Potomac Tel. Co. v. Dowdy, 235 Va. 55, 61 (1988). The vast majority of Virginia courts have not recognized a duty to supervise. See Jones v. Kroger Ltd. Partnership I, 80 F. Supp. 3d 709, 715 (W.D. Va. 2015). "A number of Virginia courts have similarly declined to recognize a cause of action for negligent training." Hernandez v. Lowe's Home Centers, Inc., 83 Va. Cir. 210, 2011 WL 8964944, at *2 (Va. Cir. Ct. Aug. 1, 2011) (collecting cases). Therefore, the court will dismiss the plaintiff's state law claims of negligent supervision and negligent training. See Jones, 80 F. Supp. 3d at 715 ("This Court cannot create a duty to supervise where Virginia courts have not."); Morgan v. Wal-Mart Stores East, LP, No. 3:10-CV-669, 2010 WL 4394096, at *4 (W.D. Va. Nov. 1, 2010) ("This Court will not recognize a Virginia cause of action for negligent training where such cause of action has not been clearly established.").

## Conclusion

For the foregoing reasons, the court will grant in part and deny in part defendants' motion to dismiss. The court will dismiss Counts I and V. The court will deny defendants' motion as to Counts II, IV, VI, and VII against Agents Miller and Custer; it will grant the motion as to Counts II, IV, VI, and VII as alleged against Agent Cielakie. The court will grant the motion to dismiss

---

[5] The court notes, however, that moving forward, Johnson "assumes a heavy burden of proof." Shaw, 13 F.3d at 799.

Count III as to ABC but not as to Director Walker. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 12ᵗʰ day of December, 2016.

_____
Chief United States District Judge