**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | | |
|---|---|---|
| MARTESE JOHNSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Case No. 3:15-cv-00055-GEC** |
| | ) | |
| JARED MILLER, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants Jared Miller ("Miller"), Thomas Custer ("Custer"), and Shawn P. Walker ("Walker") (collectively "Defendants"), by counsel, and pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, assert the following in support of Defendants' Motion for Protective Order limiting the Plaintiff's First and Second Requests for Production of Documents to Defendant Walker and the Plaintiff's Subpoena Requests to the Virginia Department of Alcoholic Beverage Control ("ABC").

## BACKGROUND

Plaintiff filed this action against the ABC, former ABC Director of Enforcement Shawn Walker, and three ABC law enforcement agents (the "Agents") claiming injuries arising from his March 18, 2015 arrest by the Agents outside Trinity Irish Pub ("Trinity") in Charlottesville, Virginia. *See generally* First Amended Complaint ("FAC"), ECF No. 38. On December 13, 2016, the Court dismissed ABC and one of the Agents entirely from this action, as well as multiple counts from the Amended Complaint. *See* Order and Memorandum Opinion, ECF Nos. 70 and 71. Plaintiff seeks to pursue a claim of "excessive force" under 42 U.S.C. § 1983 and

state tort claims of assault, battery, and gross negligence against Agents Miller and Custer. As to Defendant Walker, the sole remaining claim is for "supervisory liability" under § 1983.

On or about December 7, 2016, Plaintiff issued First Sets of Interrogatories and Requests for Production of Documents to Defendants Miller and Custer and discovery was subsequently lifted as to Walker with respect to the sole remaining claim against him. *See* Order, Mem. Op. ECF Nos. 70 and 71. Plaintiff propounded his First Set of Interrogatories and Requests for Production to Walker. On January 20, 2017, Defendants Custer and Miller responded to Plaintiff's "first discovery" and on February 3, 2017, Defendant Walker responded to discovery as well, providing Plaintiff with over 130 pages of written responses and objections to discovery requests, over 2,300 pages of paper documents, as well as multiple flash drives, and discs of information.[1] The following chart summarizes the initial production of documents – which has subsequently been supplemented - in response to Plaintiff's first discovery, including a description of the materials produced, corresponding bates numbers, and originating source of the documents, and is also set forth in each of the Defendants' initial discovery responses as well as in Defendants' prior Opposition Brief in response to Plaintiff's First Motion to Compel (ECF No. 106, pp. 4-6):

---

[1] Defendants responses included, in relevant part, all of Custer and Miller's performance and training records, disciplinary records, prior incidents (of which there are none), and General Orders by which they were to abide. Furthermore, the responses included all of the investigatory materials generated by the Virginia State Police, Charlottesville Commonwealth's Attorney's Office, and the ABC as a result of the March 18, 2015, arrest of the plaintiff, which further contain, *inter alia*, all incident and use of force reports, statements of Custer, Miller, and all private and public witnesses to the arrest, judicial orders and records pertinent to Plaintiff's criminal case, the plaintiff's medical records, and various other law enforcement records pertaining to the plaintiff and his activities after the arrest. Copies of Defendants' first discovery responses were attached to Defendants' previously-filed Brief in Opposition to Plaintiff's Motion to Compel (ECF No. 106) as Exhibit A (Miller Discovery Responses), Exhibit B (Custer Discovery Responses), and Exhibit C (Walker Discovery Responses).

2

| Description | Bates Nos. | Source |
|---|---|---|
| **Trinity Complaints** | **D000001-5** | **ABC** |
| **February 26, 2015 e-mail from [REDACTED SENDER] to "ABC Enforcement" subject "UVA corner bars serving underage kids"** | **D000006** | **ABC** |
| **March 18, 2015 e-mail "FW: Tom Tom"** | **D000007-8** | **ABC** |
| **ACRJ - Commitment Order, Warrant of Arrest, Summons, Recognizance, Release Order** | **D000009-13** | **ACRJ/Cville C.A. Chapman response to Subpoena** |
| **Miller Narrative from ABC Incident Report #15-01462** | **D000014** | **ABC** |
| **ABC Incident Report #15-01462** | **D000015-23** | **ABC** |
| **ABC Response to Active Resistance Report** | **D000024-37** | **ABC** |
| **Miller statement for VSP Administrative Investigation/Review** | **D000038-41** | **VSP** |
| **August 10, 2015 ABC Memo "Return to Full Law Enforcement Duty"** | **D000042** | **ABC** |
| **ABC Work Description/Performance Plan and Performance Evaluations 2013-2016** | **D000043-93** | **ABC** |
| **ABC Internal Investigation Report** | **D000094-97** | **ABC** |
| **March 18, 2015 ABC Memo "Change in Duty Status and/or Status of Police Powers"** | **D000098-99** | **ABC** |
| **April 3, 2015 e-mail "FW: Effective 4/6/15"** | **D000100** | **ABC** |
| **August 3, 2015 e-mail "Release of State Police Investigation"** | **D000101** | **ABC** |
| **August 4, 2015 e-mail "Request to release information"** | **D000102** | **ABC** |
| **August 4, 2015 e-mail "Release of Information"** | **D000103** | **ABC** |
| **VSP Criminal Investigation File #15-83-02-0232** | **D000104-448** | **VSP BCI** |
| **VSP Internal Affairs Administrative/Investigative Review** | **D000449-580** | **VSP IA** |
| **VSP BCI Report used to compile IA Administrative/Investigative Review** | **D000581-1175** | **VSP** |
| **Charlottesville Commonwealth's Attorney Warren D. Chapman file (flash drive, 2 discs, paper documents)** | **NA – copy produced as received** | **Charlottesville C.A. Chapman in response to Subpoena** |
| **Charlottesville Police Department incident report, officer statements, investigation documents** | **D001176-1197** | **VSP File and CPD in response to Subpoena** |
| **ACRJ reports, inmate documentation, and medical records** | **D001198-1237** | **VSP File** |

| | | |
|---|---|---|
| **Charlottesville-Albemarle Rescue Squad report and statements** | **D001238-1248** | **VSP File** |
| **Charlottesville Fire Department reports, statements** | **D001249-1258** | **VSP File** |
| **UVA Police Department incident report, officer statements, investigation documents** | **D001259-1266** | **VSP File** |
| **Charlottesville-UVA-Albemarle County Emergency Communications Center incident call reports** | **D001267-1272** | **VSP File** |
| **ABC Bureau General Order #103 – Legal Authority and Constitutional Safeguards (1/23/14 and 6/19/15)** | **D001273-1292** | **ABC** |
| **ABC Bureau General Order #105 – Code of Ethics (1/23/14)** | **D001293-1294** | **ABC** |
| **ABC Bureau General Order #106 – Code of Conduct (1/23/14 and 6/19/15)** | **D001295-1334** | **ABC** |
| **ABC Bureau General Order #200 – Response to Active Resistance (7/28/14 and 6/19/15)** | **D001335-1359** | **ABC** |
| **ABC Bureau General Order #204 – Restraint and Transportation of Custodial Arrestees (7/28/14 and 6/19/15)** | **D001360-1373** | **ABC** |
| **ABC Bureau General Order #207 – Uniforms and Equipment (7/28/14 and 6/19/15)** | **D001374-1381** | **ABC** |
| **ABC Bureau General Order #211 – Liaison with other Law Enforcement and Public Service Agencies (7/28/14 and 6/19/15)** | **D-001382-1385** | **ABC** |
| **ABC Bureau General Order #213 – Bias Based Policy (7/28/14)** | **D001386-1387** | **ABC** |
| **ABC Bureau General Order #216 – Operational Plans/Special Event Operations (7/28/14 and 6/19/15)** | **D001388-1393** | **ABC** |
| **ABC Bureau General Order #305 – Field Interviews – Stop and Frisk (3/17/14)** | **D001394-1398** | **ABC** |
| **ABC Policies and Procedures Manual** | **D001399-1926** | **ABC** |
| **Training History – Virginia ABC Training Academy** | **D001927-1929** | **ABC** |
| **ABC Knowledge Center Training History and Certificates** | **D001930-1975** | **ABC** |
| **ABC Training Academy New Agent Orientation materials** | **D001976-2026** | **ABC** |
| **2013 Field Training materials** | **D002027-2047** | **ABC** |
| **2013 In-Service Training documents** | **D002048-2163** | **ABC** |
| **Summary – Training History at Virginia ABC** | **D002164-2165** | **ABC** |

4

| VSP Materials in Response to Defendants' Subpoena | NA – produced as received | VSP |
|---|---|---|
| CPD Materials in Response to Defendants' Subpoena | NA – produced as received | CPD |
| 2013 Confidential Segment Reports | D002166-2169 | ABC |
| Central Shenandoah Training Academy – Basic Law Enforcement School class schedule | D002170-2187 | CSCJTA/VSP |
| Certificates of Academic Honors during basic training and CSCJTA basic law enforcement | D002188-2189 | CSCJTA/VSP |
| Miller Certificate of completion of Crisis Intervention Team Basic Course | D002190 | CIT Basic Course/VSP |
| Summary of Training History at CSCJA through 2011 | D002191 | CSCJA/VSP |
| ABC Work Description/Performance Plan and Performance Evaluations 2013-2016 | D002215-2255 | ABC |
| March 18, 2015 ABC Memo "Change in Duty Status and/or Status of Police Powers" | D002256-2257 | ABC |
| April 3, 2015 e-mail "FW: Effective 4/6/15" | D002258 | ABC |
| August 4, 2015 e-mail "Request to release information" | D002259 | ABC |
| Training History – Virginia ABC Training Academy | D002260-2263 | ABC |
| 2013 In-Service Training documents | D002264-2392 | ABC |
| Summary – Training History at Virginia ABC | D002393-2395 | ABC |

On or about February 6, 2017, Plaintiff issued his first Subpoena to Produce Documents to the ABC ("First Subpoena"), containing 41 numbered categories of requested materials, which were virtually identical to and duplicative of many of Plaintiff's First Requests for Production of Documents to Walker (of which there were 76). On February 28, 2017, the ABC filed its Motion to Quash and Brief in Support, explaining the overbreadth, undue burden, and duplicative nature of the Plaintiff's 41 categorical document requests in the First Subpoena. *See* ABC First MTQ, ECF Nos. 88 and 89.[2]

Notwithstanding Defendants' extensive responses to Plaintiff's first discovery and the significant document production initially provided, on March 2, 2017, Plaintiff filed a 38 page

---

[2] A copy of Plaintiff's First Subpoena to ABC is attached to ABC's First Motion to Quash Brief as Exhibit A. ECF No. 89, Exh. A.

Case 3:15-cv-00055-GEC-JCH Document 158 Filed 07/14/17 Page 5 of 24 Pageid#: 3427

Motion to Compel and Brief in Support against Defendants (ECF Nos. 93 and 94). On March 16, 2017, Defendants filed their Brief in Opposition to Plaintiff's Motion to Compel (ECF No. 106), asserting *inter alia*, that they more than reasonably complied with their discovery obligations in responding to the voluminous written demands and document requests contained in Plaintiff's first discovery.[3] On March 27, 2017, the Court heard oral argument on Plaintiff's and Defendants' Motions to Compel and ABC's Motion to Quash the First Subpoena, finding many of Plaintiff's discovery requests to be overly broad and seeking irrelevant information. A copy of the March 27, 2017 Hearing Transcript ("Transcript") is attached hereto as **Exhibit A**.

On March 28, 2017, the Court entered an Order ("Discovery Order", ECF No. 113) summarizing the Court's determinations at the hearing, setting forth general categories of discoverable information, and providing, in relevant part, general guidance for determining what types of documents might be relevant to Plaintiff's claim for supervisory liability against Walker. *See* Discovery Order, ECF No. 113. With regards to such categories of information, the Court found Plaintiff is entitled to "responses/documents from either ABC or Walker." Discovery Order, ECF No. 113 at p.3.

On April 11, 2017, pursuant to the Discovery Order, Defendant Walker provided his First Supplemental Responses to Plaintiff's first discovery, amounting to approximately 47 pages of written responses, and the ABC produced 2,836 pages of additional materials, including the following:

IA Files
- A000001-A000014: John Jones complaint IA investigation file – Agent Kelly Jones
- A000015-A000123: Chris Dorsey complaint IA investigation file – Agents Pond/Martin/Halphen

---

[3] Nevertheless, on March 22, 2017, Defendants Miller and Custer served First Supplemental Responses to Plaintiff's first discovery, amounting to over 180 pages of written responses.

6

- A000124-A000250: Elizabeth Daly complaint IA investigation file – Agents Pine/Brown/Cielakie
- A000251-A000306: Sumner complaint IA investigation file – Agents Kane/Northop/Hanna
- A000307-A000425: Martese complaint IA investigation file – Miller/Custer/Cielakie

Miller Employment Records:
- A000462-A000476: Work Descriptions/Performance Plans and Performance Evaluations from HR personnel file
- A000477-A000483: Personnel Action Notices and Pay Action Worksheet from HR personnel file
- A000484-A000487: various documents from enforcement personnel file, including "Return to Full Law Enforcement Duty," "Change in Duty Status and/or Status of Police Power," and October 15, 2014 Letter from Shawn Walker

Custer Employment Records:
- A000488-A000504: Work Descriptions/Performance Plans and Performance Evaluations from HR personnel file
- A000505-A000511: Personnel Action Notices and Pay Action Worksheet from HR personnel file
- A000512-A000533: various documents from enforcement personnel file, including "Return to Full Law Enforcement Duty," "Change in Duty Status and/or Status of Police Power," and October 15, 2014 Letter from Shawn Walker

Miller Training Records:
- A000534-A000767

Custer Training Records:
- A000768-A001013

ABC Public Affairs July 10, 2012 E-mail
- A001014: ABC Bulletin: Board Announces Bureau of Law Enforcement Organizational Enhancements

ABC "Use of Force" Training Records 2010-2016
- A001015-A001127: 2010 Training Records
- A001128-A001223: 2011 Training Records
- A001224-A001383: 2012 Training Records
- A001384-A001607: 2013 Training Records
- A001608-A001972: 2014 Training Records
- A001973-A002541: 2015 Training Records
- A002542-A002836: 2016 Training Records

On or about April 20, 2017, Plaintiff issued Second Set of Interrogatories and Requests for Production of Documents to Walker, containing an additional 57 categories of requested documents ("second discovery"), and on or about May 2, 2017, Plaintiff issued his Second Subpoena to Produce Documents to ABC ("Second Subpoena"), requesting production of an additional 57 categories of documents and materials, many of which – like Plaintiff's second

7

discovery to Walker - contain multiple sub-parts and numerous sub-categories. A copy of Plaintiff's second discovery to Walker is attached hereto as **Exhibit B**, and a copy of Plaintiff's Second Subpoena to ABC is attached hereto as **Exhibit C**.

On May 16, 2017, ABC supplemented its initial production referenced above, providing an additional 2,187 pages to Plaintiff in response to the First Subpoena and in accordance with the Discovery Order, including internal ABC correspondence and related documents from multiple non-party ABC employees regarding the Virginia State Police and Governor's Expert Panel investigations of Plaintiff's March 18, 2015 arrest.[4] On May 19, 2017, Defendant Walker served his Objections and Responses to Plaintiff's Second Set of Interrogatories and Requests for Production of Documents, a copy of which is attached hereto as **Exhibit D**. On May 22, 2017, ABC filed its Second Motion to Quash and Brief in Support, moving to quash the Plaintiff's Second Subpoena, asserting, *inter alia*, that the most recent barrage of document requests from the Plaintiff were overly broad, unduly burdensome, and once again seeking information which is irrelevant and not proportional to the needs of the case. *See* "ABC Second MTQ" and Brief in Support, ECF Nos. 131 and 132. On June 5, 2017, Plaintiff filed a 48-page Brief in Opposition to ABC's Second Motion to Quash and a Cross-Motion to Compel against ABC regarding its Second Subpoena. *See* "Cross-MTC" ECF No. 139.

After extensive negotiations between counsel, on or about June 16, 2017, Plaintiff was provided with over 10,000 pages of documents in an electronic database ("ESI database"), including e-mail correspondence from the three Defendants' ABC e-mail accounts and related documents from hard drives compiled and gathered after the application of Plaintiff counsel's

---

[4] On June 16, 2017, ABC further supplemented this response with an additional 3,958 pages of ABC correspondence regarding the same, from an additional custodian.

own search terms and queries.[5]  Indeed, Plaintiff has been provided with five internal affairs investigation files and ABC has promised to produce three additional files in which the use of force was deemed to be something other than completely justified, though Defendants maintain the position that such materials are arguably not relevant or within the purview of permissible discovery in this case.  Either from Defendants or the ABC, Plaintiff has been provided with ABC reports, investigations into agents' use of force, correspondence from members of the Virginia General Assembly, media inquiries, and Walker's communications with respect to all of these matters.  The ESI database provided, in part, responsive documents and communications relating to internal investigations into use of force complaints and incidents, as well as additional irrelevant and otherwise objectionable materials, including documents and communications related to Delegate David J. Toscano, communications related to the Virginia State Police investigation of the "Elizabeth Daly" incident, and communications involving Walker with respect to the same.  The ESI database even contained documents and communications related to Frank Monahan – who has nothing to do with this case – and Walker's appointment to Director of Enforcement, topics which Defendants have argued are completely irrelevant.

Throughout the course of this case, Defendants and the ABC have incurred and undergone a multitude of ongoing negotiations with counsel, extensive and time-consuming electronic and paper document review, the substantial and costly allocation of funds, manpower, and personnel by the ABC and the legal teams and support staffs at the Office of the Attorney General of Virginia, the significant monetary expenditure for the engagement of a third-party

---

[5] Specifically, the ESI database consists of:
- 10,580 single page TIFF (image) files;
- 2,076 text files (containing texts extracted from the image files above);
- 18 Excel spreadsheets;
- 1 audio file; and
- 2 Concordance data files containing metadata from the foregoing files.

9

vendor and related electronic discovery services, and the increasingly burdensome hold placed on various state resources, processes, and technological services to appease Plaintiff's vast and overly broad discovery requests propounded in this case. It is also important to note that two state agencies continue to incur the expenses and costs associated with Plaintiff's unnecessary and unreasonable discovery demands: the ABC and the Office of the Attorney General, both of which impact the Commonwealth's fiscal obligations and directly affect the taxpaying citizens of Virginia.

Nevertheless, as motions practice continued, on June 19, 2017, the ABC filed its Brief in Opposition to Plaintiff's Cross-Motion to Compel, again setting forth the appropriate grounds for resisting Plaintiff's superfluous, burdensome, duplicative, and clearly irrelevant document requests. *See* "ABC Opposition to Plaintiff Cross-MTC", ECF No. 143.[6] On June 23, 2017, Defendant Walker also served his Second Supplemental Responses to Plaintiff's First Set of Interrogatories and Requests for Production, (an additional 53 pages of written discovery), a copy of which is attached hereto as **Exhibit E**.

Notwithstanding the vast, voluminous, and extensive written discovery and document production provided to Plaintiff throughout discovery in this case, on July 3, 2017, Plaintiff filed two motions to compel: (1) a Motion to Compel Defendant Walker and the ABC to Respond to Plaintiff's First Set of Document and Subpoena Requests and Brief in Support, totaling 43 pages plus exhibits (ECF Nos. 149 and 150); and (2) a Motion to Compel Defendant Walker to Produce Documents in Response to Plaintiff's Second Set of Discovery Requests and Brief in Support, this totaling 50 pages plus exhibits. (ECF Nos. 151 and 152). Defendants will timely

---

[6] Defendants hereby incorporate by reference, the arguments set forth in ABC's Opposition to Plaintiff's Cross Motion to Compel, and the well-founded grounds for resisting disclosure of the categories of documents and information requested by Plaintiff that are at issue in this Motion for Protective Order.

10

file their Oppositions to these most recent Motions to Compel, but discovery has snowballed out of control in this matter – a civil action arising merely from an allegation of a brief, less than 1-minute encounter between Plaintiff and ABC Agents outside a bar in Charlottesville, Virginia. Thus, in the meantime, Defendants move this Court for an Order protecting Defendants from this "runaway train" of discovery and prohibiting Plaintiff from further oppressive, costly, and burdensome document demands to Defendants or the ABC. For the following reasons, the relief requested in Defendants' Motion for Protective Order should be granted.

## LEGAL STANDARD

Under Rule 26(b) of the Federal Rules of Civil Procedure, unless otherwise limited by court order, a party may obtain discovery regarding:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Indeed, a party "has a right to have discovery limited to information that is directly relevant to the lawsuit." *Vasconcellos v. Cybez Internat'l*, 962 F.Supp. 701, 709 (D. Md. 1997). However, "[E]ven assuming that this information is relevant (in the broadest sense), the simple fact that the requested information is discoverable under Rule 26(a) does not mean that discovery must be had." *Nicholas v. Wyndham Intern., Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). The court "must limit the frequency or extent of discovery otherwise allowed" if it finds that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs the likely benefit."

11

Fed. R. Civ. P. 26(b)(2)(C). A party or any person from whom discovery is sought may seek entry of a protective order to "protect a *party or person* from annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R. Civ. P. 26(c)(1) (emphasis added).

**ARGUMENT**

Plaintiff's document requests at issue in the two Motions to Compel against Defendant Walker and the ABC, apparently target only information which Plaintiff believes could support his sole remaining claim of "supervisory liability" asserted against Walker, ostensibly in his individual capacity. To date, Plaintiff has been provided with all of the information outlined by the Court in the Discovery Order as well as additional irrelevant and superfluous information provided by Defendants or ABC in an attempt to appease Plaintiff's unquenchable thirst for discovery in this simple case, relating solely to the remaining claim of supervisory liability against Walker. In his two Motions to Compel at issue now, Plaintiff attempts to broaden the scope of discovery for his supervisory liability claim against Walker, unilaterally departing from the guidelines set forth by the Court during the March 27, 2017 hearing and the March 28, 2017 Discovery Order. Moreover, in moving to compel production of documents from Defendants and/or ABC, Plaintiff demonstrates a fundamental misunderstanding – or misstatement – of the law regarding this § 1983 claim of supervisory liability against a public official in his individual capacity that remains pending against Walker in this case.

As set forth herein, "[t]his suit is a simple one… To support its wild theories, Plaintiff seeks to engage in a fishing expedition with nets so huge as to make sure that if there are any fish in the ocean, Plaintiff will catch it…" *Claude P. Bamberger Int'l Inc. v. Rohm and Haas Co.*, 40 Fed. R. Serv. 3d 677, 1998 WL 684263 * 4 (D.N.J. 1998) (affirming the district court's denial of plaintiff's motion to compel production of documents). Defendants – and by extension, the

Case 3:15-cv-00055-GEC-JCH   Document 158   Filed 07/14/17   Page 12 of 24   Pageid#: 3434

taxpayers - should be protected from the past, current, and future annoyance, oppression, and undue burden and expense incurred as a result of Plaintiff's ongoing document requests and relentless discovery demands in this case relating solely to a simple claim of supervisory liability against former public servant Shawn Walker.

## I.     § 1983 Supervisory Liability against a Public Official in his Individual Capacity

### A.     *Shaw* Elements of Supervisory Liability

Supervisory officials are liable only in certain limited circumstances for constitutional injuries inflicted by their subordinates. *Shaw v. Stroud*, 13 F. 3d 791, 798 (4th Cir. 1994) (*citing Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)). To establish supervisory liability under § 1983, a plaintiff must demonstrate: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular injury suffered by the plaintiff. *Shaw*, 13 F.3d at 799.

In his instant Motions to Compel against Defendant Walker, Plaintiff ignores these elements of supervisory liability and fails to cite *Shaw* as authority. Instead, in both his pleadings and discovery requests, Plaintiff emphasizes his allegations regarding ABC custom, policy, and practice, and focuses on Defendant Walker as an alleged "policymaker" at ABC. Plaintiff argues he is asserting "a claim of supervisory liability against Defendant Walker for his actions as Director of Enforcement at the ABC, which led directly to a culture where the use of excessive force by ABC agents was both permitted and encouraged…" Brief in Support of MTC, ECF No. 150 at p.9; Brief in Support of MTC, ECF No. 152 at p. 9.   Citing his Complaint and

discovery, Plaintiff explains his supervisory liability claim is premised on the allegation "that Defendant Walker 'had specific knowledge of the **policy, custom, or widespread practice of ABC Agents'** use of unreasonable, disproportionate, and wrongful force and tactics in approaching suspects' but '**through their policies, discussions, and advancement decisions**, perpetuated, reinforced, and sanctioned such practices.'" (*Id.*; *citing* FAC ¶¶ 107-08) (emphasis added).

However, Plaintiff's argument fails to broaden discovery related to this claim against Walker because:

> [d]ebating whether a public employer has adopted an unconstitutional 'custom' or 'policy' is a question to be asked when examining the basis for municipal liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). It is not the right question to ask when confronting a supervisor's potential liability in his individual capacity. *See Randall v. Prince George's County*, 302 F.3d 188, 206 (4th Cir. 2002) (inquiring into the existence of a policy to assess municipal liability, but employing separate analysis to determine individual supervisor's liability.).

*Mikkelsen v. DeWitt*, 141 F. App'x 88, 90 (4th Cir. 2005) (argued but unpublished). The Court further explained "And our analysis on that question is guided by the test enunciated in *Shaw v. Stroud*, 13 F. 3d 791 (4th Cir. 1994)." *Id.*

Indeed, "[w]here the only remaining claims are against a public official in her individual capacity, to hold the official liable for her subordinate's conduct, that 'conduct must meet the test for supervisory liability.'" *Pratt-Miller v. Arthur*, No. 17-1024 (4th Cir., July 3, 2017) (*per curiam*) (citing *Shaw* and finding that, "as the only remaining § 1983 claims pending against Arthur at the time the court granted summary judgment were against Arthur in her individual capacity, she could only be held liable for Patterson's conduct if that conduct met the test for supervisory liability."). Accordingly, the three *Shaw* elements for supervisory liability is the

14

applicable law to the instant claim against Walker and Plaintiff's quest for broadening discovery to matters which do not pertain to such a narrow claim fails on its face.

**B.    Other Individuals' Knowledge of Prior Misconduct is Irrelevant**

Plaintiff's refusal to recognize the controlling authority of *Shaw* and the limited scope of discovery relating to the supervisory liability claim leads to Plaintiff's additional erroneous arguments for expanding the scope of discovery virtually to an unlimited extent. Indeed, casting aside the elements of the instant supervisory liability claim against Walker, Plaintiff maintains that "[i]n order to succeed on this claim at trial, Mr. Johnson must prove that Director Walker had actual or *constructive* notice that 'the conduct engaged in by the supervisor's subordinates [was] pervasive, meaning that the conduct is widespread, or at least has been used on several different occasions.'" *See* Plaintiff Brief MTC at pp.9-10, ECF No. 150) (*citing Randall v. Prince Georges Cnty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002)). Plaintiff contends he is thus entitled to discovery on "any prior incidents of similar misconduct by a supervisor's subordinates…regardless of whether those prior incidents stemmed directly from a specific complaint or were uncovered in other ways." (*Id.* at p. 10). From this, Plaintiff insists that he is entitled to electronic information, documents, and correspondence from other ABC employees besides the three Defendants on the chance that they may have also been involved in misconduct.[7]

On the contrary, the information from Walker's computer and e-mail account, the majority of which was produced in the ESI database, and the remainder of the materials produced from the custodians identified above and in Defendants' discovery responses, are more

---

[7] The review and production of the ESI database compiled electronically stored information from the hard drives and e-mails of the three Defendants and former-defendant John Cielakie – who has since been dismissed from this action.

than sufficient to satisfy disclosure obligations in response to Plaintiff's discovery requests. Consider the jail or prison authority context: there, "[t]he supervisor's knowledge of the risk 'can be alleged in multiple ways, including the existence of written reports of conditions at a detention facility, or a supervisor's high level of responsibility coupled with the violations alleged to have occurred on her or his watch." *Davis v. Rouse*, 2012 U.S. Dist. LEXIS 69392, *14 (D. Md. 2012) (quoting *Jones v. Murphy*, 470 F. Supp. 2d 537, 546 (D. Md. 2007)).

In *Davis*, the district court noted however, that "liability under § 1983 'depends on each defendant's knowledge and actions, not on the knowledge or actions of persons [he] supervise[d];' the selection of defendants should not be based on the assumption that everyone 'higher up the bureaucratic chain' knew of a constitutional violation." *Davis*, 2012 U.S. Dist. LEXIS 69392, *14, n. 8 (quoting *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009) (noting in a § 1983 context, that "[t]he assumption underlying this choice of defendants – that anyone who knew or should have known of his eye condition, and everyone higher up the bureaucratic chain, must be liable – is a bad one.")). Accordingly, the information and documents produced to Plaintiff more than fulfill Defendants' obligations for discovery with regards to the § 1983 supervisory liability claim remaining against Walker.

## II. Protection from Plaintiff's First Document Requests to Walker and ABC

First, Defendants respectfully request this Court grant their Motion for Protective Order, and enter an Order denying Plaintiff's requests for documents – beyond those already produced or promised to be provided in this case - regarding and related to the following topics and categories of information sought by Plaintiff.

16

A.   **Arrests, encounters, and incidents involving ABC Agents which did not result in a complaint about the use of force (*See e.g.* Plaintiff First RFPs to Walker Nos. 3, 8–12, 47, 48, 50, and 67)**

The Court determined that Plaintiff is entitled to discovery regarding: "[a]ny complaint, written or verbal, including lawsuits, arbitrations, or adjudicatory proceedings, concerning the use of force in the performance of an agent's duty during Walker's tenure."  Discovery Order, ECF No. 113 at p. 2.  The Court reiterated during the March 27, 2017 hearing that discovery was limited and restricted to merely information regarding complaints as to the use of force. *See* Transcript, Exh. A, at 24:7-8 ("No, it's any complaint of force received by the agency."); 26:1-3 ("So 'complaints' is the keyword.  Complaints that the agency received about the use of force in the performance of the agents' duties."); 26:21-22 ("Complaints. Complaints involving the use of force.").  Thus, Plaintiff cannot be entitled to the expansive discovery sought by the document requests, based on the erroneous contention that: "the Court explicitly noted that any 'episodes' of excessive force by officers under Walker's command would be discoverable…"  Plaintiff's Brief MTC at p.12, ECF No. 150.

Likewise, the Court determined Plaintiff is merely entitled to discovery regarding "Incidents for which **any defendant** has been the subject of an ABC investigation or has otherwise been disciplined for violation of an ABC policy or rule during his employment…" Discovery Order, ECF No. 113 at p. 2 (emphasis added).  The Court explained at the hearing that Plaintiff may obtain information about incidents for which "**any defendant** has been subject of an ABC investigation, inquiry, or review, or otherwise has been disciplined."  Transcript, Exh. A, at 35:17-25 (emphasis added); and 36:18.   Defendants' records are impeccable however, and as confirmed in Walker's written discovery, there simply are no responsive materials to produce. *See  e.g.* Walker's Second Supplemental Responses to Plaintiff's First Interrogatories and

Requests for Production, Exh. E at p. 9 (stating "no incidents since 2010 for which any defendant has been the subject of an ABC investigation or has otherwise been disciplined for violation of an ABC policy or rule."). For these reasons, Plaintiff's discovery requests seeking such information and materials regarding individuals other than the three Defendants are improper and any additional discovery demands or document requests regarding this subject should be prohibited.

**B.  Elizabeth Daly (*See e.g.* Plaintiff First RFPs to Walker Nos. 13, 14, 16, 46)**

As previously set forth above, and argued by the ABC in opposing Plaintiff's Cross-Motion to Compel (ABC Brief in Opposition to Cross-MTC, ECF No. 143), the materials and information provided by Defendants and the ABC regarding Elizabeth Daly more than satisfy Defendants' discovery obligations with respect to this dissimilar and arguably irrelevant topic. Accordingly, Plaintiff's document requests seeking further information and materials that have absolutely no bearing on any of the limited issues remaining in this case should be prohibited.

**C.  Body Cameras (*See e.g.* Plaintiff First RFPs to Walker Nos. 20 – 23)**

Notwithstanding the disproportionality, overbreadth, and undue burden of Plaintiff's document requests for communications and materials related to body cameras, Plaintiff has been provided with responsive information nonetheless, including electronically stored information and communications contained in the ESI database referencing and pertaining to body cameras. In addition, Defendant Walker provided the following written response to Interrogatory No. 20 in response to Plaintiff's Second Set of discovery issued to Defendant Walker:

> ANSWER:  Subject to and without waiving these objections, Defendant states the following to the best of his recollection: the use of body cameras was never implemented due to external decision makers.  Post Daly, the ABC was prepared to go to procurement on a system that would be implemented in a matter of months but the Defendant was told that there was a decision by someone at the Secretary of Public Safety's Office that the ABC would hold on the procurement.

18

This decision was made, he was told, in order for an assessment regarding all state law enforcement agencies to be conducted at one time. Defendant does not remember the date of that decision. The data storage expenses are of great concern with these body camera deployments. Beyond that, Defendant is unaware of the decisions to halt the procurement.

*See* Defendant Walker's Responses to Plaintiff's second discovery, Exh. D, at p. 3. Based on Walker's limited knowledge of the procurement decisions as set forth in his written interrogatory answer, and given the prior production of materials in the ESI database, no more production of documents or responsive information related to this subject should be compelled, and Plaintiff should be prohibited from pursuing further discovery regarding the same.

>   **D.      Employment files and personnel/evaluation records for Defendants, including documents related to the hiring or appointment of Walker as ABC Enforcement Director (*See e.g.* Plaintiff First RFPs to Walker 33-38, 65, 66)**

Defendants should be protected from any further obligations to respond to Plaintiff's document requests regarding their employment files, personnel records, evaluation materials, etc. As set forth above, Plaintiff has already been provided in discovery with significant materials from ABC Human Resources files for Defendants and their Enforcement personnel files as well. Defendants and ABC have produced all pertinent training records for the two Agents involved in the alleged arrest of Plaintiff and the ESI database contains documents related to Defendant Walker's appointment to Enforcement Director and the ABC's agency reorganization in 2010. To require any further discovery or document production on this subject matter would be at the very least annoying, oppressive, and unduly burdensome, not to mention that the requested materials are not within Defendants' custody, possession, or control and the document requests themselves are objectionable to the extent they call for production of private, confidential, medical, and/or financial information regarding Defendants who have not put those matters at

issue in litigation and should be protected from disclosing such irrelevant and undiscoverable information.

### E. Statements by and relationships between other law enforcement agencies and ABC (*See e.g.* Plaintiff First RFPs to Walker Nos. 51 – 54)

These document requests seek irrelevant information and are not proportional to the needs of the case. Moreover, the documents and materials Plaintiff requests on this subject – to the extent they exist and are not based merely on conjecture - would call for responsive documents more readily available from a third-party source such as the "other law enforcement agency." Defendants and the ABC should not be required to undergo further undue burden, cost, and expense to the Commonwealth, its agencies, its employees, and Virginia taxpayers, chasing potentially non-existent information and materials down various rabbit holes on the off chance that some individual may have spoken negatively about an agency of the Commonwealth – a matter wholly irrelevant to the supervisory liability claim against Walker or any remaining issues in the case.

### F. Materials provided to the Daily Progress (*See e.g.* Plaintiff RFP No. 68)

The arguments set forth above in Part II(E) apply with equal force in favor of protection from Plaintiff's media fishing expedition. Nevertheless, and subject to all applicable objections to Plaintiff's irrelevant and disproportional document requests on this topic, the ESI database previously provided to Plaintiff does contain materials and communications that may be responsive to this unreasonable and unduly burdensome request. Defendants should not be required to search for further discovery on this subject, and Defendants as well as ABC should be protected from Plaintiff's attempts to compel disclosure of the requested information and documents.

### III. Protection from Plaintiff's Second Document Requests to Walker

Defendants hereby incorporate by reference and adopt as if they were fully set forth herein, the arguments, points of authority, and grounds for relief set forth in ABC's Brief in Support of Motion to Quash Plaintiff's Second Subpoena (ECF No. 132), and ABC's Brief in Opposition to Plaintiff's Cross-Motion to Compel (ECF No. 143). For those reasons, Defendants respectfully request this Court grant their Motion for Protective Order, and enter an Order denying Plaintiff's requests for documents – beyond those already produced or promised to be provided in this case - regarding and related to the following topics and categories of information sought by Plaintiff:

A. **"Response to Active Resistance" Forms (*See e.g.* Plaintiff Second RFPs to Walker Nos. 77-78)**

B. **Discipline or advancement of ABC employees (*See e.g.* Plaintiff's Second RFPs to Walker Nos. 79-80)**

C. **Lockn' Music Festival and Agent Layman (*See e.g.* Plaintiff's Second RFPs to Walker Nos. 81-83)**

D. **Agent John Taylor (*See e.g.* Plaintiff's Second RFPs to Walker Nos. 84-88)**

E. **Elizabeth Daly (*See e.g.* Plaintiff's Second RFPs to Walker Nos. 89, 115-116, and 123-126)**

F. **Frank Monahan (*See e.g.* Plaintiff's Second RFPs to Walker Nos. 90-96)**

G. **ABC Organization Charts (*See e.g.* Plaintiff's Second RFPs to Walker Nos. 97-98)**

H. **ABC Accreditation (*See e.g.* Plaintiff's Second RFPs to Walker Nos. 99-100)**

I. **Office of Professional Standards (*See e.g.* Plaintiff's Second RFPs to Walker Nos. 101-102)**

J. **Investigations into use of force incidents involving Walker or his subordinates (*See e.g.* Plaintiff's Second RFPs to Walker No. 103)**

K. **Walker's communications regarding ABC use of force policies (*See e.g.* Plaintiff's Second RFP to Walker No. 104)**

L. **Performance evaluations, disciplinary actions, and promotions of ABC Agents involved in use of force complaints (*See e.g.* Plaintiff's Second RFPs to Walker Nos. 105-106, 108-114, 117-122, and 130-132)**

M. **Johns Investigation (*See e.g.* Plaintiff Second RFP to Walker No. 107)**

N. **Internal Investigation Polices (*See e.g.* Plaintiff Second RFP to Walker No. 127)**

O. **Training materials on conducting internal investigations (*See e.g.* Plaintiff Second RFPs to Walker Nos. 128-129)**

P. **Sumner Investigation (*See e.g.* Plaintiff Second RFP to Walker No. 133)**

In addition to ABC's arguments in resisting Plaintiff's overly broad and unduly burdensome discovery requests on the foregoing topics, Defendant Walker – who is ostensibly sued here in his personal capacity - retired from public service in January 2017 so he is no longer in custody, possession, or control of many of the requested materials and would otherwise be relying on other individuals or non-parties to provide any such responsive information, even if the requests were reasonable, appropriately tailored, and proportional to the needs of the case. Ultimately, the foregoing document requests and categories of information sought by Plaintiff in his Second Requests for Production to Walker are virtually identical to and duplicative of document requests contained in Plaintiff's Second Subpoena to ABC. Accordingly, the discovery sought should be prohibited for the same reasons argued by ABC in opposing Plaintiff's Second Subpoena and Plaintiff's related Cross-Motion to Compel.

## CONCLUSION

Ultimately, the law is clear that "[d]iscovery should not become a 'fishing expedition.'" *Cohn v. Bond*, 953 F.2d 154, 159 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992). The Federal Rules of Civil Procedure were amended with respect to discovery "to farm out the 'fishing expeditions' and serve as an attempt to reduce the broad discovery which has heretofore

been afforded litigants in civil actions." *Quality Airo Tech., Inc. v. Telemetrie Elektronik, GMBH*, 212 F.R.D. 313, 315 n.2 (E.D.N.C. 2002). Under Rule 26(c), the Court may issue an order, limiting or even prohibiting certain disclosure or discovery in a civil action "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R. Civ. P. 26(c). Notwithstanding the irrelevance and disproportionality of Plaintiff's document requests discussed herein and set forth in Defendants' Motion for Protective Order filed herewith, Defendants and the ABC should not be subjected to any further or additional disclosure obligations, written responses, or document productions to Plaintiff in this case, as there is good cause to protect them from the ongoing harassment, annoyance, oppression, and undue burden and expense of Plaintiff's unreasonable and unnecessary discovery requests. Defendants Jared Miller, Thomas Custer, and Shawn P. Walker, by counsel, respectfully request that this Court enter a Protective Order limiting the Plaintiff's First and Second Requests for Production of Documents to Defendant Walker and the Plaintiff's Subpoena Requests to the ABC, and awarding Defendants reasonable expenses incurred in making this motion, including attorneys' fees.

> **Respectfully submitted,**
>
> **JARED MILLER, THOMAS CUSTER, and SHAWN P. WALKER**
>
> By:\_\_\_\_/s/ Alexander K. Page_____
> Nicholas F. Simopoulos (VSB No. 68664)
> Sr. Assistant Attorney General and Unit Manager
> Nancy Hull Davidson (VSB No. 85536)
> Assistant Attorney General
> Alexander K. Page (VSB No. 78894)
> Assistant Attorney General
> Edwin L. Kincer, Jr. (VSB No. 24148)
> Assistant Attorney General
> Office of the Attorney General
> 202 North 9th Street

23

Richmond, Virginia 23219
(804) 786-8198 Telephone
(804) 371-2087 Facsimile
nsimopoulos@oag.state.va.us
apage@oag.state.va.us
ekincerjr@oag.state.va.us
ndavidson@oag.state.va.us
*Counsel for the Defendants*

Mark R. Herring
Attorney General of Virginia

Samuel T. Towell
Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of July, 2017, I electronically filed the foregoing

Brief in Support of Defendants' Motion for Protective Order with the Clerk of the Court using

the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for

the Plaintiff.

By:_____/s/_____Alexander K. Page_____
Alexander K. Page (VSB No. 78894)
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-8198
Facsimile: (804) 371-2087
Email: apage@oag.state.va.us
*Counsel for the Defendants*

24